EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Hon. Eduardo Bhatia Gautier, en su carácter como portavoz del Partido Popular Democrático en el Senado de Puerto Rico<br><br>    Recurrido<br><br>        v.<br><br>Hon. Ricardo Rosselló Nevares, en su carácter de Gobernador de Puerto Rico; Estado Libre Asociado de Puerto<br><br>    Peticionarios | Certiorari<br><br>2017 TSPR 173<br><br>198 ____ |

Número del Caso: CC-2017-668

Fecha: 15 de septiembre de 2017

Región Judicial de San Juan, Panel Especial OA TA – 2017-128

Oficina del Procurador General:

Lcdo. Luis R. Román Negrón
Procurador General

Lcda. Amir Cristina Nieves Villegas
Procuradora General Auxiliar

Abogada de la parte Recurrida:

Lcda. Margarita Mercado Echegaray

Materia:

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Hon. Eduardo Bhatia Gautier, en su carácter como portavoz del Partido Popular Democrático en el Senado de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Hon. Ricardo A. Rosselló Nevares, en su carácter de Gobernador de Puerto Rico; Estado Libre Asociado de Puerto Rico<br><br>Peticionarios | CC-2017-668 | *Certiorari* |

Opinión del Tribunal emitida por el Juez Asociado señor FELIBERTI CINTRÓN

(Regla 50)

En San Juan, Puerto Rico, a 15 de septiembre de 2017.

Debido al alto interés público del que están revestidos los asuntos presentados ante nuestra consideración, procedemos a resolver si correspondía la desestimación del caso, según solicitado por el Gobierno de Puerto Rico y su Gobernador, el Hon. Ricardo A. Rosselló Nevares (Gobierno o peticionarios).[1] De la contestación ser en la negativa, corresponde dictaminar si fue oportuna la orden del foro primario para que se entregara, para inspección en cámara, la propuesta de presupuesto sometida por el Gobierno ante la Junta de Supervisión y

_____

[1] Tratándose de una moción de carácter dispositivo, su denegatoria era revisable por el Tribunal de Apelaciones mediante recurso de *certiorari*, en virtud de la Regla 52.1 de Procedimiento Civil de Puerto Rico, 32 LPRA Ap. V (Supl. 2015).

Administración Financiera para Puerto Rico (Junta) el 30 de abril de 2017. Veamos.

## I

El 4 de mayo de 2017 el Hon. Eduardo Bhatia Gautier (Senador o recurrido), en su carácter como Portavoz del Partido Popular Democrático en el Senado de Puerto Rico, presentó ante el Tribunal de Primera Instancia una petición de *mandamus* mediante la cual solicitó que se le ordenara al Gobierno publicar una copia del Proyecto de Presupuesto sometido el 30 de abril de 2017 ante la Junta,[2] y que se le hiciera llegar una copia a él.

Luego de varios incidentes procesales, el 26 de junio de 2017, el Gobierno solicitó la desestimación[3] de la petición de *mandamus* amparado en las siguientes razones: (1) que el Senador carece de legitimación activa; (2) que la causa de acción se tornó académica, pues el proyecto de

---

[2] Por disposición expresa de la Ley de Supervisión, Administración, y Estabilidad Económica de Puerto Rico (Ley PROMESA, por sus siglas en inglés), 48 USCA sec. 2101 *et seq.*, el Gobernador de Puerto Rico, Hon. Ricardo A. Rosselló Nevares, estaba obligado a someter la propuesta de presupuesto ante la Junta de Supervisión y Administración Financiera para Puerto Rico (Junta), previo a remitir la misma ante la consideración de la Legislatura de Puerto Rico. 48 USCA sec. 2142.

Cabe señalar que la Sección 101(c) de la Ley PROMESA, 48 USCA sec. 2121(c), establece lo siguiente:

"**SEC. 101. JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA.**

(c) TRATAMIENTO.- Una Junta de Supervisión conforme a lo establecido bajo esta Sección-
   (1) se creará como una entidad dentro del gobierno del territorio, para lo cual se establece a tenor con el presente título; y
   (2) no se considerará un departamento, agencia, establecimiento o instrumentalidad del Gobierno Federal". (Subrayado nuestro). *Ley de Supervisión, Administración, y Estabilidad Económica de Puerto Rico*, Ciento Decimocuarto Congreso de los Estados Unidos de América, en el Segundo Periodo de Sesiones, en: https://juntasupervision.pr.gov/wp-content/uploads/2017/02/PROMESA_SpanishVersion_02-22-17.pdf (última visita, 14 de septiembre de 2017).

[3] Conforme a las disposiciones de la Regla 10.2 de Procedimiento Civil de Puerto Rico, 32 LPRA Ap. V (2010).

presupuesto final fue entregado a los cuerpos legislativos para su consideración y aprobación; (3) que el Senador no cumplió con los requisitos estatutarios para la presentación de la petición de *mandamus*, en particular con el requerimiento de agotar los procesos parlamentarios disponibles previo a acudir al tribunal, y (4) que conceder el reclamo solicitado implicaría intervenir con las funciones del Primer Ejecutivo y de la Asamblea Legislativa, lo que quebrantaría la separación de poderes. Planteó, además, que el documento solicitado es confidencial, por tratarse de un documento de trabajo preparado durante la etapa deliberativa previo a la toma de las decisiones finales, y que, por lo tanto, se encuentra cobijado bajo el privilegio ejecutivo.

El 29 de junio de 2017 el Senador presentó una *Oposición a Moción de Desestimación*. Alegó que goza de acción legitimada, pues ha estado expuesto a una violación clara y palpable de sus prerrogativas como legislador. Igualmente invocó su derecho constitucional de acceso a información y a documentos públicos. Adujo, además, que su petición no se tornó académica, pues el Gobierno no acreditó si el documento que le entregó a la Junta es el mismo que se sometió ante la consideración de la Asamblea Legislativa. En la alternativa, planteó que se trata de un reclamo susceptible de repetición y capaz de evadir la revisión judicial. Por otro lado, sostuvo que satisfizo todos los requisitos para la expedición de su petición de *mandamus*. Por último, aludió a que el documento solicitado

no es un borrador, ni un documento pre-decisional que contenga la sustancia de los procesos deliberativos previos a la adopción del presupuesto, por lo que no estaba cubierto por el privilegio ejecutivo. Por lo tanto, concluyó que tenía que ser divulgado conforme al derecho constitucional de acceso a la información pública.

El 17 de julio de 2017 el Tribunal de Primera Instancia emitió una Orden mediante la cual señaló una vista argumentativa para el 26 de julio de 2017 y le solicitó al Senador que: (1) colocara al tribunal en posición de determinar si su petición de *mandamus* se tornó académica luego de la aprobación del Presupuesto 2017-2018; (2) convenciera al foro primario a los efectos de que el caso no se trataba del "traslado del debate legislativo al foro judicial y sí de una verdadera lesión a sus prerrogativas legislativas" y (3) que demostrara que "agotó todos los remedios que tuvo a su disposición para lograr que se le permitiera y reconociera su derecho a fiscalizar el proceso de aprobación del Presupuesto 2017-2018". En cuanto al Gobierno, le solicitó que aclarara si la información solicitada por el Senador se hizo pública en algún momento.[4] Por último, le requirió a ambas partes que comparecieran preparadas para argumentar sus respectivas posiciones en torno a la naturaleza de la documentación solicitada, es decir, si la misma era pública o si contiene información cobijada bajo el privilegio ejecutivo.

---

[4] El Tribunal de Primera Instancia le otorgó a las partes hasta el 21 de julio de 2017 para que presentaran lo solicitado por escrito.

Contando con los escritos de ambas partes y con una moción conjunta, en la que se estipularon ciertos hechos y documentos y se delimitaron las controversias de derecho, el 26 de julio de 2017 se celebró la vista argumentativa. Esa misma tarde, el foro primario dictó y notificó una Resolución y Orden denegando la moción de desestimación del Gobierno. Concluyó que la controversia era justiciable, puesto que el Senador tenía legitimación activa y la causa no se había tornado académica. En consecuencia, le concedió al Gobierno un término de diez (10) días para que sometiera el Proyecto del Presupuesto en controversia dentro de un sobre sellado para inspección en cámara. Ello con el propósito de examinar si, por virtud del privilegio ejecutivo, no procede la divulgación del mismo. Además, los peticionarios debían presentar una moción en la cual detallarían las razones por las cuales reclamaban que la información solicitada es privilegiada. Véase la Resolución y Orden de 26 de julio de 2017 emitida por el Tribunal de Primera Instancia, a la pág. 3.

En desacuerdo con la determinación del foro primario, el 4 de agosto de 2017 el Gobierno de Puerto Rico recurrió, vía *certiorari* y moción en auxilio de jurisdicción, ante el Tribunal de Apelaciones. Ese mismo día, dicho foro notificó una Resolución mediante la cual denegó la expedición del auto de *certiorari* solicitado.[5] Inconforme con dicha decisión, el 7 de agosto de 2017, el Gobierno

---

[5] Dicha Resolución fue suscrita por los Jueces de Apelaciones Ramírez Nazario y Romero García. Por el contrario, la Jueza de Apelaciones Colom García hizo constar en la misma que hubiera expedido el recurso.

acudió ante nos alegando la comisión de los siguientes errores:

### Primer Error
Erró el Tribunal de Apelaciones al no expedir el auto de *certiorari* solicitado y al no revocar la determinación del Tribunal de Primera Instancia que denegó la <u>dispositiva</u> moción de desestimación presentada, permitiendo así que el caso se atienda en los méritos, a pesar de que se trata de un asunto que no es justiciable, por razón de que el Senador demandante carece de legitimación activa y de que su reclamo advino académico.

### Segundo Error
Erró el Tribunal de Apelaciones al no expedir el auto de *certiorari* solicitado y al no revocar la determinación del Tribunal de Primera Instancia que denegó la <u>dispositiva</u> moción de desestimación incoada, permitiendo así que el caso se atienda en los méritos, a pesar de que el Senador demandante no agotó los remedios disponibles en el ordenamiento jurídico antes de canalizar su reclamo a través del foro judicial.

### Tercer Error
Erró el Tribunal de Apelaciones al no revocar la resolución y orden del Tribunal de Primera Instancia que denegó desestimar la demanda de *mandamus* de epígrafe, a pesar de que en este caso resulta improcedente la expedición de tan extraordinario y privilegiado auto.

Los peticionarios además invocaron y discutieron, tanto en la *Moción <u>Urgente</u> Reiterando Desestimación* presentada ante el foro de instancia, en la Petición de *Certiorari* sometida ante el Tribunal de Apelaciones, así como en la Petición de *Certiorari* presentada ante nos, que el documento solicitado por el Senador está protegido por el privilegio ejecutivo, por lo que no procede su producción.[6]   El 7 de agosto        de 2017, el Senador

---

[6]    Conjuntamente con la Petición de *Certiorari*, el Procurador General, en representación del Gobernador y del Gobierno de Puerto Rico (Gobierno o peticionarios), presentó una *Urgente Moción en Auxilio de Jurisdicción* mediante

también compareció ante nos mediante una *Urgente Oposición a Moción de Auxilio de Jurisdicción y Oposición a Petición de Certiorari*.

Con el beneficio de la comparecencia de las partes, expedimos el auto de *certiorari* solicitado y atendemos el recurso de epígrafe sin trámite ulterior, conforme a la Regla 50 del Reglamento de este Tribunal, 4 LPRA Ap. XXI-B (2012).

## II

### A. Legitimación Activa

Los tribunales solamente podemos evaluar aquellos casos que son justiciables. Asoc. Fotoperiodistas v. Rivera Schatz, 180 DPR 920 (2011). Una controversia no es justiciable cuando: (1) se procura resolver una cuestión política; (2) una de las partes carece de legitimación activa; (3) hechos posteriores al comienzo del pleito han tornado la controversia en académica; (4) las partes están tratando de obtener una opinión consultiva, o (5) se intenta promover un pleito que no está maduro. Íd.

En particular, hemos definido la legitimación activa como la capacidad que se le requiere a la parte promovente de una acción para comparecer como litigante ante el tribunal, realizar con eficiencia actos procesales y, de

la cual solicitó la paralización de los procedimientos ante el foro primario, en particular, los efectos de la Resolución y Orden dictada por dicho foro el 26 de julio de 2017. En la aludida determinación, el Tribunal de Primera Instancia le ordenó al Gobierno, entre otras cosas, que entregara la propuesta de presupuesto en un sobre sellado.

En vista a que el último día para someter el documento en cuestión era el 7 de agosto de 2017, y con miras a que la controversia no se tornara académica, ese mismo día emitimos una Resolución concediendo la moción en auxilio de jurisdicción y paralizando los procedimientos ante el Tribunal de Primera Instancia, hasta tanto este Tribunal proveyera otra cosa.

esta forma, obtener una sentencia vinculante. R. Hernández Colón, *Práctica Jurídica de Puerto Rico, Derecho procesal civil*, San Juan, Pubs. LexisNexis de Puerto Rico, Inc., 2017, pág. 121; J.A. Echevarría Vargas, *Procedimiento Civil Puertorriqueño*, 1ra ed. rev., Colombia, [s. Ed.], 2012, pág. 132. La doctrina de legitimación activa tiene como propósito demostrarle al foro adjudicador que el interés del demandante en el pleito es de tal índole que, con toda probabilidad, proseguirá su causa de acción de manera vigorosa. Sánchez *et al. v. Srio.* de Justicia *et al.*, 157 DPR 360 (2002); Hernández Agosto v. Romero Barceló, 112 DPR 407 (1982).

Para demostrar que ostenta legitimación activa, el promovente tiene que establecer que: "(1) ha sufrido un daño claro y palpable; (2) el referido daño es real, inmediato y preciso, no abstracto o hipotético; (3) existe una conexión entre el daño sufrido y la causa de acción ejercitada, y (4) la causa de acción surge al palio de la Constitución o de una ley". Sánchez *et al. v. Srio.* de Justicia *et al.*, *supra*, pág. 371. Véase, además, Torres Montalvo v. Gobernador ELA, 194 DPR 760 (2016); Hernández Torres v. Hernández Colón *et al.*, 131 DPR 593 (1992). Anteriormente hemos expresado que estos criterios deben interpretarse de manera flexible y liberal cuando se trate de una acción en contra de agencias y funcionarios gubernamentales. Asoc. de Maestros v. Srio. de Educación,

156 DPR 754 (2002).**[7]** Además, se debe hacer un análisis de las alegaciones de la manera más favorable y liberal para la parte promovente del pleito. García Oyola v. J.C.A., 142 DPR 532 (1997); Col. Ópticos de P.R. v. Vani Visual Center, 124 DPR 559 (1989); Salas Soler v. Srio. de Agricultura, 102 DPR 716 (1974).**[8]**

En cuanto a la legitimación activa de los legisladores, hemos reconocido, entre otras instancias, que éstos poseen acción legitimada para "vindicar un interés personal en el ejercicio pleno de sus funciones legislativas afectadas por actuaciones u omisiones del poder ejecutivo".**[9]** Noriega v. Hernández Colón, 135 DPR 406, 428 (1994). Véase, además, Hernández Torres v. Gobernador, 129 DPR 824 (1992). En esos escenarios, deberá demostrar que ostenta derechos de índole constitucional o estatutario que han sido vulnerados. Hernández Torres v. Gobernador, supra.

De igual modo, para que un legislador demuestre que posee legitimación activa debe cumplir con los requisitos exigidos a los ciudadanos particulares. Hernández Torres v. Hernández Colón et al., supra. Para ello tendrá que establecer que ha sufrido un daño claro e inmediato a sus

---

**[7]** Véase, además, J.A. Echevarría Vargas, *Procedimiento Civil Puertorriqueño,* 1ra ed. rev., Colombia, [s. Ed.], 2012, pág. 132.

**[8]** Íd.

**[9]** Cabe señalar que también le hemos reconocido legitimación activa a un legislador, por ejemplo, para "defender un interés individual tradicional vinculado con el proceso legislativo e invocado frente a funcionarios de dicho Cuerpo tanto en su calidad individual de legislador como en representación de un grupo de dicho Cuerpo". Noriega v. Hernández Colón, 135 DPR 406, 428 (1994). Asimismo, para "impugnar una actuación ilegal del ejecutivo", como representante autorizado del Senado o de la Cámara de Representantes. Íd.

prerrogativas legislativas. Íd. Al cumplir con dicha exigencia tiene que asegurarse que no está invocando una prerrogativa abstracta y desligada del ejercicio de sus funciones legislativas. Íd. En particular, cuando un miembro de la legislatura alegue que se ha visto afectado porque no se le permite llevar a cabo su función fiscalizadora adecuadamente, debe tener presente que esto sólo implica contar con los mecanismos razonables y necesarios que permitan su participación plena en todas las etapas del proceso legislativo. Íd. En cuanto al reclamo del derecho a fiscalizar, el legislador deberá agotar todos los remedios que tenga a su disposición en aras de que se le permita y reconozca dicho derecho. Íd. Igualmente, el legislador deberá probar que existe una conexión entre el daño que alega haber sufrido y la acción que ejercita. Íd.

El Gobierno alegó, entre otras cosas, que el recurrido carecía de legitimación activa basado en las siguientes premisas: (1) que las alegaciones del Senador eran de carácter genérico; (2) que el Senador no demostró cómo se vieron menoscabadas sus prerrogativas legislativas al no obtener la propuesta de presupuesto solicitada; (3) que las prerrogativas legislativas, en cuanto a la aprobación del presupuesto, se activan cuando el Gobernador lo somete a la Legislatura; (4) que no existe un deber ministerial de divulgar el "primer borrador" de proyecto de presupuesto, por lo que no se le causó un daño claro y palpable que justifique el reclamo realizado por el Senador, y (5) que el recurrido no agotó los procedimientos del Senado

específicamente diseñados para canalizar las solicitudes de información de sus miembros.

Luego de un análisis del derecho aplicable y de la información que surge del expediente, entendemos que el recurrido posee legitimación activa para realizar su reclamo en su capacidad de legislador. Veamos.

El recurrido señaló, entre otras cosas, que "[l]a falta de acceso al documento de presupuesto adoptado por el Gobernador y enviado a la Junta, ha coartado y lesionado la facultad del Senador Bhatia de ejercer su prerrogativa y rol como legislador, y de evaluar y aprobar el presupuesto **contando con el beneficio de un documento público que incide sobre la decisión atinente a la idoneidad del presupuesto sometido a la consideración del Senado**". (Énfasis nuestro). *Oposición a Moción de Desestimación*, pág. 9. Posteriormente, añadió que "[l]a negativa del Gobernador de divulgar y entregarle al Senador Bhatia el presupuesto que el Gobernador adoptó y que le remitió a la Junta, ha interferido y sigue interfiriendo con las prerrogativas del Senador Bhatia de **evaluar el presupuesto con el beneficio de escudriñar todos los documentos que han servido de base para la presentación a la Asamblea Legislativa, del proyecto de presupuesto aprobado por la Junta**". (Énfasis nuestro). *Oposición a Moción de Desestimación*, pág. 10. Aludió también a que se coartó su prerrogativa de asegurar la buena marcha de los procedimientos de aprobación del presupuesto y de velar por la transparencia entre el Primer Ejecutivo y la Junta.

A tales efectos, entendemos que el recurrido particularizó su reclamo en torno a cómo la ausencia del documento en cuestión afectó su proceso de análisis, previo a la aprobación del presupuesto sometido ante los cuerpos legislativos. Asimismo, cabe señalar que el reclamo del Senador en su carácter oficial igualmente estuvo fundamentado en el derecho constitucional de acceso a la información pública.[10] Entendemos entonces que el recurrido, en su rol de legislador, reclamó válidamente que sufrió un daño claro y palpable que impactó sus prerrogativas legislativas, el cual se produjo al coartarle el acceso a lo que él alega es información pública, vulnerando así el derecho constitucional antes indicado. Asimismo, existe conexión entre el daño reclamado y la causa de acción que ejercitó.

Por último, y como veremos más adelante, en la medida en que el recurrido acudió en calidad de Senador, amparado en su derecho constitucional al acceso a la información pública y particularizó cómo la transgresión a dicho derecho afectó sus prerrogativas legislativas, entendemos que no era necesario que agotara trámite parlamentario alguno antes de acudir al foro judicial.

    **B. Academicidad**

_____

[10] Es importante mencionar que, a diferencia de los casos anteriores atinentes a la legitimación activa de legisladores, en la situación de autos la controversia no se desarrolla en el ámbito legislativo, sino como un **reclamo individual del Senador en su carácter oficial** para cumplir con sus funciones legislativas. De este modo, no existe riesgo alguno de que la determinación de este Foro interfiera con la separación de poderes entre la Rama Legislativa y la Rama Judicial.

Según mencionado anteriormente, la academicidad es una de las doctrinas que acotan los límites de la función judicial. C.E.E. v. Depto. de Estado, 134 DPR 927 (1993). Requiere que, en todo pleito presentado ante un tribunal, exista una controversia real entre las partes. Amador Roberts et als. v. ELA, 191 DPR 268 (2014). Un caso se torna académico cuando la cuestión en controversia sucumbe ante el paso del tiempo, ya sea porque ocurrieron cambios en los hechos o el derecho, y la misma se vuelve inexistente. IG Builders et al. v. BBVAPR, 185 DPR 307 (2012); U.P.R. v. Laborde Torres y otros I, 180 DPR 253 (2010); Emp. Pur. Des., Inc. v. H.I.E.Tel., 150 DPR 924 (2000). Ello tendrá como consecuencia que el dictamen que en su día emita el tribunal no surtirá efecto práctico entre las partes. IG Builders et al. v. BBVAPR, supra. Es decir,

> [l]os tribunales pierden su jurisdicción sobre un caso por academicidad cuando ocurren cambios durante el trámite judicial de una controversia particular que hacen que ésta pierda su actualidad, de modo que el remedio que pueda dictar el tribunal no ha de llegar a tener efecto real alguno en cuanto a esa controversia. C.E.E. v. Depto. de Estado, supra, pág. 935.

Por imperativo constitucional (ausencia de caso o controversia) o por motivo de autolimitación judicial, los tribunales debemos abstenernos de considerar los méritos de un caso cuando determinemos que el mismo se ha tornado académico. Presidente de la Cámara v. Gobernador, 167 DPR 149 (2006); Asoc. de Periodistas v. González, 127 DPR 704 (1991). No obstante, pueden surgir escenarios en los

cuales los tribunales atenderán el caso, aunque sea, a todas luces, académico. _Emp. Pur. Des., Inc. v. H.I.E.Tel._, *supra*; _C.E.E. v. Depto. de Estado_, *supra*. Acorde a lo anterior, las excepciones a la academicidad operan cuando: (1) se plantea ante el foro judicial una cuestión recurrente o susceptible de volver a ocurrir y que tienda a evadir la revisión judicial; (2) cuando la situación de hechos ha sido modificada por el demandado, pero el cambio no aparenta ser permanente, y (3) cuando se tornan académicos aspectos de la controversia, pero subsisten consecuencias colaterales vigentes. _Asoc. Fotoperiodistas v. Rivera Schatz_, *supra*; _Rullán v. Fas Alzamora_, 166 DPR 742 (2006).

En el caso de autos, el Gobierno alegó que la controversia se tornó académica al culminar el proceso de aprobación del presupuesto para el año fiscal 2017-2018 y en consideración a que el Senador tuvo la oportunidad de evaluar el mismo cuando fue sometido ante los cuerpos legislativos.

No obstante, coincidimos con el foro primario en cuanto a que los peticionarios nunca demostraron que, en efecto, el documento que fue sometido para la consideración y evaluación de los cuerpos legislativos era el mismo que fue presentado ante la Junta el 30 de abril de 2017. Conforme a lo anterior, entendemos que este litigio se podría haber tornado en uno académico **si se hubiera**

**divulgado el mismo documento que fue solicitado**, pero ese no fue el caso.[11]

Por otro lado, independientemente que se haya aprobado el presupuesto, por tratarse de **otro** documento que no ha sido producido, **y del mismo ser público**, el Gobierno tendría que divulgarlo, **a menos que aplique algún privilegio que lo impida**.

Como resultado de lo antes indicado, concluimos que el asunto objeto del presente recurso no se ha tornado académico.

### C. *Mandamus*

El Código de Enjuiciamiento Civil establece el *mandamus* como un recurso extraordinario "altamente privilegiado", dirigido a una persona natural o jurídica con el propósito de exigirle judicialmente el cumplimiento de un deber ministerial en función del cargo que ocupa. Art. 650 del Código de Enjuiciamiento Civil, 32 LPRA sec.

---

[11] El 17 de julio de 2017 el Tribunal de Primera Instancia le ordenó al Gobierno que aclarara si la información solicitada por el Hon. Eduardo Bhatia Gautier (Senador o recurrido) se había hecho pública. Ello pues, según sostuvo el foro primario, "de los argumentos de Rosselló Nevares pareciera surgir que la información solicitada por Bhatia Gautier -el Proyecto de Presupuesto presentado por Rosselló Nevares a la Junta el 30 de abril de 2017- no es la misma información que aquella que fue hecha pública por la parte demandada". Véase la pág. 4 de la Orden emitida por el Tribunal de Primera Instancia el 17 de julio de 2017. En respuesta a lo anterior, el 21 de julio de 2017 el Gobierno presentó una *Moción en Cumplimiento de Orden* en la que sostuvo que "el Presupuesto sometido ante la Asamblea Legislativa fue el aprobado por la Junta de Control Fiscal **luego de incorporar** las enmiendas requeridas por ésta al Gobernador, de conformidad con el trámite dispuesto en PROMESA. El borrador de presupuesto entregado a la Junta no se ha hecho público, constituyendo el mismo un documento de trabajo que correspondía -como en efecto lo fue- ser revisado por la Junta de Control Fiscal y devuelto al Gobernador para luego someter la versión final a la Asamblea Legislativa". (Énfasis en el original). Véase la pág. 6 de la *Moción en Cumplimiento de Orden* presentada por el Gobierno ante el foro primario el 21 de julio de 2017. Asimismo, en la Petición de *Certiorari* presentada ante nos el Gobierno alegó que el recurrido no particularizó su reclamo de menoscabo a sus prerrogativas legislativas al "no contar con el *borrador de la propuesta inicial* de presupuesto que el Gobernador le remitió a la Junta, **un documento que no es el proyecto de presupuesto que fue sometido ante la consideración de la legislatura, para su discusión, análisis y aprobación**". (Bastardillas en el original; negrillas y subrayado nuestro). Véase la pág. 15 de la Petición de *Certiorari*.

3422 (2004). En otras palabras, está de por medio una obligación cierta que no admite el ejercicio de discreción en su cumplimiento. AMPR v. Srio. Educación, E.L.A., 178 DPR 253 (2010); Báez Galib y otros v. C.E.E. II, 152 DPR 382 (2000). Debido a su naturaleza privilegiada, el propio estatuto dispone que no procede el *mandamus* cuando existen remedios adecuados y eficaces disponibles al promovente. Art. 651 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3423 (2004). Asimismo, como regla general, previo a acudir al tribunal, la parte interesada debe haber interpelado al funcionario responsable de cumplir la obligación ministerial que se exige. AMPR v. Srio. Educación, E.L.A., *supra*. Se exime del requisito de interpelación cuando hacerlo hubiese resultado inútil o cuando el deber que se reclama es de carácter público. Es decir, que afecta al público en general y no exclusivamente a la parte promovente de la acción instada. Íd.

De otra parte, hemos reconocido que, de ordinario, el *mandamus* resulta el mecanismo indicado para lograr la inspección y para obtener copia de documentos públicos. Ortiz v. Panel F.E.I., 155 DPR 219 (2001).

Al atender una petición de *mandamus*, los tribunales evalúan el posible impacto de su determinación en los intereses públicos implicados y procuran evitar una intromisión indebida en las gestiones del poder ejecutivo. AMPR v. Srio. Educación, E.L.A., *supra*; Báez Galib y otros v. C.E.E. II, *supra*; Noriega v. Hernández Colón, *supra*.

Los peticionarios argumentan que la petición de *mandamus* sometida en este caso es defectuosa por dos (2) razones. Primeramente, aducen que el Senador, a nivel personal, no cursó un requerimiento previo al Gobernador. A esos efectos, plantean que la carta enviada por el recurrido requiriendo copia del documento en disputa se remitió exclusivamente en su capacidad de Senador. Asimismo, apoyan la desestimación de la petición de *mandamus* argumentando que el recurrido no agotó los remedios provistos en el Reglamento del Senado de Puerto Rico, adoptado mediante la R. del S. 13 de 9 de enero de 2017 (Reglamento del Senado), que establece un procedimiento para solicitar documentos en su capacidad oficial a través del Senado.

### i.  Requerimiento

Los peticionarios aducen que el Senador no hizo un requerimiento para la producción del documento en su carácter personal. Sostienen que, en la carta[12] remitida al Gobernador con ese propósito, fechada el 2 de mayo 2017, el recurrido compareció exclusivamente en calidad de legislador. Coincidimos con esta apreciación.

Para comenzar, el escrito se redactó en papel oficial del Senado de Puerto Rico, en el que aparecía el nombre del

_____

[12] Dicha carta lee de la siguiente manera en su parte pertinente:

"He advenido en conocimiento que, el pasado domingo, 30 de abril de 2017, su equipo de trabajo sometió a la Junta de Supervisión Fiscal un Proyecto de Presupuesto correspondiente al año fiscal 2017-2018, según requerido en la Ley Federal PROMESA, 48 U.S.C. § 2101. Nuestro Tribunal Supremo ha discutido extensamente el tema del acceso a la información, y ha establecido de manera clara e inequívoca que la información en posesión del Estado es pública y debe estar accesible a la ciudadanía en general. Es por ello que le solicito que haga pública copia del mencionado Proyecto de Presupuesto, y comparta una copia con este servidor inmediatamente".

recurrido como Portavoz del Partido Popular Democrático. En ningún momento en la carta éste intimó que su reclamo al derecho constitucional al acceso a la información era en otro rol que no fuese el de funcionario público. Asimismo, al examinar la petición de *mandamus* presentada escasamente a los dos (2) días de haberse enviado esta misiva, podemos corroborar que los planteamientos del Senador según allí consignados, giraron estrictamente en su capacidad oficial. No es hasta después de que se presentó la solicitud de desestimación en el caso, que el recurrido enmendó su petición de *certiorari* para insertar por primera vez referencias a su carácter personal.

De otra parte, no está en controversia que el Senador, en su carácter oficial, cursó un requerimiento previo al Gobernador para la producción del documento en cuestión. Ahora bien, es menester examinar si, en esa capacidad, venía también obligado a cumplir con algún trámite reglamentario ulterior.

## ii. Reglamento del Senado

Los peticionarios centran su argumento en contra de la viabilidad del auto de *mandamus* presentado por el Senador en su capacidad como legislador, por alegadamente no valerse de los remedios disponibles en ley para canalizar su reclamo a través del Reglamento del Senado.

El poder de investigación de la Asamblea Legislativa constituye un componente integral de su función

legisladora. De una parte, esta potestad sirve de mecanismo valioso para llevar a cabo aquellas averiguaciones necesarias para evaluar legislación futura. Pueblo v. Pérez Casillas, 117 DPR 380 (1986). Asimismo, aparte de promulgar leyes, este Cuerpo realiza otras funciones vitales conducentes a robustecer nuestro sistema democrático de gobierno. Entre ellas, se destacan la fiscalización del gobierno, promover el debate de asuntos de interés general y mantener al país informado de los aconteceres públicos. Rullán v. Fas Alzamora, *supra*; Silva v. Hernández Agosto, 118 DPR 45 (1986); Pueblo v. Pérez Casillas, *supra*; Exposición de Motivos de la Ley Núm. 100 de 23 de junio de 1955, según enmendada, 2 LPRA 151 (2009) (Ley Núm. 100). Este proceso investigativo comúnmente se realiza a través de las diversas comisiones o subcomisiones de ambos cuerpos. Pueblo v. Pérez Casillas, *supra*; Silva v. Hernández Agosto, *supra*.

La facultad de la Asamblea Legislativa para compeler la comparecencia de testigos y la producción de documentos aparece consignada en el Código Político. Como parte del trámite estatutario, se requiere que cualquier citación a esos efectos esté firmada, ya sea por el Presidente del Senado, el de la Cámara de Representantes o de la comisión ante la cual debe comparecer el testigo. Art. 31 de la Ley Núm. 100, 32 LPRA sec. 151(a).

En caso de incumplimiento, la Asamblea Legislativa tiene a su discreción utilizar, ya sea la vía penal o el trámite judicial civil, para exigir que se cumpla con lo

provisto en la citación. Así pues, se le autoriza a presentar el asunto ante el Secretario de Justicia quien "tendrá el deber de formular las acusaciones correspondientes ante el Tribunal de Primera Instancia". Art. 34 del Código Político, 2 LPRA sec. 154 (2009). La presentación de cargos no es discrecional. Es decir, de cumplirse con las exigencias estatutarias, se le impone la obligación al ministerio público de iniciar un proceso penal. Pueblo v. Pérez Casillas, *supra*. Igualmente, podrá acudirse al tribunal para requerir el cumplimiento a través de un proceso de desacato civil. Art. 34-A del Código Político, 2 LPRA sec. 154a (2009).

A tono con lo anterior, y con el propósito de viabilizar estas facultades investigativas amplias, se promulgó el Reglamento del Senado mediante el cual se implanta el mecanismo aplicable para la expedición formal de citaciones. Así pues, la Regla 13 del Reglamento del Senado gobierna lo concerniente a citaciones que forman parte de procesos **ante comisiones legislativas.** En estos casos, se exige que la citación lleve la firma del Presidente del Senado o del Presidente de la Comisión que corresponda. Regla 13, sec. 13.14 del Reglamento del Senado.

De otra parte, la Regla 18 del Reglamento del Senado dictamina el trámite atinente a **Resoluciones del Senado.** Entre otras, se define el término "Resolución" como aquella medida que utiliza el Cuerpo para formular peticiones del Senado, así como ordenar estudios o investigaciones. Regla

18, sec. 18.1(a) y sec. 18.1(d) del Reglamento del Senado. En la eventualidad de que un senador interese solicitar información a cualquiera de las otras Ramas del Gobierno, sus funcionarios o empleados, **"a nombre del Senado"**, deberá someter una petición verbal o escrita ante el Cuerpo a esos efectos y, de haber objeción, la petición se llevará a votación. Si, luego de cumplirse con los trámites de rigor, el funcionario o empleado concernido no acata el requerimiento antes señalado, el Senado podrá acudir al tribunal para exigir su cumplimiento. Regla 18, sec. 18.2 del Reglamento del Senado.

Como podemos notar, el Reglamento del Senado vislumbra dos (2) métodos alternos para los senadores obtener documentos a través del proceso reglamentario. Primeramente, conforme a la Regla 13 del Reglamento, se autoriza la citación para producir documentos como parte de las labores de investigación, estudio o evaluación de alguna medida legislativa o asunto bajo la consideración de una **comisión** del Cuerpo Legislativo, previa autorización del Presidente del Senado o del senador que la presida. Habida cuenta de que la solicitud en controversia en este caso no está asociada a comisión alguna, esta disposición resulta inaplicable.

La Regla 18, sec. 18.2 del Reglamento del Senado tampoco es de aplicación a la controversia planteada ante nos. Esta disposición establece el trámite a seguir cuando algún legislador interesa obtener información de funcionarios de cualquiera de las Ramas del Gobierno a

través de una Resolución a nombre del Senado. Este método resulta altamente efectivo en la medida en que establece un mecanismo para compeler la divulgación de la información requerida mediante el procedimiento de desacato judicial.

Sin embargo, nada impide que un senador, amparado en su derecho constitucional al acceso a la información, **procure información pública directamente** de algún funcionario o entidad gubernamental. No obstante, al así hacerlo, no podrá contar con el beneficio del trámite provisto para compeler la producción de la información solicitada, según dispuesto en el Reglamento del Senado. De interesarle hacer valer su requerimiento, la parte promovente tendrá que gestionar el correspondiente mandato judicial por su cuenta.

Por lo tanto, rechazamos el argumento basado en el alegado incumplimiento del Senador con las disposiciones del Reglamento del Senado.

En conclusión, el Senador podía utilizar el auto de *mandamus* para realizar su reclamo.

### D. Derecho Constitucional de Acceso a la Información Pública

Hace ya más de tres décadas que, en Soto v. Srio. de Justicia, 112 DPR 477 (1982), reconocimos el derecho de la prensa y de los ciudadanos en general a tener acceso a la información pública como un derecho fundamental de estirpe constitucional. Este derecho está firmemente ligado al ejercicio de los derechos de libertad de palabra, prensa y asociación formalmente consagrados en el Art. II, Sec. 4 de

la Constitución de Puerto Rico, LPRA, Tomo 1 (2016). Trans
Ad de P.R. v. Junta de Subastas, 174 DPR 56 (2008); Ortiz
v. Dir. Adm. de los Tribunales, 152 DPR 161 (2000).

El acceso a la información pública constituye un pilar
fundamental en toda sociedad democrática. Este
conocimiento permite a los ciudadanos evaluar y fiscalizar
la función pública adecuadamente a la vez que contribuye a
una participación ciudadana efectiva en los procesos
gubernamentales que impactan su entorno social. Trans Ad
de P.R. v. Junta de Subastas, *supra*; Colón Cabrera v.
Caribbean Petroleum, 170 DPR 582 (2007). Se abona de este
modo a la transparencia en la función gubernamental y se
promueve una sana administración pública. C.F. Ramos
Hernández, *Acceso a la información, transparencia y
participación política*, 85 Rev. Jur. UPR Núm. 4, pág. 1015
(2016).

No podemos olvidar que, en nuestra realidad política,
el gobierno como entidad, existe en función del Pueblo al
que sirve.

> Cualquiera que sea la definición que
> ascribamos al concepto "democracia", su
> principio cardinal es que el poder político ha
> de residir en el pueblo y que los gobernantes
> ejercen sus funciones para el pueblo y por
> mandato de éste. Mal podría gobernarse a sí
> mismo un pueblo que estuviere ajeno a cuanto
> sucede en la conducción de sus asuntos. E.
> Rivera Ramos, *La libertad de información:
> necesidad de su reglamentación en Puerto Rico*,
> 44 Rev. Jur. UPR, Núms. 1-2, pág. 69 (1975).

Asimismo, no es posible ejercer efectivamente los
derechos cobijados bajo el Art. II, Sec. 4 de la

Constitución de Puerto Rico, *supra*, si no existe constancia de los quehaceres de aquellos elegidos a gobernar.

> La premisa es sencilla, si el Pueblo no está debidamente informado del modo en que se conduce la gestión pública, se verá coartada su libertad de expresar, por medio del voto o de otra forma, su satisfacción o insatisfacción con las personas, reglas y procesos que le gobiernan. Ortiz v. Dir. Adm. de los Tribunales, *supra*, pág. 175.

El Art. 409 del Código de Enjuiciamiento Civil reconoce el derecho de todo ciudadano a inspeccionar y copiar cualquier documento público de Puerto Rico. 32 LPRA sec. 1781 (2004). Ahora bien, el derecho a la información no opera en el vacío. Es necesario que el documento que se pretende divulgar goce, en efecto, de esa condición pública. Ortiz v. Dir. Adm. de los Tribunales, *supra*.

Nuestro ordenamiento define el término "documento público" de la siguiente manera:

> [T]odo documento que se origine, conserve o reciba en cualquier dependencia del Estado Libre Asociado de Puerto Rico de acuerdo con la ley o en relación con el manejo de los asuntos públicos y que de conformidad con lo dispuesto en la sec. 1002 de este título se haga conservar […] permanentemente o temporalmente como prueba de las transacciones o por su valor legal. Incluye aquellos producidos de forma electrónica que cumplan con los requisitos establecidos por las leyes y reglamentos. Art. 3(b) de la Ley Núm. 5 de 8 de diciembre de 1955, Ley de Administración de Documentos Públicos de Puerto Rico, según enmendada, 3 LPRA sec. 1001(b) (2011).

Así pues, el derecho a la información no es absoluto y estará sujeto a aquellas limitaciones que, por necesidad imperiosa, el Estado imponga. Ortiz v. Dir. Adm. de los Tribunales, *supra*. Sin embargo, estas restricciones deben

estar debidamente justificadas puesto que no puede negarse el acceso a información pública de manera caprichosa y arbitraria. Colón Cabrera v. Caribbean Petroleum, *supra*. Y es que, dada su condición de derecho fundamental, para prevalecer, las restricciones impuestas por el aparato gubernamental deben responder a un interés apremiante del Estado. Nieves v. Junta, 160 DPR 97 (2003); Noriega v. Gobernador, 130 DPR 919 (1992).

En nuestra jurisdicción no se ha legislado específicamente para delimitar el acceso a documentos gubernamentales del escrutinio público.[13] Colón Cabrera v. Caribbean Petroleum, *supra*. Ahora bien, a través de las controversias traídas ante nuestra consideración para atender esta problemática, hemos podido delinear los siguientes supuestos en que le está permitido al Estado reclamar válidamente la confidencialidad de información que obra en su poder. Éstos son, cuando: (1) una ley así lo declara; (2) la comunicación está protegida por alguno de los privilegios evidenciarios que pueden invocar los ciudadanos; (3) revelar la información puede lesionar derechos fundamentales de terceros; (4) se trate de la identidad de un confidente, y (5) sea "información oficial" conforme a la Regla 514 de Evidencia, 2009, 32 LPRA Ap. VI (2010) (anteriormente la Regla 31 de Evidencia). Colón

---

[13] A diferencia de nuestro sistema legal, a nivel federal, se ha reglamentado esta materia estatutariamente y la evaluación de las solicitudes de información gubernamental dirigidas a los diferentes componentes de la Rama Ejecutiva se rige por las disposiciones del *Freedom of Information Act* (FOIA), 5 USCA sec. 552 (2007). Este estatuto aplica exclusivamente a las agencias de la Rama Ejecutiva del Gobierno Federal y no aplica al Gobierno de Puerto Rico. Véase 5 USCA sec. 551(1)(C) (2007 y Supl. 2015) y 5 USCA sec. 552(f)(1) (2007 y Supl. 2015).

Cabrera v. Caribbean Petroleum, *supra*. Es importante tener presente que le corresponde al Estado el peso de probar la aplicación de alguna de las excepciones antes enumeradas para poder validar su reclamo de confidencialidad. Colón Cabrera v. Caribbean Petroleum, *supra*.

### E. Privilegio sobre la Información Oficial – En General

Un reclamo de confidencialidad por parte del gobierno puede prosperar cuando se trate de información oficial privilegiada, entre otros. Colón Cabrera v. Caribbean Petroleum, *supra*; Santiago v. Bobb y El Mundo, Inc., 117 DPR 153 (1986). Así pues, la Regla 514 de Evidencia, *supra*, establece en nuestro ordenamiento el denominado privilegio sobre información oficial.[14] Dicha disposición define "información oficial" como "aquélla adquirida en confidencia por una persona que es funcionaria o empleada pública en el desempeño de su deber y que no ha sido oficialmente revelada ni está accesible al público hasta el momento en que se invoca el privilegio". Regla 514(a) de Evidencia, *supra*.[15] Este privilegio se activa "si el tribunal concluye que la

---

[14] Ante la ausencia de legislación especial que regule el privilegio de información oficial en nuestra jurisdicción, procede utilizar, como derecho supletorio en esta materia, la Regla 514 de Evidencia, 32 LPRA Ap. VI (2010). E.L. Chiesa Aponte, *Tratado de derecho probatorio*, República Dominicana, Ed. Corripio, [s. año], T. I, págs. 304-305, basado en Santiago v. Bobb y El Mundo, Inc., 117 DPR 153 (1986). Valga señalar que el citado *Tratado de derecho probatorio* del profesor Chiesa Aponte analiza la derogada Regla 31 de Evidencia de 1979, 32 LPRA Ap. IV, la cual es equivalente y sustantivamente idéntica a la vigente Regla 514 de Evidencia, *supra*. Véase, además, E.L. Chiesa Aponte, *Reglas de Evidencia Comentadas*, San Juan, Ed. Situm, 2016, pág. 164.

[15] Para determinar si una información fue adquirida en confidencia se debe considerar "la totalidad de las circunstancias que rodean la comunicación, así como su propia naturaleza". Chiesa Aponte, *Tratado de derecho probatorio*, *op. cit.*, pág. 307, citando a Santiago v. Bobb y El Mundo, Inc., *supra*, pág. 162. Por ejemplo, en el contexto de un ente administrativo, en López Vives v. Policía de P.R., 118 DPR 219, 233-234 (1987), expresamos que, ante un reclamo de confidencialidad por parte del gobierno, se debe examinar, entre otras cosas, "la propia naturaleza y contenido del documento, y el efecto de la divulgación sobre intereses del Estado".

materia es información oficial y su divulgación está prohibida por ley, o que divulgar la información en la acción sería perjudicial a los intereses del gobierno". Regla 514(b) de Evidencia, *supra*.[16]

El profesor Chiesa Aponte explica que:

El privilegio se funda, por un lado, en la necesidad que tiene el gobierno de mantener confidencial cierta información para la buena marcha del gobierno, particularmente en relación con la franca discusión de las alternativas gubernamentales o posibles cursos de acción para atender los múltiples problemas sociales, económicos — y de otra índole — del Estado […]". E.L. Chiesa Aponte, *Tratado de derecho probatorio,* República Dominicana, Ed. Corripio, [s. año], T. I, pág. 292.

Ahora bien, **este privilegio no es absoluto, sino cualificado, sujeto a un análisis de balance de intereses.** Chiesa Aponte, *Tratado de derecho probatorio, op. cit.*, pág. 292. Así pues, al evaluarlo, se tiene que sopesar, por un lado, la necesidad de que el gobierno mantenga confidencial cierta información sensitiva y el perjuicio que pueda invocar el gobierno y, por otro lado, la necesidad de la parte que solicita la información y su derecho a obtenerla. E.L. Chiesa Aponte, *Reglas de Evidencia Comentadas*, San Juan, Ed. Situm, 2016, pág. 164. Así pues, sólo cabe hablar del privilegio cuando "se trata de 'información oficial' y si el balance de intereses se inclina a favor de la confidencialidad". Chiesa Aponte, *Tratado de derecho probatorio, op. cit.*, pág. 307. Al reclamar la

_____

[16] Ahora bien, para establecer el privilegio, no es suficiente demostrar que la divulgación sería perjudicial a los intereses del gobierno, "[h]ay que atender al grado de perjuicio en comparación con el perjuicio que sufre la persona o entidad que solicita la información si no se ordena la divulgación". Chiesa Aponte, *Tratado de derecho probatorio, op. cit.*, pág. 308.

confidencialidad de información oficial, le corresponde al gobierno probar, de manera precisa e inequívoca, la aplicabilidad del privilegio. Santiago v. Bobb y El Mundo, Inc., *supra*.

Como explicamos previamente, "[l]a alta jerarquía del derecho constitucional de acceso a información hace difícil el reclamo gubernamental de confidencialidad, particularmente ante la ausencia de un estatuto regulador". Chiesa Aponte, *Tratado de derecho probatorio, op. cit.*, pág. 304. Véase, además, Colón Cabrera v. Caribbean Pretroleum, *supra*. En esa línea, dada la falta de legislación que delimite el privilegio, éste "debe escudriñarse con particular recelo". Chiesa Aponte, *Tratado de derecho probatorio, op. cit.*, pág. 304, citando a Peña Clos v. Cartagena Ortiz, 114 DPR 576, 599 (1983).[17] Así pues, ante un balance inclinado en contra del privilegio, el gobierno -en su momento- tendrá la obligación de "presentar prueba y demostrar la existencia de *intereses apremiantes de mayor jerarquía* que los valores protegidos por este derecho de libertad de información de los ciudadanos". Chiesa Aponte, *Tratado de derecho probatorio, op. cit.*, pág. 308, citando a Noriega v. Gobernador, *supra*, pág. 938. En consideración a ello, **el gobierno no puede invocar el privilegio de manera generalizada.** Santiago v. Bobb y el Mundo, Inc., *supra*; véase, además, Chiesa Aponte, *Tratado de derecho probatorio*,

---

[17] Del mismo modo, "los estatutos que restringen el derecho de acceso a información gubernamental son objeto de escrutinio judicial estricto y se interpretan restrictivamente". Chiesa Aponte, *Tratado de derecho probatorio, op. cit.*, pág. 305. Véase, además, Soto v. Srio. de Justicia, 112 DPR 477 (1982).

*op. cit.*, pág. 310. El profesor Chiesa Aponte también opina que "[e]l derecho del ciudadano a acceso a información de los asuntos del gobierno justifica poner una seria carga de persuasión en el gobierno cuando reclama el privilegio de información oficial". Chiesa Aponte, *Tratado de derecho probatorio*, *op. cit.*, pág. 295.

En fin, los tribunales debemos ser "cautelosos en conceder livianamente cualquier pedido de confidencialidad del Estado". <u>Santiago v. Bobb y El Mundo, Inc.</u>, *supra*, pág. 159. Al evaluar si procede reconocer el privilegio, "[l]as alternativas de inspección en cámara o proveer acceso limitado al expediente confidencial siempre están disponibles". Chiesa Aponte, *Tratado de derecho probatorio*, *op. cit.*, pág. 310.[18] Ahora bien, como discutiremos más adelante, la opción de examen en cámara puede limitarse en consideración a las circunstancias presentes en cada caso.

**F. Privilegio sobre la Información Oficial – La Información Decisional en los Procesos Deliberativos sobre Política Pública**

Entre las categorías fundamentales de información oficial privilegiada está la utilizada por funcionarios públicos durante los procesos deliberativos relacionados al desarrollo de política pública. Chiesa Aponte, *Tratado de*

---

[18] Cuando estamos ante un reclamo del privilegio sobre información oficial, no aplica "el escepticismo sobre la intervención y revisión judicial que se advierte en relación con [el privilegio sobre] los secretos de estado […]". Chiesa Aponte, *Tratado de derecho probatorio*, *op. cit.*, pág. 295. Nótese que los secretos de estado constituyen un privilegio de alto rango, en consideración a aspectos de seguridad nacional, lo que incluye secretos militares. Chiesa Aponte, *Tratado de derecho probatorio*, *op. cit.*, pág. 288. Por lo tanto, en el caso de secretos de estado, se podría reconocer el privilegio sin la necesidad de una inspección en cámara. Chiesa Aponte, *Tratado de derecho probatorio*, *op. cit.*, págs. 289-290, discutiendo el caso de <u>United States v. Reynolds</u>, 345 US 1 (1953).

*derecho probatorio*, *op. cit.*, págs. 292-293.[19] Esta

categoría del privilegio de información oficial busca

"promover la más franca comunicación entre los funcionarios

gubernamentales encargados de decidir y hacer valer la

política pública del Estado". Chiesa Aponte, *Tratado de*

*derecho probatorio*, *op. cit.*, pág. 293.[20] Conforme a lo

anterior, entendemos que el profesor Chiesa se refiere al

privilegio cualificado sobre procesos deliberativos del

gobierno o *deliberative process privilege*. Véase 6 *Moore's*

*Federal Practice* Sec. 26.52[5] (3ra ed. 2016) y 26A *Wright*

*& Graham*, *Federal Practice and Procedure: Evidence* Sec.

5680 (1992).

Este privilegio evita que se afecte la calidad de las

decisiones gubernamentales y de las funciones consultivas

de las agencias. P.F. Rothstein y S.W. Crump, *Federal*

*Testimonial Privileges: Evidentiary Privileges Relating to*

*Witnesses & Documents in Federal Law Cases*, 2da ed., West,

2012, Sec. 5:3, págs. 431-432. En esa línea, se ha

reconocido que "[…] *a substantial public interest exists in*

*maintaining and ensuring full, frank, open exchanges of*

*ideas between members of the agency and other advisors and*

---

[19] Nótese que, previo a este caso, no habíamos tenido la oportunidad de expresarnos en cuanto a esta categoría, reconocida en la esfera federal. No obstante, la discutiremos en la medida que nos ilustra en cuanto a su aplicabilidad en relación al privilegio sobre información oficial antes discutido.

[20] En Estados Unidos, este privilegio está regulado por la quinta excepción del FOIA, la cual expresamente protege comunicaciones (cartas y memorandos) dentro de una agencia, como también entre agencias de gobierno. 5 USCA sec. 552(b)(5) (2007). Véanse Chiesa Aponte, *Tratado de derecho probatorio*, *op. cit.*, pág. 293, y 26A *Wright & Graham*, *Federal Practice and Procedure: Evidence* Sec. 5680 (1992).

Igualmente, cabe señalar que **el privilegio se ha extendido jurisprudencialmente para proteger requerimientos presupuestarios (*budget requests*) de una agencia**. *Wright & Graham*, supra, pág. 133.

*the decision maker*". Rothstein y Crump, *op. cit.*, pág. 433. Además, el restringir el acceso a este tipo de comunicaciones protege "*against **premature disclosure** of proposed policies and decisions before they have been finally formulated or adopted*". (Énfasis nuestro). Rothstein y Crump, *op. cit.*, pág. 436.

Para beneficiarse del privilegio sobre procesos deliberativos, el gobierno debe cumplir con el siguiente proceso: (1) el jefe de la agencia que controla la información debe reclamarlo formalmente, esto luego de ponderarlo; (2) un oficial de la agencia debe proveer las razones precisas por las cuales se reclama la confidencialidad de la información o los documentos, y (3) el gobierno debe identificar y describir la información o los documentos que interesa proteger. *Moore's Federal Practice*, supra, pág. 26-412.10(1). Véase, además, United States v. Reynolds, 345 US 1 (1953).

**Además, para que se active el privilegio, el gobierno debe demostrar que el documento en cuestión es "deliberativo" y "pre-decisional".** *Moore's Federal Practice*, supra, pág. 26-412.8. Una información es deliberativa en la medida en que se relaciona a un proceso en el que se desarrolla o formula política pública. *Moore's Federal Practice*, supra, pág. 26-412.9. Un documento es "pre-decisional" cuando es preparado para asistir en la toma de decisiones del gobierno, es decir, previo a tomar las mismas. *Moore's Federal Practice*,

supra, págs. 26-412.8 y 26-412.9.[21]  Por lo tanto, "tampoco queda protegida la información o documentación posterior a la decisión gubernamental[…]".  Chiesa Aponte, *Tratado de derecho probatorio*, *op. cit.*, pág. 293; N.L.R.B. v. Sears, Roebuck & Co., 421 US 132 (1975).

Conforme a lo anterior, este privilegio no cubre lo relacionado a hechos (*factual matters*).[22]  Chiesa Aponte, *Tratado de derecho probatorio*, *op. cit.*, pág. 293.  Tampoco protege material objetivo ni documentos en los que la agencia adopta su posición sobre un asunto o controversia. *Moore's Federal Practice*, supra, págs. 26-412.6 y 26-412.7. Por ejemplo, este privilegio no incluye "*advisory opinions, recommendations, and communications relating to policy formulations*".  *Moore's Federal Practice*, supra, pág. 26-412.8.

**Para determinar si prevalece este privilegio, al igual que el privilegio sobre información oficial, el tribunal debe realizar un análisis de balance de intereses**.  Chiesa Aponte, *Tratado de derecho probatorio*, *op. cit.*, pág. 293. Entre los factores que el tribunal debe considerar al ponderar el balance de intereses, se encuentran: "[…] *the interests of the private litigant, the need for accurate*

_____

[21]  Para determinar si un documento es pre-decisional, se puede tomar en cuenta el propósito de la asesoría y el efecto que podría provocar la divulgación sobre las discusiones y la toma de decisiones dentro de o entre la(s) agencia(s) concernida(s), es decir, "[…] *the purpose of the advice and whether disclosure of the communication would be the type that is likely to chill intra- and inter-agency discussion and decision-making*".  6 *Moore's Federal Practice* Sec. 26.52[5], pág. 26-412.9 (3ra ed. 2016).

[22]  En varios foros federales se ha determinado que los *factual matters* pudieran estar cobijados bajo el referido privilegio en la medida que estén entrelazados con procesos decisionales o materiales deliberativos protegidos. *Moore's Federal Practice*, supra, pág. 26-412.7 esc. 24.2.

*judicial fact finding, the public's interest in learning how effectively the government is operating, the relevance of the evidence sought, the availability of other evidence, the role of the government in the litigation and issues involved, and the impact on the effectiveness of government employees". Moore's Federal Practice*, supra, 2012, pág. 26-412.11. **Además, se debe evaluar el impacto que provocaría la divulgación en el proceso de discutir francamente las políticas y decisiones en cuestión**. F.T.C. v. Warner Commun. Inc., 742 F.2d 1156 (9no Cir. 1984). En fin, este privilegio puede ceder cuando se demuestra cabalmente que existe una necesidad particularizada de obtener la información que es de mayor peso que las razones para la confidencialidad. *Moore's Federal Practice*, supra, pág. 26-412.11.

Los tribunales debemos tener flexibilidad al momento de evaluar este privilegio para así poder asegurar la protección del proceso deliberativo. *Moore's Federal Practice*, supra, 2016, pág. 26-412.10. No obstante, nuestro ordenamiento probatorio exige una interpretación restrictiva al determinar la existencia de un privilegio. Regla 518 de Evidencia, 32 LPRA Ap. VI (2010).[23]

   G. **Privilegio Ejecutivo**

   **El privilegio ejecutivo** fue reconocido en nuestro ordenamiento en Peña Clos v. Cartagena Ortiz, *supra*, derivado de la Constitución de Puerto Rico. Art. I, Sec. 2

---

[23] Esta interpretación restrictiva no le aplica a los privilegios de rango constitucional establecidos en las Reglas 501, 502 y 512 de Evidencia, 32 LPRA Ap. VI (2010).

y Art. IV, Secs. 1 y 4, Const. PR, LPRA, Tomo 1 (2016).**24**
Este privilegio **busca proteger las comunicaciones entre el
Primer Ejecutivo y sus respectivos subalternos, asesores o
ayudantes**. Chiesa Aponte, *Reglas de Evidencia Comentadas*,
*op. cit.*, pág. 165; J.J. Álvarez González, *Derecho
constitucional de Puerto Rico y relaciones constitucionales
con los Estados Unidos*, Bogotá, Ed. Temis, 2009, pág. 363;
Chiesa Aponte, *Tratado de derecho probatorio*, *op. cit.*, pág.
311.

En comparación con el privilegio sobre secretos de
estado, el privilegio ejecutivo es de menor jerarquía.
Chiesa Aponte, *Reglas de Evidencia Comentadas*, *op. cit.*,
pág. 165. Este último es cualificado, por lo que no le
concede a la Rama Ejecutiva una facultad absoluta "de
retener información sobre la base de su alegada
confidencialidad". Peña Clos v. Cartagena Ortiz, *supra*,
pág. 598. Véase *Wright & Graham*, supra, pág. 52. Así pues,
debemos reiterar que "una alegación desnuda de privilegio
público, sin apoyo en legislación adecuada, debe
escudriñarse con particular recelo". Peña Clos v. Cartagena
Ortiz, *supra*, pág. 599.

Por lo tanto, "[l]e corresponde también a la Rama
Judicial en última instancia precisar las fronteras de ese
[privilegio]". Peña Clos v. Cartagena Ortiz, *supra*, pág.

---

**24** Así pues, el privilegio se adoptó como corolario del principio de
separación de poderes. Chiesa Aponte, *Reglas de Evidencia Comentadas*, *op. cit.*,
pág. 165, al discutir el caso de Peña Clos v. Cartagena Ortiz, 114 DPR 576
(1983). Véase, además, J.J. Álvarez González, *Derecho constitucional de Puerto
Rico y relaciones constitucionales con los Estados Unidos*, Bogotá, Ed. Temis,
2009, pág. 363.

598. Véase, además, <u>United States v. Nixon</u>, 418 US 683 (1974) y Chiesa Aponte, *Tratado de derecho probatorio*, *op. cit.*, pág. 312. Para ello, como ya indicamos, generalmente se ha utilizado "el método de sopesar los intereses en conflicto". <u>Peña Clos v. Cartagena Ortiz</u>, *supra*, pág. 598. Véase, además, <u>United States v. Nixon</u>, *supra*.

### H. Inspección en Cámara

Por su valor ilustrativo, es menester adentrarnos en la jurisprudencia federal basada en el *Freedom of Information Act* (FOIA), 5 USCA sec. 552 (2007), en cuanto a la necesidad de una inspección en cámara. Veamos.

A pesar de que el FOIA, 5 USCA 552(a)(4)(B) (2007), permite el examen de documentos en cámara, los foros federales han manifestado, en reiteradas ocasiones, que esta alternativa es desfavorable en casos donde se reclaman ciertos privilegios gubernamentales. Véanse, por ejemplo, <u>Smith v. U.S. Marshals Serv.</u>, 517 Fed. Appx. 542 (9no Cir. 2013); <u>Lion Raisins v. U.S. Dept. of Agriculture</u>, 354 F.3d 1072 (9no Cir. 2004) derogado en parte en otros extremos por <u>Animal Legal Def. Fund v. U.S. Food & Drug Admin.</u>, 836 F.3d 987 (9no Cir. 2016); <u>Turner v. U.S. Dept. of the Treasury</u>, Núm. 15-CV00007-DAD-SKO, 2017 WL 1106030 (E.D. Cal. 2017); <u>Truthout v. Dept. of Justice</u>, 20 F. Supp. 3d 760 (E.D. Cal. 2014), *aff'd*, 667 F. Appx. 637 (9no Cir. 2016).[25] Incluso, no debe ser la primera alternativa, ya que se le debe dar,

---

[25] Véanse, además, <u>Lane v. Dept. of Interior</u>, 523 F.3d 1128 (9no Cir. 2008); <u>Schell v. U.S. Dept. of Health & Human Services</u>, 843 F.2d 933 (6to Cir. 1988); <u>Mead Data Cent., Inc. v. U.S. Dept. of Air Force</u>, 566 F.2d 242 (D.C. Cir. 1977), y 33 W*right & Koch, Federal Practice and Procedure: Judicial Review* Sec. 8440, pág. 524 (2006).

inicialmente, una oportunidad al Estado de justificar y demostrar su reclamo de confidencialidad. Lion Raisins v. U.S. Dept. of Agriculture, *supra*; Conservation Force v. Jewell, 66 F. Supp. 3d 46 (D.D.C. 2014), *aff'd*, Núm. 15-5131, 2015 WL 9309920 (D.C. Cir. 2015); Truthout v. Dept. of Justice, *supra*. Esto se puede lograr permitiéndole al Estado que presente una explicación detallada del privilegio reclamado, lo cual podría sustituir la inspección en cámara del documento en disputa. Solers, Inc. v. Internal Revenue Serv., 827 F.3d 323 (4to Cir. 2016); Hamdan v. U.S. Dept. of Justice, 797 F.3d 759 (9no Cir. 2015); Ethyl Corp. v. U.S. E.P.A., 25 F.3d 1241 (4to Cir. 1994). En otras palabras, el tribunal puede descansar en prueba suplementaria para determinar si procede el privilegio reclamado por el Estado. Lane v. Dept. of Interior, 523 F.3d 1128 (9no Cir. 2008); Lion Raisins v. U.S. Dept. of Agriculture, *supra*. De determinarse, en esa etapa, que procede el privilegio, la inspección en cámara no será requerida. Lewis v. I.R.S., 823 F.2d 375 (9no Cir. 1987).

Para propósitos del presente caso, encontramos muy revelador y pertinente lo indicado en el historial legislativo de una de las enmiendas al FOIA en relación a la inspección de documentos en cámara. Según indicado:

> *H.R. 12471 amends the present law to permit such in camera examination at the discretion of the court. While in camera examination need not be automatic, in many situations it will plainly be necessary and appropriate. **Before the court orders in camera inspection, the Government should be given the opportunity to establish by means of testimony or detailed affidavits that the documents are clearly exempt from disclosure**.*

*The burden remains on the Government under this law.* (Énfasis nuestro).    S. Rep. Núm. 93-1200, pág. 9 (1974), reimpreso en 1974 USCCAN 6285, 6287-88. Véase, también, Lewis v. I.R.S., *supra*, pág. 378 esc. 4.

En fin, en algunos casos particulares, el examen en cámara puede ser innecesario. Véanse: Hamdan v. U.S. Dept. of Justice, *supra*; Aids Healthcare Foundation v. Leavitt, 256 Fed. Appx. 954 (9no Cir. 2007); Lion Raisins v. U.S. Dept. of Agriculture, *supra*; Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973); Turner v. U.S. Dept. of the Treasury, *supra*. En particular, en el caso de Lion Raisins v. U.S. Dept. of Agriculture, *supra*, se determinó que, al no haber una controversia en cuanto al tipo de información contenida en el documento en disputa, la inspección en cámara sería un ejercicio fútil.[26]

Ahora bien, cuando el expediente y la prueba suplementaria del Estado no justifique satisfactoriamente el privilegio gubernamental, entonces el tribunal podrá inspeccionar en cámara los documentos en disputa. Islamic Shura Council of Southern California v. F.B.I., 635 F.3d 1160 (9no Cir. 2011); Lane v. Dept. of Interior, *supra*. Véase, además, 33 *Wright & Koch, Federal Practice and Procedure: Judicial Review* Sec. 8440, pág. 524 (2006).[27]

**III**

---

[26]  Véase Harvey's Wagon Wheel, Inc. v. N.L.R.B., 550 F.2d 1139 (9no Cir. 1976).

[27]  No debemos perder de vista que, aunque se tomen medidas cautelares, la inspección en cámara involucra ciertos riesgos a la confidencialidad de la información.  33 *Wright & Koch, Federal Practice and Procedure: Judicial Review* Sec. 8440, pág. 524 (2006).

En el presente caso, el foro primario determinó que, para evaluar si el documento en disputa es de naturaleza pública y si está cobijado por un privilegio, debía realizar una inspección en cámara del mismo.[28] En el recurso de *certiorari* ante nos, el Gobierno alegó que la inspección en cámara de un documento de trabajo constituye una interferencia indebida con los procedimientos y funciones de la Rama Ejecutiva.[29] En particular, se argumentó que existen privilegios gubernamentales que protegen la confidencialidad de documentos relacionados al ejercicio de las prerrogativas y funciones del Gobernador, a saber: el <u>privilegio ejecutivo</u> y el <u>privilegio sobre los procesos deliberativos</u>.

En esa línea, los peticionarios adujeron que el proyecto de presupuesto en disputa "constituye una comunicación interagencial producida durante el curso de un proceso deliberativo y de formación de política pública presupuestaria de dicho funcionario" (refiriéndose al Gobernador).[30] Por otro lado, el Senador reclamó que le asiste el derecho constitucional al acceso a la información pública.

---

[28]   Véanse las págs. 2-3 de la Resolución y Orden de 26 de julio de 2017 emitida por el Tribunal de Primera Instancia.

[29]   Petición de *Certiorari*, pág. 23.

[30]   Petición de *Certiorari*, pág. 24. Los peticionarios objetaron, además, la presentación del documento en controversia ante el Tribunal de Primera Instancia para inspección en cámara. Véase la pág. 19 de la Petición de *Certiorari* ("En este caso el foro de instancia claramente abusó de su discreción al acceder a resolver en los méritos el reclamo del Senador Bhatia Gautier, ordenándole al Primer Ejecutivo que le entregara el documento en pugna, en un sobre lacrado, para inspeccionarlo en cámara y determinar si es confidencial").

A base de lo anterior concluimos que, en el presente caso existe una controversia de derecho justiciable y genuina entre las partes. Por tratarse de un asunto de alto interés público que interpone derechos constitucionales de integrantes de las otras dos Ramas del Gobierno, es menester intervenir en este momento para considerar la necesidad de la inspección en cámara *a priori* del documento en cuestión que ordenó el foro primario.[31]

La inspección en cámara podría ser el vehículo a utilizarse en el contexto adecuado. Véase <u>Santiago v. Bobb y El Mundo, Inc.</u>, *supra*. Ahora bien, por tratarse de una controversia de derecho y por el tipo de documento en cuestión, entendemos que, <u>en el presente caso</u>, una inspección en cámara del mismo **en este momento** no aportaría al análisis del balance de intereses. Basta con examinar el proyecto de presupuesto **final** para conocer de qué consiste el documento en disputa.

Así pues, nos preguntamos, ¿qué exactamente es lo que se podría encontrar al inspeccionar el documento en cuestión con el propósito de tomar una determinación en el caso? No podemos pensar de qué manera esto sería relevante a <u>la verdadera controversia en el caso, a saber: si el Estado puede cumplir con su carga probatoria para sustentar los privilegios reclamados</u>. Claro está, previo a ello, se debe determinar si el documento en cuestión es efectivamente de naturaleza pública.

---

[31] Según anteriormente indicado, la utilidad de la inspección en cámara se ha reconocido en múltiples ocasiones como un vehículo supletorio para dirimir conflictos concernientes a reclamos de privilegio.

Para poder emitir una determinación, en el balance de intereses, en cuanto a si procede o no privilegio alguno en el presente caso, las partes deben **primero**, poner al tribunal en posición en cuanto a cuáles son los intereses en conflicto. Luego, de surgir razones de peso, y el tribunal entender que el examen del documento en cuestión es esencial a su análisis, entonces el foro primario podría solicitar el documento para una inspección en cámara. No antes.

Debemos recordar que, en el presente caso, el Estado reclamó unos privilegios gubernamentales a base de la alegada confidencialidad del documento en disputa. Entre éstos, alegó el privilegio ejecutivo, el cual tiene base constitucional. Ante un reclamo de un privilegio de esta índole, los tribunales debemos ser muy cautelosos en el manejo de la información en controversia. Tanto así, que no se debe ordenar la producción del documento para inspección en cámara a menos que sea **estrictamente necesario.**

Consecuentemente, opinamos que, en el caso ante nos, el foro primario denegó correctamente la moción de desestimación presentada por el Gobierno pero debió, inicialmente, ordenar a las partes someter sus respectivos memorandos de derecho para que éstas le pusieran en posición de determinar si el documento es de naturaleza pública y, de ser así, si proceden los privilegios alegados.[32] Sólo así,

_____

[32] Cabe mencionar que, mediante su Resolución y Orden de 26 de julio de 2017, el Tribunal de Primera Instancia no sólo ordenó al Gobierno producir "el Proyecto de Presupuesto presentado a la Junta el 30 de abril de 2017, para inspección en cámara", sino también "presentar una moción en la que **explique en**

y en consideración al balance de los intereses implicados, podría entonces el foro primario determinar si proceden o no los privilegios alegados.

Por el contrario, el foro primario ordenó la producción del documento en cuestión para inspección en cámara, antes de determinar si el mismo es de naturaleza pública y de resolver si la confidencialidad del documento en sí está protegida por alguno de los privilegios alegados. Abusó de su discreción al así hacerlo.

Por lo tanto, concluimos que erró el Tribunal de Apelaciones al negarse a expedir el recurso que le fuera presentado, al igual que el foro primario al ordenar la producción del documento en cuestión para inspección en cámara **en la etapa que lo hizo**, sin contar aún con las justificaciones específicas del Estado para negarse a divulgarlo.

**IV**

De conformidad con lo anteriormente indicado, sin ulterior procedimiento y al amparo de la Regla 50 del Reglamento de este Tribunal, *supra*, se expide el auto de *certiorari* solicitado y se revoca en parte la Resolución y Orden de 26 de julio de 2017 emitida por el Tribunal de Primera Instancia respecto a la producción del documento en controversia para inspección en cámara. Fuera de esto, se confirma dicha Resolución y Orden en los demás extremos no incompatibles con lo aquí dispuesto. Se deja sin

---

detalle las razones por las cuales la información solicitada, o parte de ella, cualifica para la aplicación del privilegio invocado". (Énfasis en el Original). Véase la Resolución y Orden de 26 de julio de 2017, a la pág. 3.

efecto la paralización ordenada y se devuelve el caso al foro primario para la continuación de los procedimientos de conformidad con lo indicado en la presente Opinión.

Se dictará Sentencia de conformidad.


                                    ROBERTO FELIBERTI CINTRÓN
                                         Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Hon. Eduardo Bhatia Gautier, en su carácter como portavoz del Partido Popular Democrático en el Senado de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Hon. Ricardo A. Rosselló Nevares, en su carácter de Gobernador de Puerto Rico; Estado Libre Asociado de Puerto Rico<br><br>Peticionarios | **CC-2017-668** | *Certiorari* |

SENTENCIA

En San Juan, Puerto Rico, a 15 de septiembre de 2017.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, sin ulterior procedimiento y al amparo de la Regla 50 del Reglamento de este Tribunal, 4 LPRA Ap. XXI-B (2012), se expide el auto de *certiorari* solicitado y se revoca en parte la Resolución y Orden de 26 de julio de 2017 emitida por el Tribunal de Primera Instancia respecto a la producción del documento en controversia para inspección en cámara. Fuera de esto, se confirma dicha Resolución y Orden en los demás extremos no incompatibles con lo dispuesto en la Opinión. Se deja sin efecto la paralización ordenada y se devuelve el caso al foro primario para la continuación de los procedimientos de conformidad con lo indicado en la Opinión.

Notifíquese inmediatamente por teléfono, facsímil o correo electrónico y posteriormente, por la vía ordinaria.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo, Interina. El Juez Asociado señor Kolthoff Caraballo emitió una Opinión de Conformidad. La Jueza Presidenta Oronoz Rodríguez, la Juez Asociada señora Rodríguez Rodríguez, el Juez Asociado señor Estrella Martínez y el Juez Asociado señor Colón Pérez emitieron Opiniones Disidentes.

Sonnya Isabel Ramos Zeno
Secretaria del Tribunal Supremo, Interina

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Hon. Eduardo Bhatia Gautier, en su carácter como portavoz del Partido Popular Democrático en el Senado de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Hon. Ricardo A. Rosselló Nevares, en su carácter de Gobernador de Puerto Rico; Estado Libre Asociado de Puerto Rico<br><br>Peticionarios | CC-2017-668 | Certiorari |

Opinión de Conformidad emitida por el Juez Asociado señor Kolthoff Caraballo

En San Juan, Puerto Rico, a 15 de septiembre de 2017.

## I

Del expediente en este caso surge claramente el hecho de que el documento en controversia constituye un **borrador**. Esto es, un documento que no es final, pues aún existe la posibilidad de que sea modificado **antes de ser notificado a su destinatario**. La parte recurrida insiste en argumentar que el mencionado documento no es un borrador, sino un "proyecto de presupuesto" o una "propuesta" dirigida a la Junta de Supervisión y Administración Financiera para Puerto Rico (Junta de Supervisión Fiscal). Sea cual fuere la forma en que se intitule el referido documento, en lo que no existe

controversia es que éste era un documento sujeto a cambios y, por lo tanto, no era final hasta que se enviara a su destinatario. Lo cierto es que lo que el Ejecutivo preparó y que es objeto de esta controversia fue el proyecto de presupuesto que, conforme a disposición constitucional, le es requerido enviar a la Asamblea Legislativa todos los años.[33] Ese es el trámite constitucional y ha sido el mismo que se ha seguido correctamente desde la aprobación de nuestra Ley Suprema. La única diferencia en esta ocasión es que la Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico (PROMESA, por sus siglas en inglés)[34] dispone que tal borrador de proyecto de presupuesto sea verificado por la Junta de Supervisión Fiscal, creada por la referida ley federal. Durante más de 60 años, el Ejecutivo ha preparado el borrador del presupuesto teniendo el espacio para, como borrador al fin, hacer los cambios que sean necesarios **antes** de enviarlo a la Asamblea Legislativa.

Siendo así, ¿cuál es la ley que convierte en documento público el **borrador** del presupuesto que el Poder Ejecutivo envió, **no a su destinatario** -la Asamblea Legislativa- sino a la Junta creada por legislación federal? ¿Convierte la conocida Ley PROMESA ese documento en uno público? De no ser así, ¿la Sec. 1001 de la Ley de

_____

[33] Art. IV, Sec. 4, Const. ELA, LPRA, Tomo 1.

[34] Puerto Rico Oversight, Management and Economic Stability Act of 2016, 48 USCA sec. 2101 *et seq.*

Administración de Documentos Públicos de Puerto Rico[35] enmarca esta situación particular? La contestación a estas preguntas es en la negativa, y me parece que no podría ser de otra forma. **El derecho del Pueblo a saber, el cual emana de la Primera Enmienda de la Constitución federal y de nuestra Carta de Derechos como piedra angular de nuestra democracia, no incluye ni puede incluir -bajo los parámetros del sentido común y la justicia- el <u>borrador</u> de lo que en un momento podría llegar a ser un documento público.** De otra manera, las ideas, el sentir y los pensamientos de los funcionarios en su gestión pública sucumbirían ante la posibilidad de llegar a ser rehenes (entre otros males) de la terrible demagogia (aunque ciertamente no podría especular que sería éste el caso). No debemos pasar por alto que, aunque los términos "democracia" y "demagogia" podrían tener alguna similitud fonética, son ciertamente muy distintos. La democracia constituye la raíz y la razón de ser del derecho del Pueblo a saber, del cual es garante la Primera Enmienda de la Constitución federal y nuestra Carta de Derechos. Mientras que la demagogia, aunque protegida por esas mismas garantías constitucionales, constituye un terrible germen maligno de nuestra democracia, el cual no conviene alimentar.

Establecer, como pretende la parte recurrida, que un **borrador que no ha sido enviado a su destinatario**

---

[35] 3 LPRA sec. 1001.

constituye de por sí un documento público, no obedece al derecho positivo y, peor aún, abre la puerta a situaciones que en nada ayudan al buen desarrollo de la función pública. Por tal razón, estoy conforme con la Opinión emitida por la Mayoría del Tribunal.

## II

A. El derecho de los ciudadanos al acceso de "documentos públicos"

En una sociedad como la nuestra, es necesario reconocerle a todo ciudadano "el derecho legal de examinar e investigar cómo se conducen sus asuntos, sujetos sólo a aquellas limitaciones que impone la más urgente necesidad pública". (Énfasis suprimido).[36] Así, hemos reconocido el derecho de acceso a información pública como un corolario necesario al ejercicio de los derechos de libertad de palabra, prensa y asociación consagrados en el Art. II, Sec. 4 de la Constitución del Estado Libre Asociado, LPRA, Tomo 1.[37] El propósito primordial de esa sección es garantizar la libre discusión de los asuntos de gobierno.[38] Por ello, es necesario facilitar a todos los ciudadanos de nuestro País el derecho a examinar el contenido de los expedientes, informes y documentos que se recopilan en la gestión de gobierno.[39] Ello pues, "si el Pueblo no está debidamente informado del modo en que se conduce la

---

[36] Soto v. Srio. de Justicia, 112 DPR 477, 485 (1982).

[37] Ortiz v. Dir. Adm. de los Tribunales, 152 DPR 161, 175 (2000).

[38] Íd.

[39] Íd.

gestión pública, se verá coartada su libertad de expresar, por medio del voto o de otra forma, su satisfacción o insatisfacción con las personas, reglas y procesos que le gobiernan".[40]

Ahora bien, aunque el derecho de acceso a la información pública es uno fundamental por el estrecho vínculo que existe con los derechos a la libertad de expresión, asociación y a pedir al Gobierno reparación de agravios, éste no es absoluto ni ilimitado.[41] Este derecho puede ser limitado por el Estado si existe un interés apremiante que lo justifique.[42] Por tal motivo, este Tribunal ha establecido que el derecho de acceso a determinada información en poder del Estado **depende, en primer lugar, de si la información solicitada es en realidad información pública**.[43] A esos fines, nuestro ordenamiento jurídico ha dado varias definiciones al término "información pública". Una de ellas es la dispuesta en el Art. 1(b) de la Ley Núm. 5 de 8 de diciembre de 1955 (Ley Núm. 5), según enmendada, conocida como la Ley de Administración de Documentos Públicos de Puerto Rico, 3 LPRA secs. 1001-1013.

El Art. 1 de la Ley Núm. 5, *supra*, dispone que el propósito del estatuto es "establecer un programa

---

[40] Ortiz v. Dir. Adm. de los Tribunales, supra, pág. 175.

[41] Íd.; López Vives v. Policía de P.R., 118 DPR 219, 228 (1987); Soto v. Srio. de Justicia, supra, pág. 493.

[42] López Vives v. Policía de P.R., supra, pág. 229.

[43] Ortiz v. Dir. Adm. de los Tribunales, supra, pág. 176; Pueblo v. Tribunal Superior, 96 DPR 746, 755 (1968).

sistemático de **conservación de documentos**, que en consideración a su valor histórico, legal, administrativo o informativo merecen preservarse por mucho más tiempo, y la eliminación de aquellos documentos que no solamente carecen de valor permanente, sino que además han perdido ya toda su utilidad administrativa". (Énfasis nuestro). 3 LPRA sec. 1001 nota.

En particular, el inciso (b) del Art. 3 de la Ley Núm. 5, *supra*, define "documento público" de la manera siguiente:

> Es todo documento que se origine, conserve o reciba en cualquier dependencia del Estado Libre Asociado de Puerto Rico de acuerdo con la ley o en relación con el manejo de los asuntos públicos y que de conformidad con lo dispuesto en la sec. 1002 de este título se haga conservar que se requiera conservar permanentemente o temporalmente como prueba de las transacciones o por su valor legal. Incluye aquellos producidos de forma electrónica que cumplan con los requisitos establecidos por las leyes y reglamentos.

Por su parte, el Art. 1170 del Código Civil, 31 LPRA sec. 3271, establece que "son documentos públicos los autorizados por un notario o empleado público competente, con las solemnidades requeridas por ley".

Por consiguiente, cuando un documento cumple con lo dispuesto por alguna de estas definiciones, el ciudadano común tiene derecho a solicitar acceso a la información y

el Estado sólo podrá negar válidamente el acceso en un número determinado de supuestos.[44]

A base de lo anterior, al evaluar la controversia ante nuestra consideración, el primer análisis que debemos realizar es si un "borrador", preparado por un funcionario en el ejercicio de su cargo, que **no ha sido enviado a su destinatario** constituye de por sí un documento público.

En Pueblo v. Tribunal Superior, 96 DPR 746 (1968), este Tribunal tuvo ante sí una controversia que, aunque en un escenario distinto al que nos ocupa, indudablemente nos ayuda a ilustrar la naturaleza especial de los documentos que son preparados y circulados en el curso del cargo de un funcionario para fines internos de la entidad gubernamental. Allí, se le imputaron tres cargos al acusado por infringir la Ley de Contribuciones sobre Ingresos. A esos efectos, el acusado solicitó al Tribunal de Primera Instancia que ordenara al Secretario de Hacienda que le suministrara copia de los informes preparados por los Inspectores del Negociado de Contribuciones sobre Ingresos (Inspectores) en cuanto a su caso, ya que el Secretario de Hacienda se había negado a proveerlos.[45] El foro de instancia denegó dicha petición

---

[44] Ortiz v. Dir. Adm. de los Tribunales, supra, pág. 176.

[45] Pueblo v. Tribunal Superior, supra, pág. 748.

por el fundamento de que esos documentos no estaban bajo la custodia del Fiscal.[46]

Inconforme con esa determinación, el acusado solicitó una reconsideración mediante la cual invocó que los informes preparados por el Negociado de Contribuciones sobre Ingresos, productos de la investigación administrativa del caso, no formaban parte del trabajo del Fiscal, no eran declaraciones juradas y no tenían la protección de la Regla 95 de Procedimiento Criminal.[47] Luego de evaluar los planteamientos de las partes, el tribunal de instancia reconsideró su determinación y resolvió que debía proporcionarse al acusado copia del informe presentado al Secretario de Hacienda por los Inspectores o permitírsele examinarlo o fotografiarlo.[48]

Al evaluar la naturaleza y el propósito de los documentos, este Tribunal resolvió que, a la luz del Art. 1170 del Código Civil, *supra*, "**un informe, memorando o escrito preparado por un empleado o funcionario en el ejercicio de su cargo o empleo para su superior o para fines internos de las decisiones y actuaciones departamentales no son documentos públicos que, conforme**

---

[46] <u>Pueblo v. Tribunal Superior</u>, supra, pág. 748.

[47] Íd., págs. 748-749.

[48] Íd., pág. 749.

**al Art. 47 de la Ley de Evidencia, todo ciudadano tiene derecho a inspeccionar"**. (Énfasis nuestro).[49]

En ese sentido, concluimos que, a pesar de que el informe de los Inspectores, preparado en el curso de sus cargos y presentado a su superior (el Secretario de Hacienda) para las determinaciones de éste, probablemente podía tener materia de evidencia propia para desfilar en el juicio, no había duda de que también contenía otras materias que no lo eran; entre ellas: las interpretaciones de esos funcionarios de determinados hechos, sus conclusiones subjetivas de tales hechos, así como sus conclusiones a tenor de la ley contributiva que administran y, en lo que a la acción criminal respecta, también podía contener el método de trabajo o el enfoque o la estrategia de los funcionarios del Estado para sostener la acusación.[50]

Nuestra determinación en ese caso se basó en motivos de orden público y en las implicaciones que resolver lo contrario podría tener en el funcionamiento efectivo del Gobierno. Específicamente, indicamos lo siguiente:

---

[49] Pueblo v. Tribunal Superior, supra, págs. 755-756. Véanse, además, a modo ilustrativo: Barr v. Matteo, 360 US 564 (1959); Howard v. Lyons, 360 US 593 (1959); Denman v. White, 316 F.2d 524 (1er Cir. 1963); Pagano v. Martin, 275 F. Supp. 498. En estos casos se consideró que gozaban de un absoluto privilegio, con total inmunidad para su autor contra reclamaciones por libelo o difamación, documentos surgidos en el curso del desempeño del cargo o empleo y tramitados por los canales oficiales para fines oficiales; a pesar del hecho de que en algunos de esos casos el funcionario hizo alguna divulgación fuera del cauce departamental.

[50] Pueblo v. Tribunal Superior, supra, págs. 756-757.

> Por razones de orden público; porque ello **afectaría el efectivo funcionamiento del gobierno e impediría que los funcionarios actuaran con entera libertad y entereza, sin temor o inhibición alguna en la preparación de informes, memorandos u otras expresiones o comunicaciones en el curso de sus cargos**, para fines departamentales, debemos concluir que el Informe que aquí se interesa, como tal, no está sujeto a inspección bajo la Regla 95 como un "documento" o "papel" obtenido por El Pueblo, de otra persona. (Énfasis nuestro).[51]

De lo anterior surge que, en un contexto criminal, en el cual está involucrado uno de los derechos fundamentales más importantes, el derecho a la libertad de un individuo, este Tribunal no permitió descubrir bajo la Regla 95 de Procedimiento Criminal aquellos escritos preparados por un funcionario en el curso de su cargo para fines internos de la agencia por no tratarse de documentos públicos.

Por otro lado, en varias instancias el Secretario de Justicia de Puerto Rico ha emitido su opinión en contestación a consultas realizadas a su Oficina en relación con el asunto de "documentos públicos". Veamos.

En el 1957, el entonces Gobernador de Puerto Rico, Hon. Luis Muñoz Marín, remitió al Secretario de Justicia de aquel momento, Hon. Juan B. Fernández Badillo, la consulta sobre si procedía la expedición de copia certificada (por parte de la Comisión de la Policía -actual Policía de Puerto Rico-) de ciertos documentos

---

[51] _Pueblo v. Tribunal Superior_, supra, pág. 757.

relacionados con un caso administrativo que se ventilaba contra un teniente de la Policía.

El licenciado Fernández Badillo expresó que "[u]n escrito de un funcionario público hecho sin que medie autorización o requerimiento estatutario no se considera un documento público. Tampoco gozan del carácter de documento público las notas, memoranda y correspondencia de los funcionarios gubernamentales que surgen en forma incidental a la administración de los asuntos de una oficina". Op. Sec. Just. Núm. 21 de 29 de abril de 1957.

Además, el entonces Secretario de Justicia manifestó que "el Estado no está obligado a suministrar copia de informes y cartas que surgen en forma incidental a la administración de una oficina puesto que aunque se relacionen con asuntos públicos no constituyen propiamente un récord público". Op. Sec. Just. Núm. 21 de 29 de abril de 1957.

Por su parte, en el 1964, el entonces Secretario del Trabajo, Hon. Frank Zorrilla, consultó al Secretario de Justicia de ese momento, Hon. Hiram R. Cancio, en relación con el carácter público o no de las pólizas de seguro de obreros que se encontraban en poder del Departamento del Trabajo. Mencionó que el Art. 407 del Código de Enjuiciamiento Civil, 32 LPRA ant. sec. 1762, disponía que eran documentos públicos aquellos que se determinaban así en el Art. 1170 del Código Civil, 31 LPRA sec. 3271. Como

consecuencia de ello, hizo referencia a lo esbozado por el tratadista español José María Manresa y Navarro sobre el Art. 1216 del Código Civil Español (similar a nuestro Art. 1170) respecto a que la definición de "documento público" abarca tres aspectos distintivos: (1) la intervención de un notario o funcionario público que preste autenticidad; (2) la competencia de ese notario o funcionario público, y (3) la concurrencia en el documento de las solemnidades exigidas por ley. Op. Sec. Just. Núm. 5 de 8 de enero de 1964.

En otra ocasión, y en respuesta a una consulta del ex Superintendente de la Policía, Hon. Salvador Rodríguez, en relación a si constituía un documento público el historial personal de aquellos ciudadanos con los que la Policía había intervenido y que constaban en la División de Identificación Criminal de la Policía. El entonces Secretario de Justicia, Hon. Rafael Hernández Colón, determinó que dicho documento era público y estaba sujeto a inspección por los ciudadanos. No obstante, añadió que "como ese derecho de inspección no se considera absoluto, es válida la norma de permitir tal inspección, o la expedición de copias certificadas de tales récords, a las personas que tengan un interés legítimo en el asunto". Op. Sec. Just. Núm. 47 de 14 de septiembre de 1966.

De igual forma, el licenciado Hernández Colón señaló que en múltiples instancias el Departamento de Justicia ha enfatizado que "el derecho de inspección garantizado por

la Ley de Evidencia no se extiende a las notas, memoranda y correspondencia de los funcionarios gubernamentales, que surgen en forma incidental a la administración de los asuntos de una oficina, ni a aquella información de carácter confidencial, la divulgación de la cual pueda acarrear perjuicio al buen funcionamiento de la agencia que la posee". Op. Sec. Just. Núm. 47 de 14 de septiembre de 1966.

B. El Privilegio Ejecutivo

En la jurisdicción federal se han reconocido tres componentes principales de la doctrina de privilegio ejecutivo: (1) secretos de estado y militares;[52] (2) procesamiento criminal;[53] y (3) proceso deliberativo.[54] A su vez, en cuanto al proceso deliberativo, los tribunales en la esfera federal han identificado tres fundamentos para sustentar la existencia del privilegio del proceso deliberativo:

> First, the privilege protects candid discussions within an agency. Second, it prevents public confusion from premature disclosure of agency opinions before the agency establishes final policy. Third, it protects the integrity of an agency´s decision; the public should not judge

---

[52] Véanse: United States v. Reynolds, 345 US 1, 6-8 (1953); Chicago & Southern Air Lines, Inc. v. Waterman Steamship Corp., 333 US 103, 111 (1948); Totten v. United States, 92 US 105, 106-07 (1875).

[53] Véase Roviaro v. United States, 353 US 53, 59-61, 77 (1957).

[54] Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena, 40 FRD 318, 324 (DDC 1966), confirmado en 384 F.2d 979 (DC Cir. 1967); N.L.R.B. v. Sears, Roebuck & Co., 421 US 132, 151-153 (1975); EPA v. Mink, 410 US 73, 86-93 (1973). Véase, además, R. Iraola, Congressional oversight, executive privilege and requests for information relating to federal criminal investigations and prosecutions, 87 Iowa L. Rev. 1559 (2002).

> officials based on information they considered prior to issuing their final decisions.[55]

Así, el privilegio se enfoca en documentos que reflejan opiniones consultivas, recomendaciones y deliberaciones que comprenden parte del proceso mediante el cual el gobierno toma decisiones y formula política pública.[56] Su propósito es uno relacionado a la política pública de proteger los intercambios confidenciales de opiniones y consejos dentro de la Rama Ejecutiva. Es decir, el privilegio se limita a proteger el intercambio de documentos que reflejan las opiniones, recomendaciones y deliberaciones que contribuyen al proceso de toma de decisiones.[57]

No obstante, de todo lo anterior, un detalle importante que subyace es la conclusión lógica de que, **al hablar del llamado privilegio ejecutivo en cualquiera de sus tres modalidades, nos referimos a documentos que son finales**. Esto es, un documento que ha sido dirigido a su destinatario, ya sea externo o interno, sin importar la sencillez, complejidad o extensión de tal documento o el resultado de tal gestión. Si no se da esta condición de finalidad, no corresponde hablar del privilegio, pues el documento no alcanzaría siquiera la condición de documento público.

---

[55] Judicial Watch, Inc. v. Clinton, 880 F. Supp. 1, 12 (DDC 1995) confirmado en 76 F.3d 1232 (DC Cir. 1996).

[56] Véase N.L.R.B. v. Sears, Roebuck & Co. supra, págs. 151-153

[57] Véase Corporación Insular de Seguros v. García, 709 F. Supp. 288, 295-296 (1989).

C. La Ley PROMESA

En esencia, la Ley PROMESA establece la Junta de Supervisión Fiscal, cuyo propósito se circunscribe a proveer un método para lograr el alcance de responsabilidad fiscal y acceso a los mercados capitales. 48 USCA sec. 2121. Consecuentemente, las disposiciones incluidas en la Ley PROMESA van dirigidas a la concesión de poderes y facultades a la Junta de Supervisión Fiscal para lograr dicho norte.

La parte recurrida pretende que el Ejecutivo le entregue copia del proyecto de presupuesto preparado por el Gobernador y entregado a la Junta de Supervisión Fiscal. Nuevamente, es importante destacar que lo que el Ejecutivo envió a la Junta de Supervisión Fiscal no es más que un **borrador**, según requerido por la Ley PROMESA.[58]

---

[58] Sec. 2142 Approval of Budgets

[…]

(c) Budgets developed by Governor

(1) Governor's proposed Budgets

The Governor shall submit to the Oversight Board proposed Budgets by the time specified in the notice delivered under subsection (a). In consultation with the Governor in accordance with the process specified in the notice delivered under subsection (a), the Oversight Board shall determine in its sole discretion whether each proposed Budget is compliant with the applicable Fiscal Plan and--

  (A) if a proposed Budget is a compliant budget, the Oversight Board shall--

      (i) approve the Budget; and

      (ii) if the Budget is a Territory Budget, submit the Territory Budget to the Legislature; or

  (B) if the Oversight Board determines that the Budget is not a compliant budget, the Oversight Board shall provide to the Governor--

      (i) a notice of violation that includes a description of any necessary corrective action; and

Nótese que la aludida disposición se refiere a un documento imperfecto que está sujeto a múltiples revisiones, según sean señaladas por la Junta de Supervisión Fiscal, lo que provoca una dinámica en la que el Ejecutivo modifica y envía varios borradores a la Junta de Supervisión Fiscal hasta que se perfeccione según los estándares requeridos.[59]

Además, esta disposición recae en una obligación del Ejecutivo hacia la Junta de Supervisión Fiscal expresamente. Nada de lo establecido en la Ley PROMESA insinúa, instruye u obliga a que el Ejecutivo le provea a un ciudadano, en este caso la parte recurrida, el borrador del presupuesto en cuestión. Tampoco convierte el borrador del presupuesto en un documento público.

## III

En fin, la controversia en este caso gira en torno a un **borrador** del presupuesto preparado por el Ejecutivo en el ejercicio de su cargo, el cual envió a la Junta de Supervisión Fiscal, según las disposiciones de la Ley

_____

(ii) an opportunity to correct the violation in accordance with paragraph (2). 48 USCA sec. 2142(c)(1).

[59] (2) Governor's revisions

The Governor may correct any violations identified by the Oversight Board and submit a revised proposed Budget to the Oversight Board in accordance with paragraph (1). The Governor may submit as many revised Budgets to the Oversight Board as the schedule established in the notice delivered under subsection (a) permits. If the Governor fails to develop a Budget that the Oversight Board determines is a compliant budget by the time specified in the notice delivered under subsection (a), the Oversight Board shall develop and submit to the Governor, in the case of an Instrumentality Budget, and to the Governor and the Legislature, in the case of a Territory Budget, a revised compliant budget. 48 USCA sec. 2142(c)(2).

PROMESA, a sabiendas de que el documento **no era final**. Es decir, el documento conservaba su carácter de **borrador**. A mi entender, no es hasta que ese documento es recibido por la Asamblea Legislativa, organismo para el cual el documento fue creado (el destinatario), que éste pierde la naturaleza de borrador para convertirse en un documento final. Es en ese momento y **no antes** que el documento se convierte en uno público y, por ende, revisable por todo ciudadano.

Por todo lo anterior, estoy conforme con la Opinión del Tribunal.


Erick V. Kolthoff Caraballo
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Hon. Eduardo Bhatia Gautier, en su carácter como portavoz del Partido Popular Democrático en el Senado de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Hon. Ricardo A. Rosselló Nevares, en su carácter de Gobernador de Puerto Rico; Estado Libre Asociado de Puerto Rico<br><br>Peticionarios | CC-2017-0668 | *Certiorari* |

Opinión disidente emitida por la Jueza Presidenta ORONOZ RODRÍGUEZ

En San Juan, Puerto Rico, a 15 de septiembre de 2017.

Este es un caso de acceso a información pública y la oposición del Estado a lo solicitado. En particular, este Tribunal debía resolver si procede la desestimación de la petición de *mandamus* presentada por el Hon. Eduardo Bhatia Gautier, por alegadamente: (1) carecer de legitimación activa; (2) la petición tornarse académica; (3) no agotarse los remedios disponibles antes de acudir al foro judicial; y (4) la improcedencia del *mandamus* como cuestión de derecho por, entre otras cosas, ser de aplicación el privilegio ejecutivo. La Opinión mayoritaria resuelve correctamente que no hay fundamento alguno para desestimar la petición de *mandamus* presentada por el Hon. Eduardo Bhatia Gautier. Ahí debió terminar su análisis.

Lamentablemente, la Mayoría del Tribunal posterga innecesariamente la inspección en cámara del presupuesto sometido por el Estado Libre Asociado de Puerto Rico (ELA) ante la Junta de Supervisión y Administración Financiera para Puerto Rico (Junta). Así, da un salto insólito e improvisa otra controversia: ¿cuáles, si alguna, son las limitaciones que impone el privilegio ejecutivo a la inspección en cámara de un documento al cual alegadamente le aplica dicho privilegio constitucional? Resuelve, entonces, que el reclamo de privilegio ejecutivo impide el examen en cámara del documento en cuestión previo a la presentación de memorandos de derecho. De esta manera, la Mayoría se distancia de la jurisprudencia de este Tribunal y del Tribunal Supremo federal sin examinarla propiamente.

Porque la Opinión mayoritaria adjudica preliminarmente el pleito, se entromete innecesaria y excesivamente con la minucia del trámite judicial, y deniega la inspección oportuna en cámara de un documento de importancia trascendental, disiento enérgicamente.

I

Los señalamientos de error de la parte peticionaria cuestionan únicamente que no se desestimó la demanda de *mandamus*. No obstante, la Opinión del Tribunal va más allá y prejuzga tácitamente la controversia de fondo al establecer el alcance de los privilegios sobre información gubernamental.

Esto, aunque no está en posición de aplicar los criterios que reconoce.[60]

Voté para que el recurso no se expidiera pues resulta evidente que la Jueza de instancia no cometió un error de derecho ni abusó de su discreción, lo cual impide nuestra intervención en este momento.[61] Una Mayoría no solo expide el recurso a destiempo sino que además emite expresiones numerosas sobre el acceso a la información pública y los privilegios relacionados a información gubernamental que, a mi juicio, son desacertadas. Igualmente me preocupa que no se le brindó a las partes la oportunidad de expresarse mediante la presentación de alegatos –trámite normal cuando se expide un recurso– lo cual evitó que los temas sustantivos involucrados se analizaran con la profundidad y el rigor que ameritaban.[62] Dicho esto, veamos cuáles son las figuras jurídicas aplicables y las preocupaciones que tengo con lo que resolvió el Tribunal.

A. Acceso a la información pública

La Opinión del Tribunal reconoce la centralidad del acceso a la información pública en toda sociedad democrática. Sin

---

[60] Por ejemplo, la Opinión mayoritaria reconoce por primera vez en nuestro ordenamiento el privilegio sobre información decisional en los procesos deliberativos, pero claramente no está en posición de aplicar el derecho que pauta. Incluso bajo el propio razonamiento mayoritario esta discusión era innecesaria, pues al final solo devuelve el caso al foro de instancia porque no podía examinar en cámara el documento sin evaluar argumentos adicionales por escrito. Esto demuestra que este no era el momento para expedir el recurso y adentrarnos a discutir el alcance de los privilegios aplicables.

[61] Precisamente por esta razón el Tribunal de Apelaciones denegó el recurso instado, pues no se cumplieron los criterios para expedirlo.

[62] De hecho, el Hon. Eduardo Bhatia Gautier solicitó que, en caso de expedirse el recurso de *certiorari*, se le ofreciera la oportunidad de presentar un alegato, lo cual no ocurrió. *Solicitud de Orden*, pág. 2.

embargo, el Tribunal reproduce una incertidumbre que ha persistido desde que reconocimos este derecho constitucional en Soto v. Srio. de Justicia, 112 DPR 477 (1982); esto es, bajo cuál estándar de adjudicación se analizará la constitucionalidad de una ley que establezca el carácter confidencial de cierta información. Véase J.J. Álvarez González, Derecho Constitucional de Puerto Rico y Relaciones Constitucionales con los Estados Unidos, Bogotá, Ed. Temis, 2010, pág. 1179. En Soto v. Srio. de Justicia, supra, págs. 493-494, discutimos primero el estándar de balance de intereses reconocido en United States v. O'Brien, 391 US 377 (1968).[63] Sin embargo, más adelante reconocimos que en estos casos se impone un "estricto escrutinio judicial". Soto v. Srio. de Justicia, supra, pág. 497. Ambos criterios son distintos, pero el Tribunal no los distingue en ese y en varios casos posteriores.[64]

Establecer con claridad el estándar de adjudicación aplicable posibilita la solución del pleito y reduce la arbitrariedad. Véase J.J. Álvarez González, Derecho Constitucional, 74 Rev. Jur. UPR 597, 628 (2005). Por el carácter neurálgico del acceso a la información pública considero que el Tribunal debió aclarar, de una vez y por todas,

---

[63] Soto v. Srio. de Justicia, supra, págs. 493-494 ("En United States v. O'Brien, 391 US 367, 377 (1968), sostuvo que una regulación gubernamental estaría suficientemente justificada si: (1) cae dentro del poder constitucional del Gobierno; (2) propulsa un interés gubernamental importante o sustancial; (3) el interés gubernamental no está relacionado con la supresión de la libre expresión; y (4) la restricción concomitante de los alegados derechos bajo la Primera Enmienda no es mayor que la esencial para propulsar dicho interés").

[64] Véanse, por ejemplo, Colón Cabrera v. Caribbean Petroleum, 170 DPR 582 (2007); Angueira v. J.L.B.P., 150 DPR 10 (2000); López Vives v. Policía de P.R., 118 DPR 217 (1987); Santiago v. Bobb, 117 DPR 153, 159 (1986).

que en estos casos aplica un escrutinio judicial estricto.[65] Véase Íd. ("[U]na vez *Soto* resolvió que hay un derecho *constitucional* a acceso a información gubernamental, la búsqueda de ese acceso se convierte en un ejercicio de la libertad de expresión, por lo que cualquier ley que trate de impedirlo es una ley que se dirige contra la expresión, a la cual debe aplicar el escrutinio estricto"). Bajo este estándar, si un tribunal determina que el documento solicitado es público, el Estado tendrá que probar que sus intereses son apremiantes y que la confidencialidad promueve necesariamente tales objetivos.[66] Esta norma aplicaría ante cualquier reclamo de confidencialidad del Estado, incluyendo la Regla 514 de Evidencia sobre información oficial.

B. Privilegios sobre información pública

Distintas situaciones propician que los ciudadanos soliciten judicialmente información en manos del Gobierno. Puede tratarse, por ejemplo, de casos donde la información requerida es medular para la controversia principal. Véase, por ejemplo, López Vives v. Policía de P.R., 118 DPR 217 (1987). En otras ocasiones, el ciudadano simplemente presenta una demanda de

---

[65] La Opinión mayoritaria señala que "dada su condición de derecho fundamental, para prevalecer, las restricciones impuestas por el aparato gubernamental deben responder a un interés apremiante del Estado". Opinión mayoritaria, págs. 23-24. Sin embargo, posteriormente se hace referencia a que el foro primario debe hacer un balance de los intereses envueltos para determinar si proceden los privilegios en cuestión. Íd., pág. 39.

[66] Véase J.J. Álvarez González & A.I. García Saúl, Derecho Constitucional, 65 Rev. Jur. UPR 799, 815 (1996) ("Conviene recordar los diferentes enfoques jurisprudenciales en la interpretación de la cláusula de libertad de expresión. En términos generales, para sostener la validez de una ley o actuación gubernamental que reglamenta la expresión por razón de su contenido, es necesario que el Estado satisfaga el llamado escrutinio estricto y demuestre: (1) que existe un interés público apremiante y (2) que el medio seleccionado promueve necesariamente la consecución de ese interés").

acceso a información pública para fiscalizar adecuadamente la función gubernamental. Véase, por ejemplo, Soto v. Srio. de Justicia, supra. No obstante, en ambas instancias, el Estado puede alegar que tiene un interés genuino en mantener confidencial la información. Para evitar que un tribunal ordene la divulgación de un documento, el Estado puede levantar el privilegio ejecutivo de índole constitucional o los privilegios particulares establecidos mediante legislación. Véase J.J. Álvarez González, op. cit, pág. 363.

El privilegio ejecutivo constitucional no está reconocido expresamente ni en la Constitución de Estados Unidos ni en la de Puerto Rico. El razonamiento para su validez subyace en la doctrina de separación de poderes, pues se cuestiona el alcance del poder de la Rama Judicial con respecto a la Rama Ejecutiva. En el caso seminal de United States v. Nixon, 418 US 683, 706 (1974), el Presidente de Estados Unidos planteó que la independencia de la Rama Ejecutiva exigía reconocer que ningún tribunal podía ordenar la divulgación de comunicaciones presidenciales. El Tribunal Supremo de Estados Unidos rechazó categóricamente que exista un privilegio ejecutivo absoluto. Ahora bien, reconoció un privilegio ejecutivo cualificado que emana de la separación de poderes. Este privilegio protege las comunicaciones entre el Presidente y sus asesores, pero le corresponde a la Rama Judicial precisar sus fronteras. El Tribunal no dejó claro bajo cuál estándar de adjudicación se analizaría el privilegio, pero expresó, entre otras cosas, que

"[t]he very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence". Íd., pág. 709.

En Puerto Rico también derivamos este privilegio ejecutivo de la separación de poderes que establece nuestra Constitución. Peña Clós v. Cartagena Ortiz, 114 DPR 576, 598 (1983). Allí, aclaramos que esa facultad tampoco es absoluta. Íd. Además, en el contexto de un pleito sobre el poder investigativo de la Asamblea Legislativa frente a la Rama Ejecutiva, expresamos que examinaríamos la controversia utilizando "el método de sopesar los intereses en conflicto". Íd. No obstante, este estándar no aplica a esta controversia, pues estamos ante un reclamo de acceso a información pública. Véase E.L. Chiesa, Tratado de Derecho Probatorio, Tomo I, Ed. Corripio, 1998, pág. 309 ("[E]s amplio el derecho de la ciudadanía en general de recibir información sobre asuntos de interés público y para fiscalizar al gobierno. Cuando la polémica es entre dos ramas del gobierno, como en *Peña Clos v. Cartagena Ortiz,* podría decirse que la intervención de la Rama Judicial debe ser más modesta, pero siempre está en juego el derecho de la ciudadanía a estar bien informada sobre los asuntos del gobierno") (notas omitidas).

Por otro lado, en Peña Clós v. Cartagena Ortiz, supra, pág. 599, señalamos "que una alegación desnuda de privilegio público, sin apoyo en legislación adecuada, debe escudriñarse con particular recelo". Esta expresión fue criticada porque resulta

un contrasentido hablar de un privilegio constitucional que requiera de una ley que lo viabilice. J.J. Álvarez González, op. cit, pág. 364. Estoy de acuerdo con esa aseveración. Si no existe una ley sobre la confidencialidad de la información pública, el Tribunal deberá adentrase sin recelo alguno a examinar la vertiente constitucional del privilegio. No obstante, si existe una ley que reconoce la confidencialidad de la información oficial, el Tribunal debe enfocar su análisis en esa ley y evitar recurrir al privilegio ejecutivo constitucional.

Expuesto lo anterior, resulta necesario examinar cómo se ha reconocido estatutariamente este privilegio. No hay duda de "que el medio más efectivo de salvaguardar información sensitiva recopilada por el Estado en su gestión oficial, cuya divulgación pudiera lesionar el interés público, es mediante legislación especial". Santiago v. Bobb, 117 DPR 153, 160 (1986). Ahora bien, "en su ausencia es apropiado acudir supletoriamente a la Regla 31 de Evidencia sobre información oficial". Íd.[67] Esta Regla define "información oficial" como "aquélla adquirida en confidencia por una persona que es funcionaria o empleada pública en el desempeño de su deber y que no ha sido oficialmente revelada ni está accesible al público hasta el momento en que se invoca el privilegio". Regla 514 de Evidencia, 32 LPRA Ap. VI. A esos efectos, esa persona puede solicitar que no se divulgue la información oficial. El tribunal considerará

---

[67] La Regla 31 de entonces es actualmente la Regla 514 de Evidencia.

si su divulgación está prohibida por ley o si divulgarla sería
perjudicial a los intereses del gobierno.[68]

En consideración a la relación entre el privilegio
ejecutivo constitucional y la referida regla, resulta
cuestionable, por no decir improcedente, discutir de manera
aislada ambos privilegios, tal y como lo hace la Opinión del
Tribunal. Al hacer esto, la Mayoría parecería darle mayor peso
sustantivo al privilegio ejecutivo. Sin embargo, estimo que la
Regla 514, en cuanto se refiere al privilegio ejecutivo, solo
tiene el efecto de incorporarlo estatutariamente.[69] Por lo tanto,
considero que el alcance del privilegio ejecutivo constitucional
no tiene por qué ser mayor al privilegio de información oficial.
Mucho menos en una controversia donde se reclama el acceso a
información pública.

Por otro lado, en la Parte II-F se discute el privilegio
sobre información decisional en los procesos deliberativos sobre
política pública. No cuestiono los méritos normativos de este
privilegio. Sin embargo, resulta problemático la manera en que

---

[68] Para una crítica a esta Regla véase E.L. Chiesa Aponte, Reglas de Evidencia
Comentadas, San Juan, Ed. Situm, 2016, pág. 164 ("Bajo la Regla 514(B), el
privilegio se reconoce si el tribunal estima que 'divulgar la información
sería perjudicial a los intereses del Gobierno'. Pero esto significa muy
poco, pues el perjuicio que pueda invocar el Gobierno habría que balancearlo
con la necesidad de la parte con que se admita la información y, sobre todo,
con el derecho constitucional del Pueblo de acceso a información de lo que
ocurre en el Gobierno").

[69] Véase E.L. Chiesa Aponte, Tratado de Derecho Probatorio, op. cit., pág. 303
("Me parece que lo preferible es sostener que en Puerto Rico, todo privilegio
invocado por el gobierno (información gubernamental), debe verse bajo la
Regla 31 de Evidencia [sobre información oficial], salvo lo relativo al
privilegio de identidad de informantes, que debe examinarse bajo la Regla
32"); véase también J.J. Álvarez González, op. cit., pág. 363 ("Además de
este privilegio ejecutivo de origen constitucional, la legislación puede
reconocer privilegios adicionales o más específicos. . . . Para captar la
relación entre estos dos tipos de privilegios, pregúntese si la Rama
Ejecutiva quedaría desprovista de todo remedio si, por ejemplo, se derogara
la Regla 31 de Evidencia").

la Opinión mayoritaria incorpora a nuestro ordenamiento el denominado *deliberative-process privilege*. En primer lugar, la Mayoría parece sugerir que este privilegio es parte de la Regla 514 sobre información oficial. No obstante, al actuar así no reconoce las singularidades de nuestro ordenamiento probatorio, entre éstas, que en Puerto Rico -a diferencia de la jurisdicción federal- los privilegios y su alcance están codificados por ley. Chiesa Aponte, op. cit., pág. 189. En cambio, el privilegio sobre procesos deliberativos, como muchos otros privilegios, proviene del *common law*. Matthew W. Warnock, Stifling Gubernatorial Secrecy: Application of Executive Privilege to State Executive Officials, 35 Cap. U. L. Rev. 983, 986 (2007). Además, no tiene base constitucional alguna, a diferencia de las comunicaciones presidenciales protegidas por el privilegio ejecutivo constitucional. Íd., pág. 1012 ("The deliberative process privilege is a 'common sense-common law privilege' that is 'shorn of any constitutional overtones of separation of powers'"); véase Vaughn v. Rosen, 523 F.2d 1136, 1146 (D.C. Cir. 1975).

Por consiguiente, resulta problemático que el Tribunal cuele el privilegio sobre procesos deliberativos, proveniente del *common law*, a través de la Regla 514 que no acoge expresamente ese privilegio ni delimita sus contornos. Según reconoce el Profesor Chiesa, "[l]os privilegios deben surgir de la ley, bien de la Constitución, de las reglas de evidencia o de leyes especiales. Se trata de consideraciones de política

pública que suponen un delicado balance entre intereses sociales, zona que corresponde a la Rama Legislativa". Chiesa Aponte, op. cit., pág. 188.[70] En esta ocasión, ese balance delicado de intereses exigía que la Asamblea Legislativa fuera quien precisara las fronteras del privilegio sobre procesos deliberativos. No obstante, la Mayoría decide calcar la nomenclatura del common law sobre procesos deliberativos sin tan siquiera cuestionarse su rol o las particularidades de ambos ordenamientos jurídicos.[71]

Cada premisa, cada requisito, cada conclusión de la Opinión del Tribunal se presenta como el resultado de un estudio metódico del derecho y la aplicación del mítico razonamiento legal. No obstante, a través de la aparente neutralidad del "derecho aplicable" se resuelven sustantivamente controversias de gran envergadura para nuestro ordenamiento constitucional y democrático.[72] Ante la manera en que se adoptan tales posturas, no me queda más que expresar mi más profunda insatisfacción con el proceder mayoritario.

_____

[70] De hecho, a nivel federal se adoptó la quinta excepción de la Freedom of Information Act para concretizar en el gobierno federal este privilegio de procesos deliberativos. Véase NLRB v. Sears, Roebuck & Co., 421 US 132, 150 (1975).

[71] Claro está, al momento de evaluar el privilegio de información oficial en un caso particular podemos examinar, junto a otros elementos de análisis, lo resuelto por los tribunales estatales sobre el privilegio de procesos deliberativos. El problema no es el estudio de esas fuentes secundarias, sino insinuar que en nuestro ordenamiento rige un privilegio que nunca ha sido aprobado por la Rama Legislativa.

[72] Por ejemplo, en una nota al calce la Mayoría señala casualmente que el privilegio de procesos deliberativos se ha extendido a requerimientos presupuestarios. ¿Queda alguna duda de que el Tribunal prejuzgó los méritos del caso?

II

Finalmente, la Mayoría resuelve que el privilegio ejecutivo impide, en estos momentos, el examen en cámara del presupuesto sometido a la Junta. Señala que, ante un reclamo de privilegio ejecutivo, los tribunales deben ser muy cautelosos previo a la inspección en cámara. Esto, como veremos a continuación, contradice las razones de la inspección en cámara y las expresiones federales y locales sobre el privilegio ejecutivo. Además, incluso bajo la lógica mayoritaria, resulta evidente que en este caso el ELA tuvo una oportunidad amplia de justificar la aplicación del privilegio previo a la inspección en cámara del documento.

La conveniencia del examen en cámara se ha reconocido por múltiples tribunales como un mecanismo procesal adecuado para determinar la existencia de un privilegio. Esto, pues, como norma general, el examen de la prueba en cámara no afecta el privilegio en cuestión sino que, por el contrario, permite ponderar si el privilegio y los elementos que lo sustentan realmente aplican a la prueba en controversia.[73] Así también, permite distinguir la materia privilegiada de la no-privilegiada en aquellos casos en los que una parte reclama un privilegio en exceso de lo necesario. Véase, por ejemplo, Hamilton v. Verdow, 414 A.2d 914, 927 (Md. 1980) ("[T]he in camera inspection may be utilized to determine whether the material is privileged [and]

_____

[73] Véase, por ejemplo, C. Jennings, Attorney-Client Privilege - Crime-Fraud Exception - Use of in Camera Review, 82 Tenn. L. Rev. 663, 686 (2015) ("[T]he use of *in camera* review ensures preservation of the policies behind the privilege").

to sever privileged from non-privileged material if severability is feasible"). Lo anterior se logra a través de una intrusión mínima por parte del juez en la materia en cuestión para balancear así los intereses de las partes. U.S. v. Zolin, 491 US 554, 572 (1989). Es por eso que el uso de este mecanismo suele promoverse ante reclamos de distintos tipos de privilegios.[74]

Sin embargo, cuando se trata de secretos de estado, esto es, secretos militares o diplomáticos, el Tribunal Supremo federal resolvió que la inspección en cámara por los tribunales de documentos presidenciales afecta las prerrogativas del Ejecutivo sobre seguridad nacional. Véase U.S. v. Reynolds, 345 US 1 (1953).[75] Resulta meritorio señalar que en United States v. Nixon, supra, el Presidente alegó que no procedía la inspección en cámara de los documentos presidenciales porque la norma de U.S. v. Reynolds, supra, se extendía a las comunicaciones entre el Primer Ejecutivo y sus subalternos. El Tribunal Supremo rechazó ese planteamiento y resolvió que:

> Absent a claim of need to protect military, diplomatic, or sensitive national security secrets, we find it difficult to accept the argument that even the very important interest in confidentiality of Presidential communications is significantly diminished by production of such material for in camera inspection with all the protection

---

[74] Véanse, por ejemplo, E. J. Imwinkelried, The New Wigmore: A Treatise on Evidence (Evidentiary Privileges), sec. 9.2.2, pág. 1776 (secretos de negocios); Berens v. Berens, 785 S.E. 2d 733 (N.C. 2016) (privilegio abogado-cliente); People v. Superior Court, 80 Cal. App. 4th 1305 (2000) (información oficial).

[75] El Tribunal razonó que en una circunstancia como esta, "the court should not jeopardize the security which the privilege is meant to protect by insisting upon an examination of the evidence, even by the judge alone, in chambers". U.S. v. Reynolds, supra, pág. 10. Cabe destacar que en Puerto Rico difícilmente se puede invocar el privilegio de secretos de estado. E.L. Chiesa Aponte, Tratado de Derecho Probatorio, op. cit., pág. 302.

> that a district court will be obliged to provide. United States v. Nixon, supra, pág. 706.

Concluyó que la inspección en cámara "is always a procedure calling for scrupulous protection against any release or publication of material not found by the court, at that stage, probably admissible in evidence and relevant to the issues of the trial for which it is sought". Íd., pág. 714. Resulta, pues, evidente que "[e]l examen en cámara es aquí claramente permisible". Chiesa Aponte, op. cit., pág. 296.

Por otro lado, en Puerto Rico, desde Soto v. Srio. de Justicia, supra, validamos la inspección en cámara, en ausencia de las partes, para determinar adecuadamente la confidencialidad invocada por el Estado. En Peña Clós v. Cartagena Ortiz, supra, pág. 581, como parte del trámite apelativo, incluso devolvimos el caso a instancia por considerar que nuestra intervención sería prematura sin el examen previo de los documentos. Además, en Santiago v. Bobb, supra, pág. 162, expresamos que, para determinar la confidencialidad de la información, "el tribunal puede hacer un examen en cámara de los documentos o información que el Estado alega son privilegiados, como condición previa al reconocimiento del privilegio". Vemos, pues, que no le hemos otorgado un alcance mayor al privilegio ejecutivo. A diferencia de los secretos de estado, donde una vez se argumenta fehacientemente la aplicación del privilegio no procede la inspección en cámara, en los pleitos sobre el privilegio

ejecutivo la inspección en cámara no solo es claramente permisible sino deseable.

La Opinión del Tribunal basa su argumento en que la inspección en cámara no aporta al análisis porque ya se sabe la naturaleza del documento. Resulta curiosa esa expresión, pues previamente el Tribunal reconoció que el ELA no probó que el documento sometido a la Junta era el mismo que fue sometido a los cuerpos legislativos. Aunque podemos especular sobre el contenido del documento, resulta necesario examinarlo para determinar si se justifica mantenerlo confidencial; más aún si se argumenta que fue parte de un proceso deliberativo. También es problemático que este Tribunal ignore que el ELA ya tuvo la oportunidad de presentar mociones y argumentar en sala la aplicación del privilegio.[76] De hecho, el Tribunal de Primera Instancia entendió que "la parte demandada no detalló de forma alguna por qué la información solicitada cualifica para la aplicación del privilegio ejecutivo".[77] No obstante lo anterior, en la *Resolución y Orden* objeto de revisión, el Tribunal de Primera Instancia incluso concedió al ELA una tercera oportunidad para explicar en detalle por qué la información debe mantenerse confidencial. No he encontrado explicación ni precedente alguno en nuestro ordenamiento jurídico, ni en ningún otro, que justifique postergar la inspección en cámara y concederle al ELA otro turno al bate. Seguiré buscando.

_____

[76] Véase *Moción urgente reiterando desestimación* y *Moción en cumplimiento de orden* presentadas por el ELA ante el foro primario.
[77] Resolución y Orden del 26 de julio de 2017, pág. 3.

El Mago de Oz, escondido detrás de las cortinas, busca influenciar su entorno sin que nadie le preste atención. No cometamos ese error. En momentos de crisis cobra aún mayor importancia el acceso de los ciudadanos a la información pública. Este Tribunal debió aprovechar este momento histórico, como valientemente hizo este foro luego de los sucesos del Cerro Maravilla, para ampliar y no limitar un derecho constitucional tan importante para este experimento diario llamado democracia.


                        Maite D. Oronoz Rodríguez
                        Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Hon. Eduardo Bhatia Gautier, en su carácter como portavoz del Partido Popular Democrático en el Senado de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Hon. Ricardo A. Rosselló Nevares, en su carácter como Gobernador de Puerto Rico; Estado Libre Asociado de Puerto Rico<br><br>Peticionarios | **Núm.** CC-2017-0668 |

Opinión disidente emitida por la Juez Asociada señora Rodríguez Rodríguez

En San Juan, Puerto Rico, a 15 de septiembre de 2017

Al igual que la mayoría, considero que la moción de desestimación presentada por el señor Gobernador carece de méritos. Sin embargo, me perpleja que este Tribunal revoque la determinación del foro primario de efectuar un examen en cámara del proyecto de presupuesto. En numerosas ocasiones hemos avalado la práctica de examinar un documento en cámara cuando una parte sostiene que el documento está cubierto por determinado privilegio. Los hechos del presente caso no nos deberían mover a cambiar esa postura.

El Tribunal parece establecer un nuevo procedimiento para circunstancias donde se plantea la necesidad de inspeccionar en cámara documentos oficiales cuando el Estado ha invocado algún privilegio para no entregarlos al ciudadano. A poco que escudriñemos el procedimiento notamos que es inconsistente y antagónico con nuestros previos precedentes y carece de estándares objetivos que faciliten y aligeren el manejo judicial de estas reclamaciones. Por el contrario, se abona al fraccionamiento y la dilación.

Además, sin explicación jurídica razonable, una mayoría de este Tribunal ordena a la juez de instancia a acoger memorandos de derecho adicionales sobre los privilegios invocados, cuando surge del expediente de este caso que las partes ya tuvieron una oportunidad para argumentar sus posturas en cuanto a los privilegios aplicables y sometieron sendos memorandos.

Repito, el procedimiento establecido por una mayoría **no tiene apoyo en ningún precedente nuestro como en otras jurisdicciones donde el derecho de acceso a la información pública goza de protección constitucional**. Más grave aún, tiene serias repercusiones sobre nuestra función como árbitro de las controversias entre el Estado y sus ciudadanos, y abona a la nebulosidad en los asuntos de gobierno. Que no quepa duda, hoy hemos retrocedido en nuestros avances democráticos.

En aras de explicar mi inconformidad con la medida dispositiva que hoy toma la mayoría, es menester detallar el

trasfondo del caso de autos para aplicar certeramente nuestro Derecho referente al derecho constitucional de acceso a la información pública.

## I.

Hay un asunto de umbral que debemos discutir en este caso ya que consideramos que la controversia que "resuelve" este Tribunal no fue planteada ante nosotros por el Procurador General. Me explico.

En su petición de *certiorari*, el Procurador General elevó ante nuestra consideración dos asuntos: (1) que el foro primario erró al no resolver en la afirmativa la moción de desestimación que el Estado presentó ante el foro de instancia y (2) que erró al atender el recurso de *mandamus* presentado por el aquí recurrido. Por cuanto, a su juicio, no se cumplen con los requisitos para expedir este recurso extraordinario y privilegiado. **Nada más.** En otras palabras, el Estado no cuestionó el dictamen de la juez donde se propone llevar a cabo una inspección en cámara del documento solicitado. La mayoría no nos explica por qué se desvía de nuestros dictámenes anteriores y pasa a resolver algo que nunca se le planteó.

**Es decir, y reitero, ninguno de los señalamientos plantea que constituyó un error del foro primario ordenar la inspección del documento en cámara.** Como sabemos, el Reglamento del Tribunal Supremo contiene una disposición en la cual se requiere que todo *certiorari* contenga un señalamiento breve y conciso de los errores que se le imputan

al foro apelado. *Véase* Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B, R. 20. "La importancia de esta exigencia es que el tribunal apelativo está obligado a considerar solamente los errores que la parte apelante/peticionaria hubieran señalado específicamente". H. Sánchez Martínez, *Práctica Jurídica de Puerto Rico*, sec. 1408, pág. 294 (2001).

Sobre ese particular, en *Morán v. Martí* indicamos:

> Nuestro ordenamiento procesal apelativo exige que la apelación presentada contenga una discusión de los errores que se le imputan al foro primario, pues no se habrá de admitir alegato o memorando de autoridades con posterioridad a la presentación del escrito de apelación. Hace claro también la regla que el señalamiento de error omitido o no discutido, se tendrá por no puesto por lo que no se considerará por el foro apelativo intermedio. 165 DPR 356, 365 (2005).

Y es que todo abogado tiene la obligación y el deber de cumplir a cabalidad y con rigurosidad con los requisitos dispuestos en las leyes y los reglamentos respecto al perfeccionamiento de los recursos apelativos presentados.

Esta exigencia no es mero preciosismo, sino más bien exigencia del debido proceso de ley y el juego limpio. Si no se incluye en un recurso de revisión un señalamiento específico sobre algún asunto en particular, la parte contraria nunca se ha de expresar sobre ese tema y el Tribunal no la habrá escuchado antes de resolver el caso. Ello, a mi juicio, es patentemente injusto, como poco.

Este principio no es una camisa de fuerza infranqueable pues hemos dispuesto también que "[e]n aras de impartir justicia, un tribunal apelativo tiene la facultad inherente

de considerar y resolver *errores patentes* que surjan de un recurso aun cuando los mismos no hayan sido levantados por las partes". *Hernández v. Espinosa*, 145 DPR 248, 264 (1998) (énfasis suplido). Igual, si no lo señala pero lo discute, el Tribunal puede considerarlo. *Vega v. Yiyi Motors, Inc.,* 146 DPR 373, 383 n.15 (1998).

Ninguna de estas dos circunstancias está presente en este caso. En ningún lugar de su petición de *certiorari* el Procurador General impugnó la orden de someter a inspección en cámara el documento de presupuesto. El Procurador General hizo referencia al privilegio ejecutivo cuando discutió por qué no procede expedir el *mandamus* y no para impugnar la determinación de revisión en cámara del proyecto de presupuesto. En este sentido, lo importante es lo que el Procurador General **NO** dijo o argumentó. Éste no impugnó la orden de revisión en cámara del presupuesto sometido a la Junta, precisamente porque el Procurador General es consciente de la frivolidad de tal argumento pues no se justifica a la luz del derecho aplicable. Ello no obstante este "error no planteado" es lo que "resuelve" este Tribunal.

La ausencia de fundamentación jurídica de este Tribunal para "justificar" su proceder abona a la impresión de arbitrariedad. De esta forma, reluce que lo importante es adelantar un resultado por lo que el soporte jurídico del dictamen emitido es inconsecuente; lo que nunca es deseable.

**II.**

**a.**

El acceso a la información afianza los sistemas democráticos, pues coadyuva a la consecución efectiva de diversos derechos fundamentales. El conocimiento sobre los asuntos públicos propende a la formulación de opiniones informadas que, a su vez, promueven la participación ciudadana en los debates y la toma de decisiones más acertadas. Y más importante aún, el acceso a información pública es el mejor antídoto contra la corrupción. De ahí la famosa expresión del Juez Brandeis: *La luz solar es el mejor desinfectante.*

En consideración a esto, es indiscutible que el acceso a la información es piedra angular para la gobernanza y fiscalización gubernamental. No debemos olvidar que la relación Estado/Ciudadanía se fundamenta en un pacto mediante el cual la Ciudadanía -en el ejercicio de su soberanía o autoridad- le delega al Estado y a sus agentes gubernamentales la facultad de administrar los recursos públicos, de diseñar, administrar e implementar soluciones a los problemas que aquejan a la ciudadanía, y velar por el cumplimiento del orden jurídico, entre otros asuntos. Esa delegación de la autoridad soberana **obliga al Estado** "a rendirle cuentas [a la ciudadanía] de los actos que en su nombre realiza". Rodolfo Vergara, *La Transparencia como problema*, 2008, pág. 34, disponible en: http://187.216.193.232/biblos-mdf/sites/default/files/archivos/00481CuadernosdetransparenciaIFAI05.pdf. De lo contrario, ¿cómo puede la sociedad

asegurarse que el gobierno se comporta de acuerdo a las necesidades e intereses sociales y no intereses ajenos a la sociedad misma, quebrando los cimientos del pacto de gobernanza? Cualquier limitación a tan vital acceso equivale a "[p]ermitir que el gobierno maneje los asuntos públicos bajo el manto de la *secretividad* [lo cual] es invitar a la arbitrariedad, la mala administración, la indiferencia gubernamental, la irresponsabilidad pública y la corrupción". Efrén Rivera Ramos, *La libertad de información: Necesidad de su reglamentación en Puerto Rico*, 44 Rev. Jur. UPR 67, 69 (1975).

Dicho de otra manera, de lo antes mencionado reluce una especial exigencia de divulgación de la información pública, pues ésta nace del principio fundacional de todo gobierno: servir a la población que le constituyó. Por lo que, siendo las autoridades políticas los representantes del pueblo –y cuya labor es en favor de la ciudadanía general– todas sus decisiones y acciones están revestidas por un alto interés público que amerita transparencia. El gobierno es quien controla la información necesaria para evaluar, precisamente, aquellas políticas que establece y ejecuta lo que crea una asimetría de información que repercute sobre el pacto de gobernabilidad mismo. En este contexto, la transparencia en la gerencia de gobierno es imprescindible para ejercer un control externo de vigilancia sobre el gobierno mismo.

A esos efectos, tanto los ordenamientos nacionales como la sociedad internacional han reconocido el derecho a recibir

y recabar la información como un elemento esencial e intrínseco del ejercicio de la libertad de expresión. Frank La Rue, *Promoción y protección del derecho a la libertad de opinión y de expresión*, A/68/362, párr. 18 (2013). De esta forma, los entendidos internacionales sobre la materia promovieron la adopción del *Pacto Internacional de Derechos Civiles y Políticos* (Pacto) en el 1966. El Artículo 19 (2) del Pacto dispone específicamente que "[t]oda persona tiene derecho a la libertad de expresión; este derecho comprende la libertad de buscar, recibir y difundir informaciones e ideas de toda índole, sin consideración de fronteras, ya sea oralmente, por escrito o en forma impresa o artística, o por cualquier otro procedimiento de su elección". *Pacto Internacional de Derechos Civiles y Políticos* de 1966, disponible                                                          en: http://www.ohchr.org/SP/ProfessionalInterest/Pages/CCPR.aspx. [78] En atención a esto, más de cincuenta (50) naciones han garantizado constitucionalmente el derecho de acceso a la información y más de noventa (90) países han adoptado leyes nacionales para regular el procedimiento de solicitud de información pública. La Rue, *supra*, párr. 70.

En el contexto particular de Puerto Rico, no contamos actualmente con una legislación que regule el acceso a la información pública pese a que, desde la década de 1960, se

---

[78] Dicho sea de paso, Estados Unidos firmó el *Pacto* el 5 de octubre de 1977 y lo ratificó el 8 de junio de 1992. Disponible                                                          en: http://www.acnur.org/nuevaspaginas/tablas/tabla6.htm.

reconocieron los primeros bríos de su supremacía. *Dávila v. Supt. de Elecciones*, 82 DPR 264 (1960). No fue hasta el 1982 que elevamos a rango constitucional el derecho de acceso a la información como elemento connatural del ejercicio eficaz de la libertad de expresión consagrada en la Sección 4 del Artículo II de la Constitución de Puerto Rico. *Soto v. Srio. de Justicia*, 112 DPR 477 (1982). El razonamiento que informó esta determinación fue el mismo esbozado explícitamente en el *Pacto Internacional de Derechos Civiles y Políticos*: que el libre acceso a la información es imprescindible para la plena consecución del derecho a la libertad de expresión. *Véase Soto v. Srio. de Justicia, 112 DPR* en la pág. 497.

**b.**

El derecho de acceso a la información se puede invocar para solicitar un documento del Estado cuando el mismo esté revestido de una naturaleza pública. Un documento público, en Puerto Rico, se define como:

> todo documento que se origine, conserve o reciba en cualquier dependencia del Estado Libre Asociado de Puerto Rico de acuerdo con la ley o en relación con el manejo de los asuntos públicos y que de conformidad con lo dispuesto en la sec. 1002 de este título se haga conservar que se requiera conservar permanentemente o temporalmente como prueba de las transacciones o por su valor legal. Incluye aquellos producidos de forma electrónica que cumplan con los requisitos establecidos por las leyes y reglamentos. 3 LPRA sec. 1001.

Por nuestra parte, de lo anterior hemos razonado que "un *documento público* es el que un organismo estatal recibe en el curso de sus procedimientos y que está obligado a preservar".

*Trans Ad de PR v. Junta de Subastas*, 174 DPR 56, 69 (2008) (énfasis en el original). Claro, aun cuando un documento es de naturaleza pública, éste puede estar cobijado por algún privilegio evidenciario, por lo cual se requiere especial cautela al momento de considerar una solicitud para su divulgación.

Ante situaciones afines, lo procedente es ordenar una inspección en cámara del documento para auscultar si privilegio alegado aplica en parte, en todo o, simplemente, no procede. Este tipo de determinación exige un análisis de hechos específicos. De ahí la necesidad de la inspección en cámara. *In re Grand Jury Proceedings*, 662 F.3d 65, 71 (1st. Cir. 2011)("Determining whether documents are privileged demands a highly fact-specific analysis—one that most often requires the party seeking to validate a claim of privilege to do so document by document.") La revisión sirve para despejar cualquier duda sobre si los documentos son, efectivamente, documentos privilegiados y rechazar reclamos improcedentes y frívolos. "Such review offers a check on the accuracy and honesty of governmental privilege assertions". R. Weaver & J. Jones, *The Deliberative Process Privilege,* 54 Mo. L. Rev. 279, 313 (1989).

Quienes en el pasado hemos litigado innumerables reclamos de confidencialidad como el que nos ocupa, somos conscientes de que cuando el documento solicitado es claramente privilegiado es innecesario su inspección, pero estas instancias representan la excepción y no la regla. La

experiencia demuestra, por el contrario, que en la mayoría de las instancias es imprescindible que el juez vea y estudie el documento en cámara para evaluar la validez del reclamo de privilegio. No se puede establecer una regla rígida –como parece hacer la mayoría– de que primero hay que determinar si aplica o no el privilegio para entonces proceder a revisarlo en cámara. Lo propuesto apunta a un desconocimiento de cómo, en la práctica legal, se atienden estos asuntos. La ausencia de criterios de esta opinión se hace evidente en esta instancia, ante las interrogantes que plantea el fallo: ¿Qué criterios se utilizan para determinar si aplica o no el privilegio? ¿Sobre quién recae el peso de la prueba, sobre la persona que invoca el derecho constitucional de acceso a información pública, o el que se opone al ejercicio del derecho? ¿Qué ocurrirá con aquel o aquellos documentos donde unos/o parte de unos son privilegiados, y otros/o parte de otros, que no lo son? ¿O es que se piensa que el documento es o todo privilegiado o todo no privilegiado? ¿Si el juez tiene duda sobre los argumentos del gobierno está impedido de revisar el documento? Francamente, es un contrasentido lo que propone la mayoría.

Conceder una inspección en cámara descansa en la sana discreción del juez de instancia y debe revisarse aplicando el criterio de abuso de discreción. *Véase Horowitz v. Peace Corps*, 428 F.3d 271, 282 (D.C. Cir. 2005), *certiorari* denegado 126 S. Ct. 1627, U.S., 164 L. Ed. 2d 335 (en el contexto del *Freedom of Information Act*) ("The decision of

whether to conduct an in camera review of a document is within the trial court's 'broad discretion' and is reviewed only for abuse of discretion."). Pero cuando se ha trabado una disputa legítima sobre el documento lo aconsejable es la inspección en cámara. "When . . . the assertion of privilege is subject to legitimate dispute, the desirability of in *camera* review is heightened." *In re Grand Jury*, 662 F.3d en la pág. 70. Como señala el tratadista José Julián Álvarez González, este Tribunal ha recurrido a la jurisprudencia interpretativa del *Freedom of Information Act* (FOIA)*, "como fuente persuasiva, para dictar pautas en la solución de disputas bajo el derecho puertorriqueño". J.J. Álvarez González, *Derecho constitucional de Puerto Rico y relaciones constitucionales con Estados Unidos*, 1176 (2009). Y según la jurisprudencia interpretativa de la FOIA, si la oposición de la agencia en cuanto a la divulgación del documento no satisface al tribunal, éste debe inspeccionar los documentos solicitados en cámara. 33 *Federal Practice & Procedure,* Judicial Review § 8440 ("Should the original record and supporting agency affidavit not satisfy the court, it must inspect the documents itself *in camera.*").

Desde *Soto*, este Tribunal ha recurrido repetidamente al mecanismo del examen en cámara ante la invocación de un privilegio por parte del Estado. *Soto*, 112 DPR en la pág. 513. Así, en *Santiago v. Bobb y El Mundo, Inc.,* aclaramos que "[f]avorecemos la visión judicial de que la confidencialidad de la información se determina mediante un análisis de la

totalidad de las circunstancias que rodean la comunicación, así como su propia naturaleza". 117 DPR 153, 162 (1986). Para asistir a su labor, el juez "puede hacer un examen en cámara de los documentos o información que el Estado alega son privilegiados, como **condición previa al reconocimiento del privilegio**". *Id.* (énfasis suplido). Posteriormente, en *Pres. del Senado*, ante un reclamo de privilegio de inmunidad legislativa de la Asamblea Legislativa, discutimos los beneficios del examen en cámara:

> [P]ermite al tribunal verificar el reclamo de privilegio para ejercer, de modo informado, su tarea constitucional de determinar qué materia es o no privilegiada, como árbitro final de la controversia entre las partes. Por otro lado, responde a la necesidad de no permitir que sea la propia Asamblea Legislativa quien sea árbitro absoluto y final de lo que es materia privilegiada. *Pres. del Senado*, 148 DPR 737, 805 (1996).

Más recientemente, en *Colón Cabrera v. Caribbean Petroleum*, concluimos que, ante un reclamo de acceso a un archivo sobre una investigación ya concluida de la Oficina de Asuntos Monopolísticos del Departamento de Justicia, un examen en cámara era el método más apropiado para proteger la información obtenida de personas privadas durante el curso de una investigación. 170 DPR 582 (2007).[79] En síntesis, nuestra

_____

[79] A la misma conclusión llegó el Tribunal de Apelaciones por voz del ahora Juez Asociado señor Martínez Torres, al razonar que el examen en cámara era necesario como medida cautelar para proteger la información privilegiada de personas y compañías privadas, aun cuando el privilegio de información oficial alegado de forma generalizada por el Estado cedía ante el derecho de acceso a la información pública. *Colón Cabrera v. Caribbean Petroleum*, KLCE050998 (TAPR) (28 de febrero de 2006).

casuística ha favorecido consistentemente el examen en cámara como el procedimiento a seguir para auscultar la procedencia de un privilegio levantado por el Estado. Lamentablemente, el Tribunal no nos explica por qué estos precedentes no aplican o por qué se descartaron.

Por último, es meritorio mencionar que es motivo de preocupación la tendencia de este Tribunal de adoptar en sus pronunciamientos los mecanismos diseñados para el acceso a la información pública del FOIA sin hacer constar importantes matices del ordenamiento jurídico para el cual ésta se aprobó. Sin duda, la referida legislación es un punto de anclaje importante en materia de acceso a la información en manos del gobierno federal. Sin embargo, no podemos perder de perspectiva que en Estados Unidos el acceso a la información como derecho de la ciudadanía se reconoció mediante legislación. Así, queda de manifiesto que el cimiento de tal reconocimiento es distinto al nuestro, puesto que en Puerto Rico -como bien fue mencionado- el acceso a la información pública es de rango constitucional. Recordando, en correcta práctica adjudicativa, que las limitaciones de FOIA son **limitaciones legisladas** y ese mandato legislativo es el que los tribunales federales interpretan. En el caso nuestro interpretamos el alcance de un derecho constitucional. A esos efectos, cuando se está ante un reclamo de ésta índole procede el análisis al amparo del escrutinio estricto. *Nieves v. Junta*, 160 DPR 97 (2003) (Hernández Denton, J., op. disidente); *Angüeira v. JLBP*, 150 DPR 10 (2000).

Ahora bien, reconocemos que la ausencia de legislación para entablar los mecanismos de solicitud y producción de la información en manos del Estado es la principal causa para la disparidad en el manejo de estos casos. Aunque tal ausencia de legislación no es óbice para que un Tribunal cumpla con sus funciones adjudicativas, éste -en su imperativo de hacer justicia- no puede contravenir ni socavar el carácter constitucional del derecho de acceso a la información, como lo hemos hecho en el pasado. De esta forma, la opinión que hoy suscribe una mayoría de este Tribunal dista de nuestro deber como garantes de los derechos fundamentales de la ciudadanía puertorriqueña.

## c.

En este caso, el señor Gobernador invocó el privilegio ejecutivo ante los tribunales para mantener la confidencialidad del proyecto de presupuesto solicitado por el demandante. El peticionario arguyó en su *certiorari* que este privilegio, según reconocido en las cortes federales y estatales de Estados Unidos, tiene dos vertientes: el privilegio de las comunicaciones del gobernador[80] y el privilegio sobre los procesos deliberativos. Matthew W. Warnock, *Stifling Gubernatorial Secrecy: Application of Executive Privilege to State Executive Officials*, 35 Cap. U. L. Rev. 983, 985 (2007). Los tribunales del Estado Libre Asociado igual han reconocido la validez del privilegio

---

[80] Este privilegio se deriva de su paralelo federal, el privilegio de las comunicaciones presidenciales.

ejecutivo. *Véase Peña Clos v. Cartagena Ortiz*, 114 DPR 576 (1983).

Uno de los objetivos del privilegio sobre los procesos deliberativos descansa en consideraciones de conveniencia práctica sobre el funcionamiento del gobierno. Así, persigue que los oficiales gubernamentales puedan expresar sus opiniones sobre alguna propuesta de política pública de forma honesta, sin preocuparse sobre las repercusiones públicas de sus opiniones en la consecución del bien común. *Véase* R. Serrano Geyls, *El Derecho Constitucional de Estados Unidos y Puerto Rico*, 1997, vol. I, págs. 652 ss; *véanse además United States v. Nixon*, 418 U.S. 683, 705 (1974); *Coastal States Gas Corp. v. Dept. of Energy*, 617 F.2d 854, 866 (1980).

Existen dos requisitos esenciales para que aplique el privilegio: la información debe ser pre-decisional y debe ser deliberativa. *In re Sealed Case*, 121 F.3d 729, 738 (1997). Ello encuentra su razonamiento en el propósito del privilegio: éste existe para asegurar que el temor al escrutinio público no afecte la calidad de una decisión de política pública. Por lo tanto, no es necesario proteger las comunicaciones que surjan luego de tomada la decisión. *Véase N.L.R.B. v. Sears Roebuck & Co.*, 421 U.S. 132, 151-52 (1975). Tampoco es necesario proteger una comunicación que sólo contenga datos y no opiniones, pues es precisamente la integridad de la opinión que se busca proteger. *In re Sealed Case*, 121 F.3d en la pág. 737.

El privilegio de las comunicaciones del gobernador es a la vez más abarcador que el privilegio sobre procesos deliberativos y más limitado en cuanto a quién le aplica. El referido privilegio aplica no sólo a comunicaciones deliberativas, sino también a comunicaciones pre-deliberativas y post-decisionales. Warnock, *supra*, en la pág. 990. Sin embargo, el privilegio solamente aplica a las comunicaciones que involucren asesoramiento al alto ejecutivo. En particular, la Corte de Apelaciones de Estados Unidos para el Circuito del Distrito de Columbia ha expresado que "[p]or supuesto, el privilegio solamente aplica a las comunicaciones que estos asesores [de la Casa Blanca] y sus subordinados suscriban o soliciten y reciban en el curso de cumplir con su función de asesorar al Presidente en asuntos oficiales del gobierno". *In re Sealed Case*, 121 F.3d en la pág. 752 (traducción suplida).[81]

_____

[81] Por otro lado, el análisis que han utilizado las cortes estadounidenses para examinar si aplica el privilegio choca con nuestro reconocido derecho constitucional al derecho a la información. En esencia, reclamado el privilegio por parte del Estado, corresponde al solicitante establecer una necesidad particularizada para el documento en cuestión. Ello se ha reconocido así tanto en las cortes federales como en varios de los estados que han reconocido el privilegio de las comunicaciones del gobernador. Warnock, *supra*, en las págs. 990-1009. Dicha exigencia, sin embargo, sería contraria a nuestro reconocimiento liberal del derecho constitucional al acceso a la información, que le permite a cualquier ciudadano inspeccionar y copiar los documentos públicos sin tener que demostrar "interés especial" alguno. *Trans Ad de PR v. Junta de Subastas*, 174 DPR 56, 70-71 (2007); *Ortiz Rivera v. Bauermeister*, 152 DPR 161, 176-77 (2000); *véase* C.F. Ramos Hernández, *Acceso a la información, transparencia y participación política*, 85 Rev. Jur. UPR 1015, 1038 (2016).

Para auscultar si aplica alguno de los privilegios esgrimidos en el presente caso, es necesario examinar el proceso de elaboración del presupuesto bajo el cual surgió el reclamo de acceso a la información.

**III.**

El 30 de junio de 2016 marcó un retroceso en el progreso democrático de nuestra comunidad política. Ese día, el Presidente de Estados Unidos de América firmó el *Puerto Rico Oversight, Management, and Economic Stability Act* (PROMESA, por sus siglas en inglés). 48 USC sec. 2101 *et seq.* Ante la debacle económica y fiscal que enfrentábamos y todavía enfrentamos, un alivio —cualquier alivio— era imprescindible. Ante esta crisis, el gobierno de Estados Unidos apostó por agudizar nuestra incapacidad de timonear el futuro que, en últimas instancias, nos corresponde a nosotros vivir. El tiempo se encargará de contar la historia y adjudicar responsabilidades.

Los pormenores de la nueva estructura gubernamental que creó la Ley PROMESA repercuten sobre el caso de autos. Como describió recientemente el juez Flores García del Tribunal de Apelaciones, la Ley PROMESA creó un nuevo modelo de organización política y un marco jurídico *sui generis*. *Palacios Revera v. ELA*, KLAN201700183 (31 de julio de 2017) (Flores García, J., Voto concurrente).

Históricamente, la Constitución del Estado Libre Asociado de Puerto Rico ha garantizado un sistema republicano de gobierno con tres poderes igualmente subordinados a la

soberanía del pueblo de Puerto Rico: la Rama Ejecutiva, la Rama Legislativa y la Rama Judicial. Const. PR Art. I, sec. 2. Hemos enfatizado repetidamente que el principio de la separación de poderes ahí enmarcado —del cual somos celosos guardianes— persigue evitar la concentración desmedida de poder en un solo organismo político, así protegiendo la libertad de nuestros ciudadanos ante un ente tiránico. *Véase Córdova y otros v. Cámara de Representantes*, 171 DPR 789, 799 (2007); *Colón Cortés v. Pesquera*, 150 DPR 724, 752 (2000); *Pueblo v. Santiago Feliciano*, 139 DPR 361, 419-20 (1995).

En la actualidad, la Ley PROMESA ha colocado en entredicho el carácter republicano del Estado Libre Asociado de Puerto Rico.[82] Para manejar la situación fiscal del gobierno, la ley estableció una Junta de Control y Administración Fiscal (en adelante, la Junta). La Junta, según su propia ley habilitadora, fue creada como una entidad perteneciente al Estado Libre Asociado[83] y *no* como un organismo del Gobierno Federal. 48 USC sec. 2121 (c). Sin

---

[82] Para muestras, con un botón basta. Como sabemos, los miembros de la Junta de Control y Administración Fiscal los nombra el Presidente de Estados Unidos en cuya elección el pueblo de Puerto Rico no participa. Estos funcionarios así nombrados están facultados, entre otras cosas, para dejar sin efecto determinaciones tomadas por los funcionarios electos por el pueblo de Puerto Rico como son por ejemplo, las leyes aprobadas por la Asamblea Legislativa y refrendadas por el Primer Ejecutivo. 48 USC sec. 2144. Con lo cual, un cuerpo no electo y por lo tanto no representativo de la voluntad expresada en las urnas, puede ejercer un veto sobre la legislación aprobada y puede a su vez "legislar" para sustituir lo "vetado".

[83] Pertenece al gobierno del Estado Libre Asociado pero no es parte de ninguna de las tres Ramas de gobierno, de ahí su naturaleza *sui generis*. Es como un gobierno dentro del gobierno.

embargo, resulta difícil, al leer las disposiciones de PROMESA, considerar a la Junta una entidad del Estado Libre Asociado.

Toda entidad pública del Estado Libre Asociado tiene un lugar definido en nuestro esquema constitucional, con poderes limitados y contrapesos correspondientes; no así para la Junta. Ésta está protegida de cualquier actuación del Gobernador o la Legislatura que busque ejercer supervisión o fiscalización sobre su estructura y sus actividades. 48 USC sec. 2128. Asimismo, queda fuera del alcance de nuestros tribunales, pues cualquier acción en su contra debe entablarse en una corte federal. 48 USC sec. 2126. En concreto, PROMESA ha instituido una súper-rama de gobierno que legalmente le pertenece al Estado Libre Asociado pero sin que "la voluntad del pueblo [sea] la fuente [de su] poder público". Const. PR, Preámbulo.[84]

Pertinentemente, la Ley PROMESA le otorga un rol central a la Junta en el proceso de elaboración del presupuesto del Estado Libre Asociado. La ley le otorga "entera discreción" a la Junta para establecer un calendario para el desarrollo del presupuesto del Estado Libre Asociado para el entrante año fiscal. 48 USC sec. 2142. Al amparo de PROMESA, todos los

---

[84] Sobre las leyes del Estado Libre Asociado, la Ley PROMESA indica que sus disposiciones prevalecerán sobre cualquier ley local que sea inconsistente con las mismas. 48 USC sec. 2103. Sin embargo, ello no responde una interrogante importante ante el carácter local de la Junta. ¿Una ley local que no sea inconsistente con PROMESA, le aplica a la Junta? Es una pregunta de suma importancia para el pueblo puertorriqueño, pero ya que no tenemos jurisdicción sobre reclamaciones contra la Junta, no nos corresponderá a nosotros contestarla.

presupuestos aprobados en Puerto Rico deben cumplir sustancialmente con las disposiciones del Plan Fiscal aprobado por la Junta. Ante la presentación de un proyecto de presupuesto por parte del Ejecutivo, la Junta puede aceptarlo y certificar que está en cumplimiento con el Plan Fiscal, **luego de lo cual lo remitiría a la Legislatura**, o emitir una notificación de incumplimiento y exigir medidas correctivas. *Id*.[85]

Y así sucedió. El 15 de marzo de 2017, la Junta le remitió una carta al Gobernador y a los líderes de la Asamblea Legislativa en la cual estableció el 30 de abril de 2017 como la fecha límite para la presentación del proyecto de presupuesto por parte del Ejecutivo. Financial Oversight and Management Board, *Letter to Governor Rosselló with the Final Certification of the Government of Puerto Rico Fiscal Plan*, 15 de marzo de 2017. Más tarde, el 22 de marzo de 2017, la Junta impuso una serie de fechas para regular todo el proceso de elaboración del presupuesto. En esta carta, se estableció el 31 de mayo como el último día para que el Gobernador implemente medidas correctivas si fueran necesarias y entregue un proyecto de presupuesto en cumplimiento con el Plan Fiscal. Financial Oversight and Management Board, *Letter to Governor Rosselló Regarding the Government of Puerto Rico Budget Timeline*, 22 de marzo de 2017.

---

[85] Si la Asamblea Legislativa finalmente aprueba un presupuesto que, a juicio de la Junta no es cónsono con el Plan fiscal, ésta puede aprobar el suyo. 48 USC sec. 2142.

Recibido el proyecto de presupuesto del Gobernador, mediante una carta con fecha del 8 de mayo de 2017, la Junta le otorgó catorce (14) días adicionales al Gobernador para enmendar el presupuesto antes de tomar una decisión sobre si emitir una notificación de incumplimiento. Financial Oversight and Management Board, *Letter to the Governor, Presidents of the Senate and House of Representatives Regarding the Budget*, 8 de mayo de 2017. Finalmente, el 2 de junio de 2017, luego de extensas discusiones sobre el proyecto de presupuesto del Gobernador, la Junta finalmente presentó el mismo ante la Legislatura. Financial Oversight and Management Board, *Letter to Governor Rosselló, Presidents of the Senate and House of Representatives Regarding the FY2018 Budget*, 2 de junio de 2017.[86]

**IV.**

El 4 de mayo de 2017, el Senador Bhatia Gautier presentó una petición ante el Tribunal de Primera Instancia para que el Estado Libre Asociado le remitiera una copia del proyecto de presupuesto presentado a la Junta el 30 de abril de 2017. Entre los argumentos de oposición a la solicitud, el señor Gobernador invocó tanto el privilegio de comunicaciones del gobernador como el privilegio de procesos deliberativos.

Evaluado el proceso en el cual el Gobernador Rosselló Nevares presentó el proyecto de presupuesto a la Junta,

---

[86] Todas las referidas comunicaciones son públicas y están disponibles electrónicamente en https://juntasupervision.pr.gov/index.php/en/documents/ (última visita el 18 de agosto de 2017).

tenemos una imagen más clara de la etapa en la cual el Senador Bhatia Gautier realizó su solicitud. El señor Gobernador presentó su proyecto de presupuesto ante la Junta el 30 de abril de 2017. Ello implica dos cosas. En primer lugar, cuando el Senador Bhatia solicitó la información el 4 de mayo de 2017, ya el proyecto de presupuesto había sido enviado no meramente a otra agencia del gobierno, sino a una entidad totalmente independiente de la autoridad del Gobernador. Difícilmente, entonces, podríamos situar el proyecto de presupuesto dentro de las comunicaciones que los asesores del señor Gobernador sostienen en el curso de cumplir con su función de asesorarlo en asuntos oficiales del gobierno. Cuando el proyecto de presupuesto salió de la Fortaleza el 30 de abril de 2017, perdió la protección que lo cobijaba al amparo del privilegio de comunicaciones del gobernador.

En segundo lugar, una vez presentado el proyecto de presupuesto ante la Junta —y luego de realizar el análisis de rigor— ésta podía certificar que estaba en cumplimiento con el Plan Fiscal y remitirlo a la Asamblea Legislativa para su consideración y eventual aprobación. Es decir, de acuerdo a las disposiciones de la Ley PROMESA, el señor Gobernador sabía que el documento presentado el 30 de abril pudo haber sido el presupuesto del Estado Libre Asociado si la Junta lo validaba y, posteriormente, lo aprobaba la Asamblea Legislativa. Por lo tanto, el proyecto de presupuesto remitido a la Junta de Control y Administración Fiscal el 30

de abril de 2017 no constituye simplemente un ejercicio deliberativo, sino que representó una decisión concreta de política pública en cuanto a cómo distribuir los fondos disponibles de la hacienda del Estado para el año fiscal entrante. Así, al examinar el proceso de elaboración propio del documento en cuestión, podemos concluir que el privilegio de procesos deliberativos no le puede aplicar a la médula del mismo, a saber, los pormenores de la erogación de los fondos públicos.

Aun así, el foro primario actuó conforme a décadas de normativa jurisprudencial en cuanto al derecho de acceso a la información pública al ordenar el examen en cámara del proyecto de presupuesto. Si bien podemos deducir que el proyecto de presupuesto principalmente no está cobijado por los privilegios alegados, no tenemos constancia sobre la totalidad del contenido del documento entregado a la Junta. Es enteramente posible que éste tenga anejado, por ejemplo, memorandos a los cuales sí les pudiera aplicar algún privilegio. Ese es el beneficio del examen en cámara. Le permite al juzgador ejercer su función constitucional de determinar exactamente qué parte de un documento está cobijado por un privilegio. Precisamente por ello es que era el curso apropiado a seguir en el caso de autos.

Empero, sin mucha explicación que fundamente su decisión, una mayoría de este Tribunal concluye que fue inadecuado ordenar un examen en cámara, pues "[b]asta con examinar el proyecto de presupuesto final para conocer de qué consiste el

documento en disputa". Acto seguido, sostiene que el foro primario debió ordenar a las partes someter memorandos de derecho para auscultar si el documento era de naturaleza pública o no. El curso de acción que toma la mayoría es problemático por varias razones.

*Primero*, como relatamos anteriormente, no sabemos qué incluyó el documento del proyecto de presupuesto que el señor Gobernador sometió a la Junta. Es posible que haya incluido otras cosas fuera del desglose de la erogación de fondos públicos para el año fiscal entrante. Sabemos, sin embargo, que **no es el proyecto de presupuesto final** porque, si así lo fuera, el Estado no estaría oponiéndose tan vehementemente a la divulgación de un documento que ya publicó. Por ello, el examen del proyecto de presupuesto final no es suficiente para auscultar la naturaleza del documento solicitado.

*Segundo*, impedir un examen en cámara del documento es, parafraseando a *Pres. del Senado*, permitir que sea el propio Ejecutivo quien sea árbitro absoluto y final de lo que es materia privilegiada. *Véase Pres. del Senado*, 148 DPR en la pág. 805. Si al juzgador se le impide examinar el documento para auscultar su naturaleza, ¿debe entonces confiar enteramente en las representaciones que le haga el Estado sobre el contenido del mismo? Sostener que sí, como parece resolver la mayoría, tiene el efecto de emascular al Poder Judicial y someterlo a los designios de un Primer Ejecutivo. Ello es contrario a las más básicas normas de pesos y contrapesos y le confiere un poder absoluto a la parte que se

opone a la publicación del documento para controlar el proceso.

*Tercero*, al observar que la juez de instancia debió haber solicitado memorandos de derecho sobre la naturaleza del documento, el Tribunal le está señalando al foro primario que haga algo que ya ordenó. El 17 de julio de 2017, el foro de instancia ordenó que previo a la celebración de la vista argumentativa pautada para el 26 de julio de 2017, las partes suplementaran sus posiciones en cuanto a varios asuntos. Entre ellos, "se ordenó a ambas partes a venir preparadas para argumentar sobre la naturaleza de la información solicitada y la aplicación del privilegio ejecutivo". *Apéndice*, pág. 233. El 21 de julio de 2017, las partes presentaron los escritos en cumplimiento de orden en los cuales presentaron sus posiciones. *Id*. Celebrada la vista argumentativa y discutidos los alegados privilegios y la naturaleza del documento en cuestión, el foro primario concluyó que "a preguntas del Tribunal y conforme a la casuística aplicable, la parte demandada no detalló de forma alguna por qué la información solicitada cualifica para la aplicación del privilegio ejecutivo". *Apéndice*, pág. 235. Asimismo, el Ejecutivo "no logró establecer en este momento de forma detallada el porqué no procede la divulgación del Proyecto de Presupuesto presentado a la Junta". *Id*. Así lo hizo constar la juez de primera instancia en la *Resolución y Orden* de la cual recurre el señor Gobernador. El incumplimiento del Gobernador con el

peso probatorio correspondiente era motivo suficiente para rechazar de plano el privilegio invocado.

No obstante, la juez de instancia ordenó que junto a la presentación del documento para su examen en cámara, la parte demandada sometiera "una moción en la que explique en detalle las razones por las cuales la información solicitada, o parte de ella, cualifica para la aplicación del privilegio invocado". *Id*. En otras palabras, le dio una segunda oportunidad al bate. Todo lo anterior demuestra que el foro primario claramente le permitió a las partes argumentar sobre la naturaleza del documento solicitado y sopesó los argumentos a favor y en contra de aplicar el privilegio invocado antes de tomar su decisión. Por lo tanto, no hay razón para seguir litigando un asunto de Derecho cuando las partes ya tuvieron amplia oportunidad de expresarse sobre el particular.

Ordenar que se sometan memorandos adicionales —una tercera oportunidad al bate— poco abona a dilucidar con premura y diligencia asuntos de esta naturaleza. Y se revela, más que nada, como un intento de micro manejar desde nuestros despachos los asuntos de instancia. A fin de cuentas, en qué consiste el abuso de discreción de la juez de instancia al ordenar: la inspección en cámara acompañada de memorandos de derecho adicionales, donde el Estado tendrá una nueva oportunidad de subsanar las deficiencias de su argumentación original.

No quisiera pensar que la posición inarticulada de la mayoría es que, hecho un reclamo de confidencialidad por el Estado, el Poder Judicial está impedido de ver el documento para aquilatar la veracidad o corrección del reclamo. Ello supone el rendimiento total de nuestro poder a los pies del Poder Ejecutivo. Por lo menos, a los pies de este Ejecutivo. ¿Mostrará esta mayoría en el futuro la misma deferencia y generosidad cuando el Primer Ejecutivo no le sea tan afín? Sólo el tiempo dirá.

En fin, recordemos que la crisis de Puerto Rico es también una de credibilidad. Para superarla, es necesario fomentar una cultura en la cual todo servidor público se vea a sí mismo como garante de los derechos fundamentales de la ciudadanía. Poco vale un derecho escrito en un papel si no lo encarnamos día a día. Poco vale proclamar a los cuatro vientos la transparencia para luego, en el momento en que esto se le exija al gobierno, se recurra a la opacidad investida por las dilaciones procesales. ¿Qué se esconde? ¿A qué se le teme?

                              Anabelle Rodríguez Rodríguez
                              Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Hon. Eduardo Bhatia Gautier, en
su carácter como Portavoz del
Partido Popular Democrático

    Recurrido


        v.                                CC-2017-668

                      Certiorari

Hon. Ricardo Rosselló
Nevares, en su carácter de
Gobernador de Puerto Rico;
Estado Libre Asociado de
Puerto Rico

    Peticionarios


Opinión disidente emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ


San Juan, Puerto Rico, a 15 de septiembre de 2017.

En momentos en que resulta necesario fortalecer el acceso a la información, innecesariamente se diluye esa garantía constitucional y se debilitan las herramientas que tiene la ciudadanía para acceder a los documentos públicos. Por ello, nuevamente disiento del curso de acción tomado por este Tribunal en la controversia ante nos. En esta ocasión, no estoy de acuerdo con el proceso ni el resultado al que llega una Mayoría de este Tribunal. Conscientes de que, como cuestión de Derecho, no pueden conceder ninguno de los remedios que específicamente pidió al Gobierno

de Puerto Rico (Gobierno), optan por darle otra oportunidad al Estado, a pesar de que el tracto procesal revela la multiplicidad de oportunidades fallidas que esa parte ha tenido.

En este afán, lamentablemente se decide limitar los recursos que tiene el Tribunal de Primera Instancia para que pueda resolver el caso conforme a Derecho en un reclamo de información de alto interés público. Es decir, se restringe el rol judicial del foro primario, privándolo de realizar una inspección en cámara del documento en controversia, como parte de las herramientas que simultáneamente se puedan utilizar para decidir si aplica algún privilegio. Con ello, se ve menoscabada la concesión de los remedios adecuados, completos y oportunos. Como agravante, se dirige al foro de instancia a actuar a ciegas, dilatando los procedimientos y estableciendo mecanismos predirigidos sobre el curso de acción a seguir del foro primario. Es por ello que disiento.

## I

Este caso tiene su génesis cuando el 2 de mayo de 2017, el Hon. Eduardo Bhatia Gautier (senador Bhatia o recurrido), Portavoz de la Minoría del Partido Popular Democrático en el Senado de Puerto Rico, le requirió por escrito al Gobernador de Puerto Rico, Hon. Ricardo Rosselló Nevares (Gobernador), que hiciera público el Proyecto de Presupuesto correspondiente al año fiscal 2017-2018, que fue presentado

el 30 de abril de 2017 a la Junta de Supervisión y Administración Financiera para Puerto Rico (Junta).[87]

Al no recibir la información solicitada, el 4 de mayo de 2017, el senador Bhatia presentó un recurso de *mandamus* en el Tribunal de Primera Instancia contra el Gobernador y el Gobierno (en conjunto, los peticionarios). En éste, solicitó que se le ordenara publicar el Proyecto de Presupuesto y que se hiciera disponible al público. Fundamentó su solicitud en que la información solicitada es pública y de alto interés para el pueblo puertorriqueño. Arguyó, además, que la información es necesaria para mantener a la ciudadanía informada sobre los asuntos gubernamentales y el proceso de fiscalización. Asimismo, señaló que es de suma importancia para la Asamblea Legislativa realizar el correspondiente análisis en el proceso de aprobación del Presupuesto. Del mismo modo, argumentó que la información no está protegida por algún privilegio y que no es confidencial; que tampoco está cobijada por alguna excepción del derecho de acceso a la información. Al contrario, afirmó que la negativa a publicar la información lacera tal derecho de los ciudadanos y el derecho a estar informado.

_____

[87]La presentación del Proyecto de Presupuesto ocurrió conforme la sección 202 de la Ley PROMESA, 48 U.S.C. sec. 2142. De acuerdo a ella, la Junta de Supervisión Fiscal y Administración Financiera para Puerto Rico (Junta) fijó la fecha del 30 de abril de 2017 como el día para que el Gobernador de Puerto Rico, Hon. Ricardo Rosselló Nevares (Gobernador), sometiera ante su consideración un Proyecto de Presupuesto. Ante ello, el Gobernador así lo hizo en la fecha señalada. Igualmente, el 8 de mayo de 2017, la Junta acusó recibo del documento presentado.

Consecuentemente, el mismo 4 de mayo de 2017, el foro primario emitió una orden en la cual ordenó a la parte peticionaria que contestara dentro de un término de cinco (5) días. Tras varios trámites procesales,[88] los peticionarios presentaron una "Moción Urgente reiterando Desestimación" en la cual argumentaron, en esencia, que el Proyecto de Presupuesto es un documento de trabajo, es decir, un borrador, cobijado por el privilegio ejecutivo; que la solicitud debió haberse realizado mediante los mecanismos dispuestos en el Reglamento del Senado; que el senador Bhatia no tiene legitimación activa, y que la solicitud era académica. A su vez, reclamaron que el recurso presentado haría que la Rama Judicial interviniera indebidamente con las funciones de las Ramas Ejecutiva y Legislativa, en violación de la separación de poderes.

En cuanto al privilegio ejecutivo, sostuvieron específicamente que "[e]l borrador de Proyecto de Presupuesto presentado a la Junta era un documento de trabajo, o sea, un borrador en etapa deliberativa que estaba pasando por los trámites que establece PROMESA, siendo el documento final del ejecutivo el entregado a los Cuerpos Legislativos". Petición de Certiorari, Anejo VIII, Moción Urgente Reiterando Desestimación, pág. 68. Además, señalaron lo siguiente, a saber:

---

[88]Entre los trámites procesales, el Gobierno presentó un "Notice of Removal" en el Tribunal de Distrito Federal para el Distrito de Puerto Rico. Éste último determinó devolver el caso al foro estatal.

El presente caso cumple con todos los requisitos [del privilegio ejecutivo] ya que es el Gobernador quien invoca el privilegio de lo que constituía un borrador bajo su evaluación y en cuya etapa de presentación del recurso ciertamente no se había concluido el proceso deliberativo que permitiera ser considerado como Proyecto de Presupuesto. No obstante, concluido ese proceso pre decisional y pre deliberativo, se procedió con la Presentación del Proyecto del Presupuesto a los Cuerpos Legislativos y la amplia divulgación del mismo. Íd., pág. 70.

Por su parte, el senador Bhatia presentó una oposición a la desestimación. Expuso que el Gobernador tiene el deber ministerial de divulgar los documentos públicos. Ante ello, argumentó que se debe publicar el Proyecto de Presupuesto entregado a la Junta, ya que es un documento público creado por la Rama Ejecutiva. Al no hacerlo, el Gobierno afecta sus prerrogativas legislativas. Asimismo, afirmó que se afectó su derecho constitucional de acceso a la información ante la negativa del Gobernador de proveer el Proyecto de Presupuesto. En cuanto a la aplicación del privilegio ejecutivo, sostuvo que los peticionarios no cumplieron con la responsabilidad de establecer que aplica. Al contrario, expresó que el documento no es uno interno, preparatorio ni predecisional.

En torno a la legitimación activa, el recurrido mencionó que la posee como legislador y como poseedor del derecho de acceso a la información. Argumentó que pretende vindicar sus prerrogativas legislativas, así como también, el derecho constitucional de acceso a información pública que le asiste a él y a todos los ciudadanos.

Por otra parte, rebatió las alegaciones de academicidad. Señaló, específicamente, que el Estado no acreditó que el documento entregado a la Junta fue el mismo que se presentó ante la Asamblea Legislativa. Adujo, además, que la controversia es susceptible de repetición y de evadir la revisión judicial. Igualmente, se opuso a la alegación de que no agotó los mecanismos reglamentarios y estatutarios, ello ya que tales procesos son parlamentarios e inaplicables cuando se alega violación al derecho constitucional de acceso a la información.

Así las cosas, el Tribunal de Primera Instancia tomó conocimiento de que se aprobó el Presupuesto del año fiscal 2017-2018, por lo cual, ordenó que el recurrido expresara por qué el *mandamus* no se había tornado académico y si tenía legitimación activa bajo el entendido que hubo una verdadera lesión a sus prerrogativas legislativas. Además, se le requirió que confirmara el agotamiento de todos los remedios a su disposición. En lo que concierne a los peticionarios, les ordenó que expresaran si la información solicitada ya fue divulgada. Asimismo, señaló una vista argumentativa en la cual ambas partes debían discutir si la información solicitada es pública y si aplicaba el privilegio ejecutivo. Por último, advirtió a las partes que podría solicitar la información requerida para ser inspeccionada en cámara, para determinar si aplicaba el privilegio.

Conforme a lo ordenado, ambas partes presentaron sendos escritos.[89] Por su parte, el senador Bhatia reprodujo sus argumentos respecto a la academicidad, y añadió que la aprobación del Presupuesto abonó a la concreción del daño sufrido por la continua privación del acceso a la información. Del mismo modo, afirmó que la negativa del Gobierno no le permite fiscalizar y realizar un análisis de la política pública fiscal implementada por el Gobernador. Ello, ya que la referida labor es durante todo el año fiscal. De igual forma, señaló que el derecho invocado sólo se satisface con la divulgación del documento.

Con relación a la legitimación activa y al requisito de agotar remedios, reafirmó sus argumentos y agregó que no pretendía trasladar el debate político al foro judicial. Sostuvo que únicamente el Poder Judicial tiene la facultad para adjudicar la naturaleza pública del documento solicitado y emitir un decreto vinculante sobre la aplicabilidad del privilegio ejecutivo. Finalmente, recalcó que el Gobierno no acreditó que el documento presentado a la Junta es el mismo que se presentó a la Asamblea Legislativa y que no ha fundamentado la aplicación del privilegio ejecutivo.

Por su parte, los peticionarios comparecieron y reiteraron sus alegaciones de que el recurrido no tenía legitimación activa, ya que no ha sufrido un daño a sus prerrogativas legislativas. También, argumentaron que el

---

[89]Además, las partes presentaron una moción conjunta en la que estipularon hechos y documentos. Asimismo, delimitaron las controversias de derecho.

caso es académico a causa de que se aprobó el presupuesto. En cuanto a la orden del foro primario, de indicar si la información ya fue divulgada, alegaron que el borrador no se ha hecho público, debido a que era un documento de trabajo para que la Junta lo revisara y devolviera al Gobernador, quien lo debía someter ante la Asamblea Legislativa. Por otro lado, arguyeron que el recurrido debió seguir los procesos legislativos a los cuales estaba obligado. Al no seguirlos, no tenía legitimación para acudir a los foros judiciales.

Con respecto al privilegio ejecutivo, y además de lo indicado en la moción de desestimación, los peticionarios expresaron que "[e]l documento solicitado por la parte demandante no es 'documento público'. Lo solicitado era el borrador o documento de trabajo preparado por el Ejecutivo como parte de una etapa de deliberación. Por tanto, no procede su divulgación de conformidad con el privilegio ejecutivo". Petición de Certiorari, Anejo XIII, Moción en cumplimiento de orden, pág. 156. De igual forma, fundamentaron su alegación de que constituía un privilegio ejecutivo de la siguiente manera:

> El borrador inicial entregado a la Junta claramente constituía un documento de trabajo sujeto a cambios, o sea, un borrador en etapa deliberativa que estaba pasando por los trámites que establece PROMESA y al cual le cobija el privilegio ejecutivo. La parte demandante tenía, y tiene, derecho a solicitar y examinar la versión final que el Ejecutivo entregó a los Cuerpos Legislativos. En observancia a este derecho, la parte demandante examinó y utilizó su prerrogativa legislativa al emitir su voto. Íd.

No conforme, también argumentaron lo siguiente:

> [E]l borrador de presupuesto solicitado por la parte demandante fue presentado a la Junta de Control Fiscal como parte de una deliberación o etapa de formulación de política pública en la que tanto los funcionarios gubernamentales designados para trabajar el presupuesto como la Junta -que en virtud de PROMESA es una entidad dentro del Gobierno- lo evaluaron y modificaron en aras de obtener el proyecto de presupuesto final que fue el sometido a la Legislatura. Íd., pág. 159.

Luego de que se presentaran las respectivas posiciones por escrito, el 26 de julio de 2017, se llevó a cabo una vista argumentativa. Al comienzo, el foro primario resolvió que el recurrido poseía legitimación activa y que la controversia no se había tornado académica. Por tanto, señaló que en la vista se discutiría únicamente la naturaleza de la información y si aplicaba el privilegio ejecutivo. A preguntas del Tribunal, los peticionarios reafirmaron que el documento no es público, por ser un borrador o documento de trabajo preparado por el Ejecutivo, como parte de una etapa de deliberación para el desarrollo de la política pública. Además, notificó que el documento estaba cobijado bajo el privilegio ejecutivo, debido a que contiene trabajo de los asesores del Gobernador. Por su parte, el senador Bhatia argumentó que sólo solicita el Proyecto de Presupuesto, es decir, las cifras, cuantías o partidas de fondos asignados. No así la documentación en apoyo, recomendaciones, determinaciones o expresiones del personal y/o asesores del Gobierno. Véase Petición de

Certiorari, Anejos XV-XVI, págs. 231-235. Además, reafirmó que los peticionarios no acreditaron qué opiniones o análisis tiene el Proyecto de Presupuesto que lo convierte en un documento deliberativo.

Finalizada la vista, el foro primario concluyó que el Gobierno no logró poner al tribunal en posición de determinar que aplica el privilegio ejecutivo. Por tanto, le ordenó presentar en diez (10) días el Proyecto de Presupuesto en sobre sellado para ser evaluado en cámara. Asimismo, le concedió una nueva oportunidad de presentar otra moción, donde explicara detalladamente las razones por las cuales la información solicitada es privilegiada, por constituir un proceso deliberativo o de formulación de política pública.[90]

Inconformes con tal determinación, los peticionarios acudieron ante el Tribunal de Apelaciones, mediante una petición de *certiorari* y una moción en auxilio de jurisdicción. Allí solicitaron que, primeramente, se

---

[90]El 28 de julio de 2017, el senador Bhatia presentó un *mandamus* enmendado en el que aclaró que comparecía tanto en su carácter de senador como en el personal e individual. En desacuerdo, el Gobierno se opuso y apoyó su contención, en síntesis, en que los procedimientos están en un estado avanzado y que ya habían presentado una alegación responsiva, por lo que era necesaria la autorización del tribunal. Eventualmente el foro primario permitió la enmienda.

Sobre el particular, consignamos que la Mayoría le otorgó legitimación activa a la parte recurrida en su carácter de legislador y, sorprendentemente, obvió la dimensión ciudadana en la que esa parte también basó su reclamo de acceso a la información solicitada.

paralizaran los procedimientos y se suspendiera la orden del Tribunal de Primera Instancia. En segundo término, alegaron que procedía la expedición del recurso y que se revocara al foro primario, desestimando la acción. Para ello, arguyeron que ese tribunal erró al razonar que el senador Bhatia tenía legitimación activa, que el caso no era académico y al no desestimar el recurso, a pesar de que era improcedente en derecho. Ese mismo día, el foro apelativo intermedio emitió una resolución en la que denegó expedir el recurso.

En desacuerdo, los peticionarios acuden ante nos, mediante una petición de *certiorari* y una moción en auxilio de jurisdicción. En esencia, reproducen los mismos señalamientos de error esgrimidos ante el Tribunal de Apelaciones. Ante ello, una Mayoría de este Tribunal ordenó paralizar los procedimientos hasta tanto se proveyera otra cosa. Consecuentemente, disentí y adelanté la imposibilidad de conceder los remedios solicitados por el Gobierno, al consignar lo siguiente:

> El Juez Asociado señor Estrella Martínez disiente del curso de acción seguido por una Mayoría de este Tribunal. En su lugar, proveería no ha lugar tanto a la *Urgente Moción en Auxilio de Jurisdicción* como a la *Petición de certiorari* presentadas por el Gobierno de Puerto Rico. Ello, por considerar que, en este caso, no estamos ante una solicitud de información privilegiada que incluya recomendaciones, consultas, determinaciones o expresiones del Gobernador, o su personal de apoyo o asesores, relacionadas con el proceso deliberativo para la preparación del Proyecto de Presupuesto. Más bien, se requiere que se entregue y dé publicidad al documento mismo del Proyecto de Presupuesto, según presentado ante la Junta de Supervisión y Administración Financiera para Puerto Rico (Junta). El Gobierno de Puerto

Rico no ha demostrado un interés apremiante que justifique la no divulgación de este documento.

Respecto a ese particular, cabe señalar que la Junta incluso ha publicado mediante comunicado de prensa la notificación del resultado de su análisis en cuanto al Proyecto de Presupuesto objeto de la presente controversia. En consecuencia, no veo razón alguna que impida que se brinde igual acceso al Proyecto de Presupuesto, conforme al derecho de acceso a la información pública. A fin de cuentas, de qué serviría dar publicidad a la notificación de la Junta que informa si el Proyecto de Presupuesto presentado está en cumplimiento o no con el Plan Fiscal, si se negará acceso al Proyecto de Presupuesto.

Ante este cuadro fáctico y procesal, procedo a exponer el derecho aplicable que fundamenta mi disenso.

## II

### A.

Como es sabido, en Puerto Rico hemos reconocido en un sinnúmero de ocasiones el derecho de acceso a la información como un derecho y vinculado a la libertad de expresión, prensa y asociación, según el artículo II, sección 4 de nuestra Constitución. Véase Trans Ad de PR v. Junta de Subastas, 174 DPR 56, 67 (2008). Su fin es asegurar y facilitar a todos los ciudadanos el derecho a examinar el contenido de los expedientes, informes y documentos que se recopilan en la gestión de gobierno, y que constan en las agencias del Estado. Ortiz v. Dir. Adm. de los Tribunales, 152 DPR 161, 175 (2000). Su cimiento es el derecho que tiene toda persona a saber, el cual es un pilar de la sociedad democrática. E. Rivera Ramos, La libertad de información:

Necesidad de su reglamentación en Puerto Rico, 44 Rev. Jur. UPR 67, 68 (1975).

A su vez, garantiza el derecho a la libre discusión de los asuntos de gobierno. Ortiz v. Dir. Adm. de los Tribunales, supra. Y es que "[e]n una sociedad que se gobierna a sí misma, resulta imperativo reconocer al ciudadano común 'el derecho legal de examinar e investigar cómo se conducen sus asuntos, sujetos sólo a aquellas limitaciones que impone la más urgente necesidad pública'". Íd. (citando a Soto v. Srio. de Justicia, 112 DPR 477, 485 (1982)). Dado que si no se conoce cómo se conduce la gestión pública no se puede tener una plena libertad de expresión de las ideas sobre el gobierno. Íd. Véase, además, López Vives v. Policía de P.R., 118 DPR 219, 227-228 (1987).

Estatuariamente, en Puerto Rico contamos con varias disposiciones que están relacionadas con el acceso a la información. El artículo 409 del Código de Enjuiciamiento Civil, el cual establece el derecho a inspeccionar y copiar documentos públicos, destaca lo siguiente, a saber: "Todo ciudadano tiene derecho a inspeccionar y sacar copia de cualquier documento público de Puerto Rico, salvo lo expresamente dispuesto en contrario por la ley". Cód. Enj. Civ. PR, Art. 409, 32 LPRA sec. 1781. Por su parte, existen otras disposiciones que definen lo que es un documento público. El artículo 1170 del Código Civil de Puerto Rico se limita a reconocer que "[s]on documentos públicos los autorizados por un notario o empleado público competente, con las solemnidades requeridas por la ley". Cód. Civ. PR,

Art. 1170, 31 LPRA sec. 3271. En lo pertinente, la Ley de administración de documentos públicos de Puerto Rico, Ley Núm. 5 de 8 de diciembre de 1955, según enmendada, 3 LPRA sec. 1001(b), define documento público de la siguiente forma:

> Es todo documento que se origine, conserve o reciba en cualquier dependencia del Estado Libre Asociado de Puerto Rico de acuerdo con la ley o en relación con el manejo de los asuntos públicos y que de conformidad con lo dispuesto en el Artículo 4 de esta ley (3 L.P.R.A. sec. 1002) se haga conservar que se requiera conservar permanentemente o temporalmente como prueba de las transacciones o por su valor legal. Incluye aquellos producidos de forma electrónica que cumplan con los requisitos establecidos por las leyes y reglamentos.

Jurisprudencialmente, el desarrollo del derecho de acceso a la información data desde mediados del siglo XX, cuando determinamos que para reclamar el derecho de inspeccionar un documento, no tiene que surgir expresamente de la ley, sino que basta que el demandante tenga el derecho. Prensa Insular de PR v. Cordero, 67 DPR 89 (1947). Posteriormente, concluimos que la única justificación para que un ciudadano no tenga acceso a un documento público es que una ley expresamente lo disponga. Dávila v. Superintendente de Elecciones, 82 DPR 264 (1960).

Finalmente, fue en Soto v. Srio. de Justicia, 112 DPR 477 (1982), donde reconocimos que el derecho de acceso a la información es de índole constitucional, catalogándolo como un derecho constitucional implícito. Enfatizamos que existe

una relación estrecha entre la libertad de expresión y el derecho a la información, pues el conocimiento es una condición necesaria de un sistema democrático. Íd., pág. 485. Sin embargo, expresamos que tal derecho no es uno absoluto ni ilimitado.

A raíz de esta determinación, ha habido un desarrollo paulatino sobre este derecho. Hemos establecido que el primer paso es determinar si la información es pública. Colón Cabrera v. Caribbean Petroleum, 170 DPR 582, 589 (2007). Y es que el acceso a la información sólo se circunscribe a la que tenga el carácter de público. Trans Ad de PR v. Junta de Subastas, supra, pág. 69.

Además, hemos sostenido que cualquier reclamo de confidencialidad debe justificarse con un interés apremiante que no sea el poner límites a la libertad de expresión. Ello lo confirman nuestros pronunciamientos en Colón Cabrera v. Caribbean Petroleum, donde destacamos que "el Estado no puede negarse caprichosamente y de forma arbitraria a permitir el acceso". Colón Cabrera v. Caribbean Petroleum, supra, pág. 590. Ello, debido a que "todo ciudadano tiene el derecho a inspeccionar cualquier documento público, el acto de denegar el acceso, por sí mismo, causa al solicitante un daño claro, palpable y real". Ortiz v. Dir. Adm. de los Tribunales, supra, pág. 177. Cuando el Gobierno niega injustificadamente el acceso a la información, lesiona el derecho fundamental de estar informado; lo que concede legitimación activa para cuestionar la validez de esa acción gubernamental. Íd.

Sin embargo, existen circunstancias excepcionales en las cuales estos derechos podrán ceder por imperativo del interés público y se justifica que la información se mantenga confidencial. Trans Ad de PR v. Junta de Subastas, supra, pág. 68. Conforme a lo anterior, la jurisprudencia es clara en que tal reclamo de confidencialidad del Gobierno sólo debe prosperar, a modo de excepción, en los siguientes supuestos: (1) cuando una ley así lo declara; (2) la comunicación está protegida por algún privilegio evidenciario que puedan invocar los ciudadanos, Sierra v. Tribunal Superior, 81 DPR 554 (1959); (3) revelar la información puede lesionar los derechos fundamentales de terceros, ELA v. PR Tel. Co., 114 DPR 394 (1983); (4) se trata de un confidente, según la Regla 515 de Evidencia de 2009, y (5) es información confidencial, según la Regla 514 de Evidencia de 2009. Véase Colón Cabrera v. Caribbean Petroleum, supra, pág. 591.

"A tenor con estos principios, el examen judicial al cual deberá someterse cualquier reclamo de confidencialidad de documentos e información pública dependerá de la excepción que invoque el Estado *vis-à-vis* el pedido de información". Nieves v. Junta, 160 DPR 97, 104 (2003). Véase, además, Ortiz v. Dir. Adm. de los Tribunales, supra, pág. 178; Angueira v. J.L.B.P, 150 DPR 10, 24 (2000). Entre esos dos derechos, hemos reconocido que la balanza debe inclinarse a favor del reclamante de la solicitud y en contra del privilegio. Nieves v. Junta, supra; López Vives v. Policía de P.R., supra, pág. 233. Es decir, "[l]a balanza

debe inclinarse hacia un reconocimiento mayor del derecho a la información". Pérez López, supra, pág. 359.

Lamentablemente, una Mayoría de este Tribunal pretende ignorar esta arraigada línea jurisprudencial y, con ello, no fortalece el derecho a la información ni pauta normas claras para que el poder del Estado no sea desproporcional ante alegaciones de la aplicabilidad del privilegio ejecutivo, frente a reclamos de acceso a documentos públicos. Al contrario, lo que hace este Tribunal es quitarle herramientas al juzgador, y, por ende al Pueblo, para atender íntegramente ambos intereses, privando de la oportunidad de realizar una inspección en cámara.

**B.**

A nivel internacional, el derecho de acceso a la información ha sido reconocido en diferentes aspectos. En primera instancia, en el Pacto Internacional de Derechos Civiles y Políticos se establece, en lo pertinente, que:

> Toda persona tiene derecho a la libertad de expresión; este derecho comprende la libertad de buscar, **recibir y difundir informaciones** e ideas de toda índole, sin consideración de fronteras, ya sea oralmente, por escrito o en forma impresa o artística, o por cualquier otro procedimiento de su elección. Pacto Internacional de Derechos Civiles y Políticos, A.G. Res. 2200 (XXI), N.U. Doc. A/RES/2200 (XXI) (16 de diciembre de 1966), http://www.un.org/es/comun/docs/?symbol=A/RES/2200(XXI)&Lang=S&Area=RESOLUTION (énfasis suplido).

Por su parte, la Asamblea General de la Organización de las Naciones Unidas (ONU) aprobó la Resolución 59 (I) y

celebró la Conferencia Internacional de Libertad de Información. Convocación de una conferencia internacional de libertad de información, A.G. Res. 59 (I), N.U. Doc. A/RES/59 (I) (14 de diciembre de 1946), http://www.un.org/es/comun/docs/?symbol =A/RES/59(I). En ella, a pesar de no ser vinculante, se acordaron criterios importantes para el reconocimiento de este derecho, como que la libertad de información es un derecho humano fundamental, el cual implica recopilar, transmitir y publicar noticias sin restricciones, y que requiere el control de no abusar del uso de la información. Con mayor relevancia, igual reconocimiento se logró en el derecho a la libertad de opinión, consagrado en el artículo 19 de la Declaración Universal de Derechos Humanos. Véase Declaración Universal de Derechos del Hombre, A.G. Res. 217 (III) A, N.U. Doc. A/RES/217 (III) (10 de diciembre de 1948), http://www.un.org/es/comun /docs/?symbol=A/RES/217 (III). Finalmente, en el 2003, la Asamblea General de la Organización de los Estados Americanos (OEA) reconoció la importancia del acceso a la información pública y reafirmó la declaración del artículo 13 de la Convención Americana, en cuanto a que todos tienen la libertad de procurar, recibir y difundir información.

**III**

**A.**

El privilegio ejecutivo, en su forma específica, se utiliza en referencia a las comunicaciones confidenciales del Primer Ejecutivo y sus asesores. E. L. Chiesa Aponte,

Tratado de Derecho Probatorio: Reglas de Evidencia de Puerto Rico y Federal, República Dominicana, Editora Compio C. por A., 1998, T. I, pág. 296. En su concepción más general, y el más utilizado en Puerto Rico, se refiere al privilegio general de información oficial. Íd. Por ello es que es definido como "la prerrogativa del Ejecutivo o sus representantes para retener e impedir la divulgación de información que le ha sido formalmente solicitada en el transcurso de una investigación legislativa, un procedimiento judicial o una petición ciudadana". A. M. López Pérez, El privilegio ejecutivo frente al derecho a la información pública, 34 Rev. Der. PR 345, 347 (1994). Su fundamento es que una difusión extensa de los asuntos del gobierno podría afectar su funcionamiento y poner en peligro la seguridad nacional. Íd., pág. 345.

A nivel de los Estados Unidos, la Corte Suprema federal en el caso U.S. v. Nixon, 418 U.S. 683 (1974), por primera vez validó y definió el alcance del privilegio ejecutivo. Específicamente, aceptó el privilegio dentro del contexto constitucional de la doctrina de separación de poderes. Con él, el Primer Ejecutivo puede rehusarse a divulgar información que determine que es confidencial. Ello "garantiza el libre flujo de ideas en el proceso de las determinaciones de política pública de la rama ejecutiva". R. Emmanuelli Jiménez, Prontuario de Derecho Probatorio Puertorriqueño, Ediciones Situm, 3ra ed., 2010, pág. 316. No obstante, el privilegio es uno cualificado que depende de los intereses involucrados. Íd.

Igualmente, en Puerto Rico fue incorporado este privilegio como parte de la doctrina de separación de poderes consagrada en nuestra Constitución. Véase Const. PR, Art. I, sec. 2; Art. IV, secs. 1 y 4. Al respecto, este Tribunal en Peña Clos v. Cartagena, 114 DPR 576 (1983), señaló que el privilegio ejecutivo, conforme la jurisprudencia federal, no es absoluto. Así también, reafirmamos que corresponde a los tribunales establecer, mediante un balance adecuado, los límites y las fronteras del privilegio con los demás intereses. Íd., pág. 598.

Actualmente, se han reconocido varias instancias en las cuales el poder ejecutivo puede reclamar el privilegio ejecutivo. En el caso de U.S. v. Nixon, supra, la Corte Suprema federal reconoció los siguientes supuestos: (1) para la protección de las comunicaciones entre el Primer Ejecutivo, sus asesores, ayudantes y otros funcionarios que asesoran y ayudan en el desempeño y formulación de política pública; (2) información que la doctrina de separación de poderes justifica que no pueda ser analizada por el poder judicial, e (3) información militar, diplomática o secretos de seguridad nacional. Además de estas instancias, existe reconocimiento del alcance de la doctrina en "información relacionada a individuos que están o han sido sujeto a investigaciones civiles y criminales o de los agentes informantes, o funcionarios relacionados con dichas investigaciones". López Pérez, op. cit., págs. 353-335.

Por otro lado, los tratadistas han afirmado que el privilegio ejecutivo opera en dos vertientes. La primera es

para proteger el proceso deliberativo que realiza la Rama Ejecutiva en la toma de decisiones. Con ella, se limita el acceso a los documentos o comunicaciones que sean opiniones o recomendaciones sobre el proceso de toma de decisiones de política pública. Tiene como fin que los funcionarios públicos tengan la libertad de realizar una discusión amplia y franca en el proceso de la toma decisiones sin la presión de que serán divulgadas. Conforme lo anterior, la primera característica de esta vertiente es que la información debe realizarse en un proceso predecisional, es decir, antes que culmine el proceso deliberativo. Ello se cimenta en el hecho que no debe afectarse la calidad de las decisiones por la divulgación. Además, se ha dicho que la información predecisional que ya forma parte de la decisión final puede perder su privilegio, ya que no afecta la toma de decisiones. M. W. Warnock, _Stifling Gubernatorial Secrecy: Application of Executive Privilege to State Executive Officials_, 35 Cap. U.L. Rev. 983, 987 (2007).

La segunda característica del privilegio ejecutivo en su vertiente deliberativa es que efectivamente sea materia de naturaleza deliberativa. Ello quiere decir que sea una parte directa del proceso deliberativo, ya que provea recomendaciones y opiniones sobre cuestiones jurídicas o normativas. En consecuencia, no se considera información privilegiada lo puramente fáctico, a menos que esté inextricablemente entrelazada con el proceso deliberativo. _Íd._, pág. 988.

Por otro lado, la segunda vertiente del privilegio ejecutivo es para proteger las comunicaciones ejecutivas. Se evita la publicación de documentos y comunicaciones directamente relacionadas con las decisiones del Primer Ejecutivo. Su alcance es mayor, toda vez que incluye hasta los documentos finales y el material postdecisional. Íd.

Sobre la expectativa de confidencialidad que tiene el Poder Ejecutivo, se ha mencionado que existe en los siguientes asuntos: conversaciones entre el Gobernador y sus ayudantes, documentos internos de las agencias, memorandos interangenciales, los expedientes médicos y de personal y los expedientes de investigaciones civiles, criminales y administrativas que conduzcan las agencias de seguridad. López Pérez, supra, pág. 359.

**B.**

A pesar de que el privilegio ejecutivo no se establece expresamente en la Constitución de los Estados Unidos ni en la de Puerto Rico, sí tiene entronque constitucional. Conforme a ello, este Tribunal ha dispuesto que, en lo que concierne a asuntos privilegiados, se tendrán que examinar los privilegios establecidos en las Reglas de Evidencia. ELA v. Casta, 162 DPR 1, 10 (2004). Particularmente, en lo pertinente a la controversia ante nos, debemos remitirnos al privilegio sobre información oficial. Ello, ya que sin un estatuto integral que regule el requerimiento de información, debemos examinar de forma supletoria este privilegio. Angueira v. J.L.B.P, supra. Además, es uno de

los supuestos reconocidos en <u>Colón Cabrera v. Caribbean Petroleum,</u> supra, como excepción al derecho de acceso a la información. Esta regla dispone lo siguiente:

> (a) Según usada en esta regla, 'información oficial' significa aquélla adquirida en confidencia por una persona que es funcionaria o empleada pública en el desempeño de su deber y que no ha sido oficialmente revelada ni está accesible al público hasta el momento en que se invoca el privilegio.
>
> (b) Una persona que es funcionaria o empleada pública tiene el privilegio de no divulgar una materia por razón de que constituye información oficial. No se admitirá evidencia sobre la misma si el tribunal concluye que la materia es información oficial y su divulgación está prohibida por ley, o que divulgar la información en la acción sería perjudicial a los intereses del gobierno. Reglas de Evidencia de 2009, 32 LPRA Ap. IV, sec. 514.

Este privilegio se fundamenta en la necesidad del gobierno de mantener confidencial cierta información que propenda a la buena marcha del gobierno y se puedan atender los diferentes problemas del País. Chiesa, <u>Tratado de Derecho Probatorio</u>, supra, pág. 292. Como tal, el privilegio se reconoce si la divulgación de la información sería perjudicial a los intereses del gobierno y el grado de perjuicio es mayor comparado con el que sufre la persona reclamante. <u>Íd.</u>, pág. 308. Sin embargo, tal interés se debe balancear con el derecho constitucional de acceso a la información. E. L. Chiesa Aponte, <u>Reglas de Evidencia Comentadas</u>, Ediciones SITUM, 2016, pág. 164. El poseedor del privilegio es el Estado. <u>Íd.</u> "De ahí que el privilegio sólo pretenda proteger documentos cuya revelación sea contraria a los mejores intereses del gobierno, y no los intereses del

funcionario ejecutivo". E. L. Chiesa Aponte, Práctica Procesal Puertorriqueña, San Juan, Publicaciones JTS, Inc., 1984, Vol. I, pág. 140. Es decir, el privilegio es para el beneficio del pueblo y no para el oficial que lo reclame. Véase, por ejemplo, Hamilton v. Verdow, 287 Md. 544, 414 A.2d 914, 10 A.L.R.4th 333 (1980).

Al interpretar la regla 31 de Evidencia de 1979, la cual es esencialmente idéntica a la actual, indicamos que "los tribunales deben ser cautelosos en conceder cualquier pedido de confidencialidad del Estado, *quien deberá demostrar precisa e inequívocamente la aplicabilidad de la excepción antes enunciada"*. ELA v. Casta, supra, pág. 11. Asimismo, fuimos enfáticos en expresar que "[h]oy día la secretividad en los asuntos públicos es excepción y no norma". Santiago v. Bobb y El Mundo, Inc., 117 DPR 153, 159 (1986). Y es que una alegación sin un privilegio público y sin apoyo en legislación adecuada, debe ser examinada de forma minuciosa, ya que tal ausencia debilita el reclamo de confidencialidad. Peña Clos v. Cartagena, supra, pág. 599. La jurisprudencia sobre el privilegio ha sido desfavorable al reconocimiento del mismo. Ello, por la primacía del derecho constitucional de acceso a la información. Chiesa, Reglas Comentadas, supra, pág. 166.

Ante ello, reafirmamos que el Gobierno tiene que realizar un gran esfuerzo por lograr presentar prueba que demuestre la existencia de intereses de mayor jerarquía que los valores protegidos por el derecho de libertad de información de los ciudadanos. ELA v. Casta, supra, pág. 12.

Para tal ejercicio, los tribunales debemos evaluar si la información o documentación requerida afecta las facultades de la Rama Ejecutiva.

**IV**

De otra parte, en forma general, se favorece que los tribunales hagan "un examen *in camera* de los documentos que el Estado alega son privilegiados, antes de determinar si ha de prevalecer o no la posición del Estado negándose a descubrir la información pertinente". Chiesa, Práctica Procesal Puertorriqueña, supra, págs. 140-141. A nivel federal, se ha reconocido la necesidad de la inspección en cámara de los documentos solicitados cuando se alegue el privilegio ejecutivo. Véase U.S. v. Nixon, supra; Black v. Sheraton, 564 F.2d 531 (D.C. Cir. 1977); Soucie v. David, 448 F.2d 1067 (D.C. Cir. 1971). Por eso, se ha sostenido que la referida inspección evita la divulgación innecesaria de información privilegiada. In re Sealed Case, 121 F.3d 729 (D.C. Cir. 1997). Los tribunales son un filtro entre la solicitud de la información pública por los ciudadanos y la confidencialidad de la información reclamada por el Estado. H. A. Vera Rodríguez y E. Ruiz Santana, El derecho a la información de los ciudadanos como un instrumento de transparencia gubernamental en Puerto Rico: Una agenda inconclusa, 50 Rev. Der. PR 265, 269 (2011).

El profesor Chiesa, al examinar jurisprudencia federal, realiza una distinción importante cuando al invocarse un privilegio se debe examinar en cámara. Específicamente, al

analizar la decisión de U.S. v. Reynolds, 345 U.S. 1 (1953), señaló que cuando el privilegio es tan fuerte, como para salvaguardar de algún peligro la seguridad nacional, no se puede hacer la revisión en cámara. Chiesa, Tratado de Derecho Probatorio, supra, pág. 290. Ello no es igual cuando lo que se solicita es información oficial. Aquí sí se tiene la discreción usual de examinarla e incluso emitir órdenes protectoras. Íd., pág. 297. Ambos recursos son reconocidos como medidas para adjudicar las controversias. Al contrario, al no permitirse la inspección, bastaría que el gobierno reclame la secretividad de la información para que no pueda ser divulgada. Chiesa, Práctica Procesal Puertorriqueña, supra, pág. 140. Adviértase que el demandante está en desventaja, ya que en ocasiones desconoce la naturaleza del documento, por lo que no tiene la capacidad de alegar con adecuada precisión legal para que sea divulgada la información. Ante ese desbalance es que está disponible la inspección en cámara. Véase Islamic Shura Council of Southern California v. F.B.I., 635 F.3d 1160, 1165 (9no Cir. 2011).

Con ello concuerda Matthew W. Warnock al establecer que la evaluación completa del privilegio debe incluir una revisión en cámara. El tribunal realizará esa inspección con normas claras que lo guíen para establecer un equilibrio entre el interés del público en la divulgación y el interés del gobierno en la confidencialidad. Warnock, supra, pág. 1016.

En Puerto Rico, se ha señalado que cuando haya un reclamo del privilegio ejecutivo, el tribunal debe examinar la documentación en cámara. Ello se sustenta por el hecho que los tribunales deben tener a su vez una rigurosa deferencia al reclamo de confidencialidad. Véase López Pérez, supra, págs. 358 y 360. Más aún, este Tribunal favoreció desde hace más de treinta (30) años lo siguiente:

> La visión judicial de que la confidencialidad de la información se determina mediante un análisis de la totalidad de las circunstancias que rodean la comunicación, así como su propia naturaleza. En esta gestión el tribunal puede hacer un examen en cámara de los documentos o información que el Estado alega son privilegiados, **como condición previa al reconocimiento del privilegio**. Santiago v. Bobb y El Mundo, Inc., supra, pág. 162 (énfasis suplido).

Y es que habíamos sido consecuentes en sostener que el mecanismo altamente favorecido, apropiado y útil para analizar una solicitud de confidencialidad es el examen en cámara. Véase Colón Cabrera v. Caribbean Petroleum, supra; ELA v. Casta, supra; Pres. del Senado, 148 DPR 737 (1999); Santiago v. Bobb y El Mundo, Inc., supra; Soto v. Srio. de Justicia, supra. Véase, además, Opinión disidente del Juez Asociado señor Estrella Martínez en Diócesis de Arecibo v. Srio. Justicia, 191 DPR 380, 401-402 (2014). No es para menos, ya que como se ha señalado anteriormente, es el mecanismo por excelencia para sopesar estos intereses. Véase, además, V. Neptune Rivera, Derecho Probatorio, 84 Rev. Jur. UPR 681, 688-703 (2015).

Examinado el derecho aplicable, procedo a explicar las razones de mi disenso.

## V

De entrada, debo reiterar que el Estado no ha demostrado, ante el foro de instancia ni ante este Tribunal, impedimento de clase alguna para denegar la divulgación del documento público solicitado. Por tanto, lo lógico era denegar este recurso. Como ello no ocurrió, procedo a atender la controversia ante nos en el marco del razonamiento y el procedimiento delineado por este Tribunal.

En primera instancia, no estoy de acuerdo con el proceso seguido por una Mayoría en este caso. Particularmente, se paralizó un proceso de alto interés público para intervenir innecesariamente con una orden interlocutoria, para luego chocar con la realidad de que no se puede conceder ninguno de los remedios solicitados por los peticionarios. Ante la realidad de que este Tribunal no solicitó los alegatos de las partes, bastaba con examinar el expediente para revisar los planteamientos repetitivos de la parte peticionaria y proceder a denegar el recurso. De ese modo, no hubiéramos paralizado innecesariamente el reclamo de información y, peor aún, arrebatar una herramienta esencial como lo es la inspección en cámara.

A su vez, inexplicablemente y, de forma sorpresiva, este Tribunal devuelve el caso al foro de instancia, pero con menos herramientas de las que se tenían. Es decir, con la determinación de la Mayoría se limitan los recursos del

Tribunal de Primera Instancia en los casos como el de epígrafe. Hoy, en vez de darle mayores herramientas al foro primario para que pueda adjudicar conforme a derecho, se dan instrucciones a ciegas para controlar remotamente los trabajos judiciales. No puedo avalar tal proceder.

Ciertamente, el hecho de que el Tribunal de Primera Instancia haya ordenado que el Proyecto de Presupuesto se entregue en sobre sellado para una inspección en cámara no significa que se vaya a publicar la información. Tal inspección es un mecanismo seguro que tiene el foro primario para determinar si es de aplicación el privilegio ejecutivo. Más aún, cuando las partes han presentado sendas mociones al respecto, hubo una vista argumentativa específicamente sobre esa controversia y le ha dado otra oportunidad al Estado de poner en posición al tribunal de entender su alegación sobre el privilegio. El que se ordene una inspección en cámara no significa un mal manejo de la información. No se atenta contra el privilegio. El hecho que un juez o jueza lo examine no significa que se lesione tal derecho.

Al contrario, mediante la orden emitida por el Tribunal de Primera Instancia, ese foro obtendría mejores medios para resolver el caso lo más pronto posible y conforme a derecho, en comparación con el procedimiento delineado por este Tribunal.

En este caso, el foro primario le ha dado múltiples oportunidades a los peticionarios para que demuestren la aplicabilidad del privilegio ejecutivo. No obstante, no lo

han hecho. Sus alegaciones han sido demasiado generales. No han contrarrestado el derecho a la información de estirpe constitucional. Así lo ha dejado claro el Tribunal de Primera Instancia. Y es por ello, que ha solicitado inspeccionar en cámara el Proyecto de Presupuesto antes de concluir definitivamente que es un documento público que debe ser divulgado por no aplicarle el privilegio. Es decir, el foro de instancia, ante un reclamo de privilegio ejecutivo, ha sido más que cauteloso y no ha ordenado, a pesar que el Gobierno no demostró ser merecedor del privilegio, la divulgación hasta que pueda examinar el Proyecto de Presupuesto y contar con una nueva moción.

No empece a lo anterior, como hoy decide la Mayoría, todas las partes quedan en desventaja. Ello, ya que se ordena al foro primario a descansar en memorandos de derecho y, a base de ello, decidir el caso. Adviértase que los peticionarios pudieron utilizar la misma información del Proyecto de Presupuesto como evidencia de que se limitó a la faceta deliberativa, y se negaron a hacerlo; aún bajo el procedimiento delineado por la Mayoría se privaría del examen del documento en cámara simultáneamente con los nuevos memorandos de derecho, por lo que nos encontramos en el mismo callejón sin salida y poco se podrá avanzar. Paralelamente, la reclamación del senador Bhatia queda trastocada, ya que el Tribunal de Primera Instancia, estando a mi juicio, en posición de conceder el remedio, tendrá que recurrir nuevamente al procedimiento inoficioso de requerir

memorandos de derecho. Por tanto, son múltiples los efectos adversos.

Ante todo ello, la pregunta que nos debemos hacer es la siguiente: ¿Qué otras alegaciones podría tener el Gobierno a las realizadas en los escritos ya presentados y los expuestos en la vista argumentativa? No puedo pensar en qué manera unos nuevos memorandos ayudarían **sin contar con el examen del documento en sí**, a menos que se trate de otra forzada oportunidad, como premio de consolación a los remedios solicitados por el Estado.

Por otro lado, una Mayoría de este Tribunal se pregunta "¿qué exactamente es lo que se podría encontrar al inspeccionar el documento en cuestión con el propósito de tomar una determinación en el caso?". Opinión mayoritaria, pág. 38. Asimismo, se fundamentan en que "[b]asta con examinar el proyecto de presupuesto final para conocer la naturaleza del documento en disputa". Íd.[91] No obstante, el

_____

[91]Debo destacar que el criterio de la naturaleza del documento no es el único factor utilizado a nivel federal. Precisamente, utilizando el razonamiento de la Mayoría de este Tribunal, conforme a la Freedom of Information Act (FOIA), 5 U.S.C. sec. 552, se han reconocido diferentes factores que apoyan la inspección en cámara, a saber: economía judicial, naturaleza conclusiva de la declaración jurada de la agencia, mala fe por parte de la agencia, controversia relacionadas al contenido del documento, que la agencia propone la inspección en cámara y **el fuerte interés público en la divulgación**. R. M. Levin, In Camera Inspections Under the FOIA, 41 U. Chi. L. Rev. 557 (1974). Véase, por ejemplo, Rugiero v. U.S Dept. of Justice, 257 F.3d 534, 543 (6to Cir. 2001); Jones v. F.B.I., 41 F.3d 238, 243 (6to Cir. 1994); Allen v. Central Intelligence Agency, 636 F.2d 1287 (D.C. Cir. 1980) revocado en parte en otros extremos por Founding Church of Scientology of Washington, D.C., Inc. v. Smith, 721 F.2d 828 (D.C. Cir. 1983); Donovan v. F.B.I., 806 F.2d 55 (2do Cir. 1986) revocado en parte en otros extremos por U.S. Dep't of Justice v. Landano, 508 U.S. 165, 170 (1993); Ingle v. Department of Justice,

mismo Gobierno ha aclarado que son documentos distintos. Entonces, la pregunta adecuada es: ¿Por qué postergar la determinación de si debe divulgarse? El Gobierno no ha demostrado que sea merecedor del privilegio. Este caso no aguanta más dilación. Debe resolverse lo más pronto posible. Sin embargo, con la decisión que se emite hoy, se alarga más y más, y se sigue lacerando el derecho constitucional de acceso a la información.

Por otro lado, la herramienta de la inspección en cámara, además de ser respaldada por la arraigada línea jurisprudencial discutida, también ha sido avalada en multiplicidad de jurisprudencia federal, contrario a lo que intima la Mayoría. A esos efectos, debemos examinar su tratamiento en las inspecciones en cámara producto de reclamos bajo la Freedom of Information Act (FOIA), 5 U.S.C. sec. 552 et seq. Si bien es cierto que no es automática, en algunas circunstancias es necesaria y apropiada. Específicamente, el Congreso ha indicado que la determinación de necesidad le compete decidirlo a la corte de distrito en su sana discreción. H.R. Rep. No. 1380, 93d Cong., 2d Sess. 8 (1974). Véase, además, NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 224 (1978); Donovan v. F.B.I., 806 F.2d 55, 59 (2do. Cir. 1986) revocado en otros extremos por U.S. Dep't of

_____

698 F.2d 259, 267 (6to Cir. 1983) revocado en parte en otros extremos por U.S. Dep't of Justice v. Landano, supra; James v. Drug Enf't Admin., 657 F. Supp. 2d 202, 209 (D.D.C. 2009); Physicians for Human Rights v. U.S. Dep't of Def., 675 F. Supp. 2d 149, 167 (D.D.C. 2009); Dean v. F.D.I.C., 389 F. Supp. 2d 780, 789 (E.D. Ky. 2005); Ferguson v. F.B.I., 752 F. Supp. 634, 636 (S.D.N.Y. 1990).

Justice v. Landano, 508 U.S. 165, 170 (1993). Es decir, los tribunales han realizado un análisis de la ley, el historial legislativo y la jurisprudencia y han concluido que la determinación reside en el juez de instancia. Center for Auto Safety v. E.P.A., 731 F.2d 16, 20-21 (D.C. Cir. 1984). Y es en esa sana discreción que la corte, después de considerar todos los factores relevantes, puede decidir si la inspección en cámara es apropiada. Donovan v. F.B.I., supra; Church of Scientology v. I.R.S., 792 F.2d 146, 153 (D.C. Cir. 1986); Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973).

Por otra parte, contrario a lo esbozado por la Mayoría de este Tribunal, la jurisprudencia federal no ha señalado que la inspección en cámara es desfavorable en reclamaciones de privilegios gubernamentales. Véase Opinión mayoritaria, pág. 34. Lo que se ha indicado es que es desfavorable cuando el estado adecuadamente sustenta y prueba previamente su alegación de la aplicación de la excepción, **lo que no ha ocurrido en el caso ante nos**. Véase Smith v. U.S. Marshals Services, 517 Fed.Appx. 542 (9no Cir. 2013); Lion Raisins v. U.S. Dep't of Agric., 354 F.3d 1072, 1079 (9no Cir. 2004); Lewis v. I.R.S., 823 F.2d 375, 378 (9no Cir. 1987). Por ello, se ha reconocido que cuando el gobierno decide no divulgar el documento completo y para ello, previo a la inspección en cámara, sólo utiliza alegaciones vagas y generales, es apropiado utilizar tal herramienta. Associates Press v. U.S. Dept. of Justice, 549 F.3d 62, 67 (2do. Cir. 2008); Local 3, Int'l Bhd. Of Elec. Workers, AFL-CIO v. NLRB, 845 F.2d 1177, 1180 (2do Cir. 1988). Es decir, para que el gobierno pueda

mantener la confidencialidad y que no se ordene una inspección en cámara, debe darle a la corte, previamente, toda información relevante del documento, de forma específica y detallada, para que pueda realizar una apropiada evaluación sin tener que examinar el documento en sí, **lo cual tampoco ocurrió en el caso ante nos**. Véase Hamdan v. Dept. of Justice, 797 F.3d 759, 779-780; Islamic Shura Council of Southern California v. F.B.I., supra, pág. 1166; Ethyl Corp. v. U.S. E.P.A., 25 f.3d 1241, 1250 (4to Cir. 1994); Lewis v. I.R.S., supra, pág. 378. Esto es, el estado, más allá de alegar de forma generalizada, **debe describir el documento en detalles y alegar con hechos suficientes que existe la excepción alegada**. Lewis v. I.R.S., supra. El estado no puede realizar alegaciones generales y citar de forma conclusiva una excepción de la ley. Tiene que justificar detalladamente e identificar las razones particulares de la excepción y correlacionar su alegación con partes específicas del documento que pretenda no divulgar. Mead Data Central, Inc. v. U.S. Dept. of Air Force, 566 F.2d 242, 251 (D.C. Cir. 1977). Y es que, a nivel federal, el gobierno debe demostrar efectivamente las excepciones contempladas en la FOIA. Si no lo hace, procede, a discreción de la corte de distrito, la inspección del documento. Associates Press v. U.S. Dept. of Justice, supra. Y a esos efectos, los tribunales apelativos deberán revisar si el foro de instancia abusó de su discreción, bajo los parámetros expuestos.

Ante ese cuadro, la jurisprudencia federal consecuentemente ha observado la discreción del foro de

instancia, a la luz de los parámetros descritos. Así las cosas, en lo que atañe a la controversia que nos ocupa, el tracto procesal descrito revela que el Estado ha tenido múltiples oportunidades para "justificar y demostrar su reclamo de confidencialidad". Opinión mayoritaria, pág. 34. Sin embargo, bajo el derecho aplicable vigente, no lo han hecho. Y tampoco bajo el prisma de FOIA que erradamente interpreta la Mayoría de este Tribunal y que pretende incorporar, la cual tiene el efecto de restringir aún más el acceso a la información pública en Puerto Rico.

Finalmente, en cuanto a los méritos, nos tenemos que preguntar lo siguiente: ¿El revelar la información solicitada lesiona algún interés público y gubernamental? De responder en la afirmativa, ¿quedaría algún interés gubernamental adicional perjudicado? ¿Han desaparecido las razones que de ordinario, justifican la secretividad? ¿Qué intereses se esgrimen a favor de la no divulgación de esa información específica? ¿Han perdido por completo su razón de ser? Véase Santiago v. Bobb y El Mundo, supra, págs. 165-166.

Examinadas con sumo detenimiento todas las alegaciones y las argumentaciones de las partes, concluyo que el documento es público. Por tanto, el Estado debió probar que existía alguna excepción que prohibiera su divulgación. Los peticionarios no demostraron la aplicabilidad de alguna excepción al derecho de acceso a la información. Más aún, no particularizaron ni sustentaron sus alegaciones que apunten a que el interés público se beneficia con la confidencialidad del Proyecto de Presupuesto. Es decir, no demostraron que la

divulgación de la información sería perjudicial a los intereses del Gobierno. Tampoco establecieron que la divulgación de la información podría afectar el funcionamiento del gobierno y poner en peligro la seguridad nacional. Recuérdese que le correspondía a los peticionarios probar y sustentar el privilegio reclamado. Le competía demostrar de forma precisa e inequívoca la aplicabilidad de la excepción al derecho constitucional de acceso a la información. Ello, ya que la secretividad en los asuntos públicos es la excepción y no la norma.

Como es sabido, el Estado no puede negarse caprichosamente, y de forma arbitraria, a permitir el acceso. Los ciudadanos tienen el derecho de examinar el contenido de los expedientes, informes y documentos públicos e investigar cómo se conducen sus asuntos, sujetos sólo a aquellas limitaciones que impone la más urgente necesidad pública. Y esas excepciones de mantener la información pública sólo se justifican cuando así lo determine el interés público.

En el caso de epígrafe, lo único en que se han basado los peticionarios es en que el Proyecto de Presupuesto es un documento de trabajo, o sea, un borrador en etapa deliberativa que estaba pasando por los trámites que establece PROMESA, siendo el documento final del Ejecutivo el entregado a la Asamblea Legislativa. Esa no es la realidad del trámite legislado en PROMESA. En consecuencia, esa alegación es insuficiente para derrotar el derecho constitucional fundamental de acceso a la información. Veamos.

La presentación ante la Junta es un mandato conforme al proceso formal de la sección 202 de la Ley PROMESA, 48 U.S.C. sec. 2142. Aquí lo que ocurre es que el Gobierno realiza una propuesta final de presupuesto, la cual será enviada a la Junta para aprobación, en lugar de seguir el trámite ordinario de enviarlo directamente a la Asamblea Legislativa. Si el Proyecto de Presupuesto cumple con los parámetros que establezca la Junta, se aprobará y el Gobernador entonces lo podrá remitir a la Asamblea Legislativa. Por ello es que no puede ser considerado un borrador. El documento, según el proceso estatutario, debe ser final, con la única excepción de las enmiendas que recomiende la Junta. No creo que un documento de trabajo, como alega el Gobierno, pueda ser aprobado por la Junta como un presupuesto certificado. Más bien, nos encontramos ante un mandato congresional en el que ahora el Gobierno de Puerto Rico tiene un deber dual de presentar el Proyecto de Presupuesto primariamente ante la Junta como eventualmente a la Asamblea Legislativa. En ese sentido, nos encontramos ante un documento formal presentado ante la Junta, con un proceso particular para su aprobación o enmienda el cual es análogo al eventual proceso legislativo de aprobación. Por lo tanto, en la etapa de radicación formal del Proyecto de Presupuesto, éste no puede minimizarse como un documento en etapa deliberativa o un simple "borrador".

Contrario a lo que argumenta el Gobierno de Puerto Rico, queda comprobado como cuestión de derecho, que bajo las disposiciones de PROMESA, la Junta no puede ser considerada un subalterno, asesor o ayudante del Ejecutivo. En ese

sentido, la sección 108 de PROMESA que establece expresamente la autonomía de la Junta, no puede ser obviada de este análisis. 48 U.S.C. sec. 2128. Aunque indignante, la realidad colonial de Puerto Rico no puede ocultarse, persiguiendo crear una ficción que pretenda ignorar el rol imperial de la Junta para reducirla a un subalterno, asesor o ayudante del Ejecutivo. Esa ficción no es la realidad que vive Puerto Rico. Con secretividad, sólo se recrudece esa realidad.

Además, como bien se ha señalado, el Proyecto de Presupuesto no contiene conversaciones entre el Gobernador y sus ayudantes, documentos internos de las agencias, memorandos interangenciales, expedientes médicos y de personal ni expedientes de investigaciones civiles, criminales y administrativas que conduzcan las agencias de seguridad. Incluso, no se trata de un documento interno ni preparatorio. Adviértase que aquí no se están solicitando recomendaciones, consultas, determinaciones, opiniones, análisis o expresiones del Gobernador, o su personal de apoyo o asesores, relacionadas con el proceso deliberativo para la preparación del Proyecto de Presupuesto. Lo que se requiere es la entrega y publicidad del Proyecto de Presupuesto, según presentado ante la Junta. Es decir, las cifras, cuantías o partidas de fondos asignados. En consecuencia, entiendo que no existía impedimento para que el Tribunal de Primera Instancia declarara el documento como uno público y emitiera la correspondiente orden de divulgación.

Por ende, como bien apunta el derecho aplicable, ante una controversia de acceso a la información, le correspondía

al Estado demostrar la existencia de intereses de mayor jerarquía que los valores protegidos por el derecho de libertad de información de los ciudadanos. Además, le correspondía probar que el interés público será más beneficiado con la confidencialidad de la información que con su divulgación. No lo hizo.

**VI**

Por los fundamentos que anteceden, disiento del curso de acción seguido por una Mayoría de este Tribunal. Hace rato que procedía la entrega del documento público. Con la paralización y la Opinión emitida en el día de hoy se alarga innecesariamente esa concesión y se crea un estado de incertidumbre que dilatará más la controversia. Peor aún, bajo la lógica de la Mayoría, se limitan innecesariamente las herramientas que tienen los jueces y juezas para atender con agilidad procesal los reclamos de acceso a la información de la ciudadanía.

Luis F. Estrella Martínez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Hon. Eduardo Bhatia Gautier, en su carácter como portavoz del Partido Popular Democrático en el Senado de Puerto Rico

Recurrido

v.

Hon. Ricardo A. Rosselló Nevares, en su carácter de Gobernador de Puerto Rico; Estado Libre Asociado de Puerto Rico

Peticionarios | Núm. CC-2017-668 | *Certiorari* |

Opinión Disidente emitida por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico a 15 de septiembre de 2017.

> *El acceso a la información constituye una herramienta esencial para combatir la corrupción, hacer realidad el principio de transparencia en la gestión pública y mejorar la calidad de nuestras democracias, signadas por una cultura de secretismo y por organismos públicos cuyas políticas de manejo físico de la información no están orientadas a facilitar el acceso de las personas a la misma.*
>
> Comisión Interamericana de Derechos Humanos de la Organización de los Estados Americanos, *Estudio especial sobre el derecho de acceso a la información*, Org. Estados Americanos, Washington, D.C. 2007, pág. 6.

Hoy, una mayoría de este Tribunal, ante una controversia revestida del más alto interés público, decide intervenir con la discreción del Tribunal de Primera Instancia para decidir la forma en que dilucida las controversias que se ventilan ante su consideración; ello, en ausencia total de fundamento alguno que justifique tal proceder. En este sentido, por entender que este Tribunal no debió haber menoscabado la discreción del foro primario para solicitar -- previo a decidir si en el caso que nos ocupa se podía reconocer o no el privilegio ejecutivo invocado por el Estado, -- la inspección en cámara de ciertos documentos públicos en controversia, disentimos del curso de acción seguido en el presente caso. Veamos.

I.

Los hechos ante nuestra consideración no están en controversia. El pasado 4 de mayo de 2017, el Honorable Senador Eduardo Bhatia Gautier, Portavoz de la Minoría del Partido Popular Democrático en el Senado de Puerto Rico, presentó ante el Tribunal de Primera Instancia una solicitud de *mandamus* en contra del señor Gobernador de Puerto Rico, Honorable Ricardo Rosselló Nevares, y el Estado Libre Asociado de Puerto Rico (en adelante, en conjunto, "los peticionarios"). En la misma, solicitó que el señor Gobernador de Puerto Rico hiciera pública una copia del "*Proyecto de Presupuesto*" presentado el 30 de abril de 2017 ante la Junta de Supervisión Fiscal de Puerto Rico (en adelante, "la Junta de Supervisión Fiscal"), creada en

virtud del *Puerto Rico Oversight, Management and Economic Stability Act (*PROMESA, por sus siglas en inglés), 48 USC secs. 2101 *et seq*. El Senador Bhatia Gautier fundamentó su solicitud en que el referido documento era uno público y de alto interés para la ciudadanía. Asimismo, alegó que, a pesar de haber realizado un requerimiento previo, el señor Gobernador de Puerto Rico se negó a proveer la información solicitada, por entender que la misma no era pública.

Tras varios incidentes procesales no necesarios aquí pormenorizar, el 26 de junio de 2017, los peticionarios presentaron una solicitud de desestimación, por entender que el presente caso no era uno justiciable. En esencia, sostuvieron que el Senador Bhatia Gautier carecía de legitimación activa para presentar el recurso extraordinario de *mandamus,* no había cumplido con los requisitos para incoar la referida causa de acción y, además, que el caso ante el foro primario se había tornado académico; ello, dado a que el proyecto de presupuesto se había entregado a la Asamblea Legislativa para su consideración y eventual aprobación, por lo que el Senador Bhatia Gautier debió haber realizado su solicitud en aquel entonces. Por último, los peticionarios alegaron que la concesión del remedio solicitado acarrearía una intervención indebida de la Rama Judicial con el poder Ejecutivo y Legislativo, quebrantando así la separación de poderes que caracteriza nuestro sistema democrático de gobierno.

Evaluados los planteamientos de ambas partes, el Tribunal de Primera Instancia dictó una *Orden* mediante la cual señaló una vista argumentativa, a celebrarse el 26 de julio de 2017. Específicamente, y en lo aquí pertinente, el foro primario dispuso que las partes debían asistir a la vista preparados para discutir los siguientes asuntos: (1) si la solicitud de información, presentada por el Senador Bhatia Gautier, se había tornado académica; (2) cuáles eran los daños sufridos por el senador y la verdadera lesión "*en sus prerrogativas legislativas específicas de evaluar y fiscalizar los procesos dirigidos a la aprobación del presupuesto del país*", al no proveérsele, precisamente, tal información; (3) si la información solicitada ya se había hecho pública o si, por el contrario, ello no había sucedido; (4) si la solicitud de *mandamus* incoada respondía a un traslado del debate legislativo al foro judicial; (5) si el Senador Bhatia Gautier agotó todos los remedios a su disposición para obtener la información requerida; y, finalmente, (6) si la información solicitada era pública o, por el contrario, se trataba de información cobijada por el privilegio ejecutivo, según las alegaciones de los peticionarios. Además de lo anterior, les concedió a las partes un término para que presentaran una moción en conjunto, junto a sus respectivas estipulaciones de hechos, documentos y/o prueba pertinente.

Es decir, como podemos apreciar, el Tribunal de Primera Instancia estableció -- en el ejercicio de la discreción que tiene para manejar los casos que ante sí se ventilan -- los temas a ser considerados en la vista argumentativa, de modo que dicho foro pudiera estar en posición de tomar una decisión informada en cuanto a la solicitud de desestimación.

Llegada la fecha pautada, se celebró la vista en cuestión. Según se desprende de la minuta que obra en el expediente ante nos, la parte peticionaria planteó que el documento solicitado por el Senador Bhatia Gautier pudo haber sido requerido durante el trámite legislativo, pero no se hizo. Asimismo, expresó que tal documento no era público, pues se trataba de un documento preparado por la Rama Ejecutiva, cobijado por el privilegio ejecutivo, al tratarse de un borrador *"preparado como parte de una etapa de deliberación para el desarrollo de la política pública"*[92].

Por su parte, el Senador Bhatia Gautier sostuvo que el señor Gobernador y el Estado Libre Asociado de Puerto Rico intentaban mantener como confidencial el documento solicitado, a pesar de no haber acreditado que tal escrito estaba cubierto bajo el privilegio ejecutivo. De igual forma, sostuvo que no quería obtener copia de los escritos preparados por los asesores del señor Gobernador de Puerto Rico, ni sus opiniones subjetivas, sino que quería tener acceso a las cifras incluidas

---

[92] *Véase Apéndice* de *Petición de Certiorari*, a la pág. 230.

en el referido *Proyecto del Presupuesto*, según le fue entregado a la Junta de Supervisión Fiscal.

Así las cosas, tras escuchar las argumentaciones de las partes y evaluar los documentos y escritos que obraban en el expediente, el Tribunal de Primera Instancia emitió la *Resolución y Orden* objeto del presente caso. En la misma, el Tribunal de Primera Instancia determinó que el Senador Bhatia Gautier poseía legitimación activa para incoar la petición de *mandamus*, toda vez que su reclamo surgía al palio de su derecho constitucional de acceso a la información, y que la controversia ante su consideración no era académica. Ahora bien, en cuanto a la alegación en torno a que el documento objeto del presente litigio estaba cobijado por el privilegio ejecutivo, el Tribunal de Primera Instancia determinó -- **luego de escuchar a las partes y examinar los documentos que obraban en el expediente** -- que los peticionarios no lograron poner en posición al tribunal de determinar si, en efecto, podía aplicar el privilegio ejecutivo. Por ello, en el ejercicio de su sana discreción, el foro primario dispuso lo siguiente: (1) concedió al señor Gobernador de Puerto Rico un término de diez (10) días para someter -- en un sobre sellado y catalogado como confidencial -- el *Proyecto de Presupuesto* presentado a la Junta de Supervisión Fiscal el 30 de abril de 2017; y (2) ordenó que explicara en detalle las razones por las que la

información en controversia estaba cobijada bajo el privilegio ejecutivo.

En desacuerdo con tal proceder, los peticionarios acudieron, mediante recurso de *Certiorari*, ante el Tribunal de Apelaciones, acompañando su escrito con una solicitud en auxilio de jurisdicción. No obstante, el foro apelativo intermedio emitió una *Resolución* mediante la cual denegó la expedición del mencionado recurso. Al así hacerlo, sostuvo que el foro primario no abusó de su discreción al decidir inspeccionar, de forma confidencial, la información solicitada mediante el *mandamus* y así estar en una mejor posición para poder establecer si la información en cuestión estaba cobijada por el privilegio ejecutivo o no.

Ante tal panorama, todavía insatisfechos, los peticionarios acuden ante nos, mediante una petición de *certiorari* y una solicitud de paralización de procedimientos. En esencia, señalan que el caso no debe ser atendido en los méritos, por no ser un asunto justiciable, toda vez que el Senador Bhatia Gautier carece de legitimación activa para incoar el mismo y por haberse tornado académico el reclamo de éste. De igual forma, sostienen que el *mandamus* no procede y que el referido senador no agotó los remedios disponibles antes de hacer su requerimiento por la vía judicial.

Es, pues, ante este panorama -- **donde, según se desprende de la relación de hechos de la opinión mayoritaria, así como de**

**la que aquí antecede, el foro primario estuvo manejando las controversias presentadas ante su consideración activa, correcta y diligentemente** -- que una mayoría de este Tribunal, en un errado y lamentable proceder, decide expedir el recurso presentado, interfiriendo así directamente con la discreción del foro primario y, en consecuencia, dictaminando cómo éste deberá conducir los procedimientos ante sí. Por no estar de acuerdo con el curso de acción seguido por una mayoría de este Tribunal -- a saber, el haber expedido este caso, -- como ya adelantamos, disentimos. Es, precisamente por lo anterior, que no pasaremos juicio sobre aquellos aspectos relacionados a la justiciabilidad de este asunto. Empero, a continuación, esbozaremos las razones por las que, a nuestro entender, el presente caso no debió haber sido expedido. Nos explicamos.

II.

A.

El acceso a la información pública es piedra angular en nuestro sistema democrático de gobierno. Acceder a dicha información

> *constituye una herramienta esencial para combatir la corrupción, hacer realidad el principio de transparencia en la gestión pública y mejorar la calidad de nuestras democracias, signadas por una cultura de secretismo y por organismos públicos cuyas políticas de manejo físico de la información no están orientadas a facilitar el acceso de las personas a la misma.* Comisión Interamericana de Derechos Humanos de la Organización de los Estados Americanos, *op cit.*, a la pág. 6.

En este sentido, y en lo que a Puerto Rico respecta, el Art. 1(b) de la *Ley de Administración de Documentos Públicos de Puerto Rico*, 3 LPRA sec. 1001(b), -- disposición legal que gobierna lo relacionado a la información pública -- define "*documento público*" como

> todo documento que se origine, conserve o reciba en cualquier dependencia del Estado Libre Asociado de Puerto Rico de acuerdo con la ley o en relación con el manejo de los asuntos públicos y que de conformidad con lo dispuesto en la sec. 1002 de este título se haga conservar que se requiera conservar permanentemente o temporalmente como prueba de las transacciones o por su valor legal.

De conformidad con lo anterior, hemos establecido que las personas custodias de documentos públicos en nuestro País tienen "*el deber de permitir a las personas interesadas inspeccionar y sacar copia de esos documentos, aunque la ley pertinente no les imponga esa obligación de modo expreso*". *Dávila v. Superintendente General de Elecciones*, 82 DPR 264, 280 (1960)[93]. Ello responde a que nuestro sistema reconoce el

---

[93] Es menester señalar que sobre la información pública se ha dicho que ésta

> pertenece a las personas. La información no es propiedad del Estado y el acceso a ella no se debe a la gracia o favor del gobierno. Éste tiene la información sólo en cuanto representante de los individuos. El Estado y las instituciones públicas están comprometidos a respetar y garantizar el acceso a la información a todas las personas […] El Estado está en la obligación de promover una cultura de transparencia en la sociedad y en el sector público, de actuar con la debida diligencia en la promoción del acceso a la información, de identificar a qui[é]nes deben proveer la información, y de prevenir los actos que lo nieguen y sancionar a sus infractores. La conducta de funcionarios que nieguen el acceso a la información o a la existencia de legislaciones contrarias a la misma, vulneran [sic.] este derecho.

derecho ciudadano a enterarse de lo que su gobierno realiza; por lo tanto,

> [n]o basta con que se reconozca meramente la importante justificación política de la libertad de información. Los ciudadanos de una sociedad que se gobierna a sí misma deben poseer el derecho legal de examinar e investigar cómo se conducen sus asuntos, sujetos sólo a aquellas limitaciones que impone la más urgente necesidad pública. Debe elevarse ese derecho a una posición de la más alta santidad si ha de constituir un baluarte contra un liderato insensible. *Íd.*, a la pág. 281, nota 9.

Es, pues, a raíz de lo anterior, que en nuestro ordenamiento jurídico el Art. 409 del Código de Enjuiciamiento Civil, 32 LPRA sec. 1781, reconoce un derecho general de acceso a la información pública en poder del Estado. Dicho precepto establece que "*[t]odo ciudadano tiene derecho a inspeccionar y sacar copia de cualquier documento público de Puerto Rico, salvo lo expresamente dispuesto en contrario por la ley*". *Íd.* Pero tal derecho no solo se desprende del Art. 409 del Código de Enjuiciamiento Civil, *íd.*, sino que en el pasado hemos reconocido que el derecho a acceder información pública surge también como corolario a la libre expresión. *Colón Cabrera v. Caribbean Petroleum*, 170 DPR 582, 590 (2007); *Soto v. Srio. de Justicia*, 112 DPR 477, 485 (1982) ("[…] *existe una estrecha correspondencia entre el derecho a la libre expresión y la libertad de información*").

---

Comisión Interamericana de Derechos Humanos de la Organización de los Estados Americanos, *Estudio especial sobre el derecho de acceso a la información*, Org. Estados Americanos, Washington, D.C. 2007, págs. 34-35.

En esa dirección, hemos señalado también que el derecho que los ciudadanos y las ciudadanas de nuestro País tienen a acceder a documentos e información pública responde, además de al derecho a la libertad de expresión, a que, habiéndose depositado la soberanía del pueblo en el Estado, este último *"no puede negar caprichosamente y sin justificación aparente la información recopilada en su gestión pública"*. *Soto v. Srio. de Justicia, supra*, a la pág. 489. *Véanse*, además, *Colón Cabrera v. Caribbean Petroleum, supra*, a la pág. 590; *Ortiz v. Dir. Adm. de los Tribunales*, 152 DPR 161 (2000); *Silva Iglecia v. F.E.I.*, 137 DPR 821 (1995); *López Vives v. Policía de P.R.*, 118 DPR 219 (1987).

Siendo ello así, como regla general, el Estado no tiene discreción alguna para determinar qué documentos, resultantes de su gestión pública, quedan fuera del escrutinio ciudadano, pues son éstos últimos, precisamente, la fuente del poder soberano. La única limitación a tales efectos es aquella impuesta por *"la más urgente necesidad pública"*. *Soto v. Srio. de Justicia, supra*; *Dávila v. Superintendente General de Elecciones, supra*, a la pág. 281. *Véase Colón Cabrera v. Caribbean Petroleum, supra*. Es, pues, en virtud de lo anterior -- entiéndase, *"la más urgente necesidad pública"*, -- que la Asamblea Legislativa tiene la facultad de aprobar aquella legislación que tenga el propósito de *"sustraer del escrutinio público determinados documentos e informes"* relacionados a

fases investigativas o preventivas, que por su propia naturaleza puedan colocar en riesgo los resultados de alguna investigación en curso, la vida o seguridad de informantes, confidentes y testigos, o de los propios empleados del Estado. *Soto v. Srio. de Justicia, supra*, a la pág. 495. *Véanse*, además, *Angueira v. J.L.B.P.*, 150 DPR 10 (2000); *Noriega v. Hernández Colón*, 130 DPR 919, 938 (1992).

Ahora bien, no empece a lo anterior, sabido es que en Puerto Rico no existe legislación que disponga aquellas excepciones particulares en las que el Estado puede negarse a divulgar información o documentos públicos. Es por ello que, para llenar ese vacío, hemos establecido los supuestos en los que el Estado puede, válidamente, reclamar la confidencialidad de un documento público, a saber:

> (1) *una ley así lo declara;* (2) la comunicación está protegida por alguno de los privilegios evidenciarios que pueden invocar los ciudadanos; (3) revelar la información puede lesionar derechos fundamentales de terceros; (4) se trate de la identidad de un confidente, y (5) sea información oficial conforme a la Regla [514 de las de Evidencia, 32 LPRA Ap. VI, R. 514]. *Colón Cabrera v. Caribbean Petroleum, supra*, a la pág. 591, citando a *Angueira v. J.L.B.P., supra*.

Así las cosas, en aquellas instancias en las que se pretenda mantener la confidencialidad de un documento o información, el Estado tendrá la carga de probar que satisface alguna de las excepciones antes enumeradas. *Colón Cabrera v. Caribbean Petroleum, supra*. **Con el fin de determinar si procede**

**o no mantener tal confidencialidad -- tal y como reconoce hoy una mayoría de este Tribunal en la opinión que suscribe[94] -- los tribunales pueden realizar inspecciones en cámaras de los documentos que pretenden no ser divulgados, o, incluso, puede proveerse un acceso limitado a los mismos.** *Véase* E.L. Chiesa Aponte, *Tratado de derecho probatorio,* República Dominicana, Ed. Corripio, T. I., 2000, pág. 310. Lo anterior, sin duda alguna, pone al juez o jueza en posición de tomar una decisión más informada; elemento esencial en estos procesos, máxime cuando la denegatoria al acceso a información o documento de carácter público puede causar al solicitante "*un daño claro, palpable y real*", por tratarse de una lesión al derecho fundamental de estar informados. *Ortiz v. Dir. Adm. de los Tribunales, supra,* a la pág. 177.

B.

Una de esas limitadas instancias en las que no procedería acceder a información pública es cuando el Estado invoca y demuestra algún privilegio, como lo sería el privilegio ejecutivo.

Según desarrollado por nuestra doctrina, el privilegio ejecutivo surge al amparo de la separación de poderes consagrado en el Art. I, Sec. 2 de la Constitución del Estado Libre Asociado de Puerto Rico, así como en las Secs. 1 y 4 del Art. V de la Constitución. *Véase* Art. I, Sec. 2, Const. E.L.A.

_____

[94] *Véase* Op., a la pág. 28.

LPRA, Tomo I, ed. 2016, pág. 276; Art. V, Secs. 1 y 4, Const. E.L.A. LPRA, Tomo I, ed. 2016, págs. 425 y 427. La creación y adopción de esta doctrina responde a un principio medular en todo sistema democrático de gobierno: si bien el poder de investigación de la Rama Legislativa no es uno absoluto, tampoco lo es la facultad de la Rama Ejecutiva para retener información a base de una alegada confidencialidad. *Peña Clos v. Cartagena Ortíz*, 114 DPR 576, 598 (1983), citando a *United States v. Nixon*, 418 US 683, 706 (1974).

En este sentido, la Regla 514 de las de Evidencia, *supra*, establece el privilegio sobre información oficial en nuestro ordenamiento. Así, el precepto define "*información oficial*" como la que ha sido "*adquirida en confidencia por una persona que es funcionaria o empleada pública en el desempeño de su deber y que no ha sido oficialmente revelada ni está accesible al público hasta el momento en que se invoca el privilegio*". Regla 514(a) de Evidencia, *supra*. No obstante, tal privilegio no opera de forma automática. Por el contrario, por tratarse de un asunto de gran envergadura, al existir un derecho de acceso a información pública, se debe realizar un balance de intereses entre tal derecho y la necesidad del Estado de mantener confidencial la información en cuestión. E.L. Chiesa Aponte, *Reglas de Evidencia Comentadas*, San Juan, Ed. Situm, 2016, pág. 164. Una mera alegación por parte del Estado no

podrá sustentar un reclamo de confidencialidad. *Véase Peña Clos v. Cartagena Ortiz*, *supra*, a la pág. 599.

III.

Establecido lo anterior y antes de exponer de forma puntual lo que entendemos debió ser el proceder correcto de este Tribunal en el presente caso, resulta imperativo repasar, brevemente, nuestra normativa en cuanto a la discreción de los tribunales en el manejo de los casos. Ello, por ser de particular importancia para la correcta disposición de las controversias ante nuestra consideración.

Al respecto, conviene destacar la definición que, en más de una ocasión, le hemos otorgado al concepto "*discreción*", a saber, ese "*poder para decidir de una u otra forma, esto es, para escoger entre uno o varios cursos de acción*". *Ramírez v. Policía de P.R.*, 158 DPR 320, 340 (2002); *Pueblo v. Ortega Santiago*, 125 DPR 203, 211 (1990). Específicamente, en el ámbito judicial, hemos establecido que esta discreción "*es, pues, una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera […]*". *Ramírez v. Policía de P.R.*, *supra*; *Bco. Popular de P.R. v. Mun. de Aguadilla*, 144 DPR 651, 657 (1997). *Véase*, además, *Pueblo v. Dávila Delgado*, 143 DPR 157 esc. 15 (1997); *Pueblo v. Ortega Santiago, supra*.

Cónsono con ello, en nuestro sistema judicial, los foros primarios tienen un alto grado de discreción en el manejo

procesal de los casos que ante sí se ventilan. *Meléndez Vega v. Caribbean Intern. News*, 151 DPR 649, 664 (2000). Por ello, en más de una ocasión hemos sido enfáticos al sentenciar que los tribunales apelativos "*no debemos, con relación a determinaciones interlocutorias discrecionales procesales, sustituir nuestro criterio por el ejercicio de discreción del tribunal de instancia, salvo cuando dicho foro haya incurrido en arbitrariedad o craso abuso de discreción*". *Íd. Véanse*, además, *Lluch v. España Service, Sta.*, 117 DPR 729, 745 (1986); *Valencia, Ex parte*, 116 DPR 909, 913 (1986); *Ortiz Rivera v. Agostini*, 92 DPR 187, 193 (1965). **Por el contrario, cuando la actuación de un tribunal no está desprovista de base razonable, ni perjudica los derechos sustanciales de una parte**, "***debe prevalecer el criterio del juez de instancia a quien corresponde la dirección del proceso***". (Énfasis suplido). *Sierra v. Tribunal Superior*, 81 DPR 554, 572 (1959).

Al respecto, es menester señalar aquí que son pocas las instancias en las que hemos sentenciado que los foros primarios han incurrido en arbitrariedad o craso abuso de discreción. Ninguna de esas instancias está presente en este caso. A modo de ejemplo, hemos señalado que se incurre en dicha conducta cuando

> el juez, en la decisión que emite, no toma en cuenta e ignora, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando por el contrario el juez, sin justificación y fundamento alguno para ello, le

concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en el mismo; o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el *juez livianamente sopesa y calibra los mismos. (Énfasis original omitido). Ramírez v. Policía de P.R., supra, a las págs. 340-341, citando a Pueblo v. Ortega Santiago, supra.*

Es, precisamente, a la luz del marco jurídico antes expuesto que entendemos debió haber actuado este Tribunal.

IV.

En el presente caso -- ante una solicitud incoada por el Senador Bhatia Gautier para obtener acceso a una información en poder de la Rama Ejecutiva, y la oposición del Gobernador de Puerto Rico, al amparo de la alegada existencia del privilegio ejecutivo, -- el foro primario llevó a cabo una vista argumentativa. Ello, con el fin de discutir una serie de controversias relativas a la legitimación activa del Senador Bhatia Gautier, la procedencia del *mandamus*, **el carácter público de la información solicitada** y la alegada existencia del privilegio ejecutivo.

Con motivo de preparación para la referida vista, ambas partes estipularon una serie de hechos y documentos que no estaban en controversia. Luego, según se desprende de la minuta que obra en el expediente del caso, en la vista argumentativa, tanto los peticionarios como el recurrido tuvieron la oportunidad de exponer sus posturas ante la Jueza del foro primario. En particular, las partes esbozaron sus distintas

posturas en torno al carácter público o no de la información solicitada. Claramente, pues, -- y contrario a lo intimado por la Opinión que hoy emite este Tribunal -- tanto el Senador Bhatia Gautier como el Estado tuvieron la oportunidad de demostrar sus respectivas posturas.

Una vez concluida la vista en cuestión, el Tribunal de Primera Instancia dictó una *Resolución y Orden* mediante la cual concluyó que, según surgía de las alegaciones de las partes en los documentos presentados, así como de los argumentos esbozados en la vista, el Senador Bhatia Gautier poseía legitimación activa para presentar una solicitud de *mandamus* tanto en su carácter personal como de senador. Además, dispuso que la controversia ante su consideración no se había tornado académica. Por último, en cuanto al reclamo del privilegio ejecutivo por los peticionarios, el foro primario determinó -- **al evaluar las alegaciones de las partes y la casuística aplicable** -- que, en ese momento, dicha parte no logró establecer por qué no procedía la divulgación de la información solicitada.

Alcanzada tal conclusión, el Tribunal de Primera Instancia, **en el ejercicio pleno de su discreción para manejar el presente caso**, ordenó a la parte peticionaria presentar el Proyecto de Presupuesto que había remitido a la Junta de Supervisión Fiscal para inspección en cámara. **Asimismo, le ordenó nuevamente a esta parte que presentara, por escrito, las**

**razones por las que la información solicitada por el Senador Bhatia Gautier estaba cobijada por el referido privilegio.** Como vemos, el foro primario, actuando al palio de su discreción para disponer de las controversias ante sí, no solo le brindó una, sino que le otorgó **dos oportunidades** a las partes para que se expresaran en torno a la controversia que, erróneamente, hoy decide "*atender*" una mayoría de este Tribunal. ¿No cumplió ello con lo pautado por esta Curia en el día de hoy?

No vemos, ni en el *certiorari* presentado por el Estado Libre Asociado y el Gobernador de Puerto Rico, ni en el expediente de autos, alegación alguna de parcialidad, perjuicio, craso abuso de discreción o error por parte del foro primario en el manejo del caso que nos mueva a intervenir en este asunto. **Máxime cuando, aquí, esa inspección en cámara resultaba sumamente necesaria para determinar la existencia o no del privilegio ejecutivo, según invocado por el Estado; ello, al tratarse de un escenario donde el documento en cuestión estuvo en manos de la Rama Ejecutiva, pero fue entregado a otro ente distinto a ésta, a saber, la Junta de Supervisión Fiscal, lo que podría representar una renuncia al privilegio ejecutivo, de éste existir.**

No empece lo anterior, en lo que a todas luces es un errado proceder, una mayoría concluye que, si bien el foro primario actuó correctamente al denegar la moción de desestimación presentada por los peticionarios, previo a la

inspección en cámara del documento en controversia, "*las partes deben primero, poner al tribunal en posición en cuanto a cuáles son los intereses en conflicto*". (Énfasis en el original omitido). *Véase* Op., a las págs. 36-37. Es decir, a juicio de la mayoría, el tribunal sentenciador debió haber ordenado a las partes a someter sus respectivos memorandos de derecho en torno a si la información solicitada era pública o no.

La lectura obligada de esta postura nos lleva al absurdo de tener que pensar que, como único una parte podría establecer la existencia o no de un privilegio lo será por medio de la presentación de memorandos de derecho. Dicho de otro modo, los foros primarios no podrán ejercer su discreción para manejar los casos ante sí, según las alegaciones presentadas por las partes, los escritos y/o los hechos ante su consideración, sino que siempre vendrán obligados a exigir la presentación de memorandos de derecho; ello, a pesar que en nuestros cuerpos normativos no existe esa exigencia ni esta Curia ha establecido tal precedente. Esta contención no tiene cabida en nuestro ordenamiento jurídico y atenta contra los principios rectores de nuestro sistema legal. La misma solo busca brindarle una oportunidad adicional al Estado (además de las dos ya concedidas por el Tribunal de Primera Instancia) para hacer lo que, en su momento, tenía que hacer y, por razones que desconocemos, no hizo.

En fin, hoy, con el proceder de una mayoría de este Tribunal, se socavan las facultades inherentes de todo juez y jueza -- históricamente reconocidas -- de manejar los procesos que se ventilan ante su consideración. La decisión que una mayoría suscribe permite que sea este foro de última instancia el que determine, de forma arbitraria y caprichosa, cómo habrán de conducirse los procedimientos ante los foros primarios, o peor aún, que -- al final del día -- sean los Poderes Ejecutivo o Legislativo los que lo determinen.

Es, pues, por todo lo anterior que enérgicamente disentimos de lo erróneamente resuelto por una mayoría de este Tribunal en el día de hoy.


                                        Ángel Colón Pérez
                                         Juez Asociado